No. 22-16903

_____

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

PERRIN AIKENS DAVIS, et al.,
*Plaintiffs-Appellees*,

v.

META PLATFORMS, INC., FKA FACEBOOK, INC.
*Defendant-Appellee*,

v.

SARAH FELDMAN and HONDO JAN,
*Objectors-Appellants*.

_____

On Appeal from the Northern District of California
Civil Action No. 5:12-md-2314-EJD
Hon. Edward J. Davila

_____

## APPELLANTS' OPENING BRIEF

_____

Kendrick Jan                      John J. Pentz
Kendrick Jan, APC                 Law Offices of John J. Pentz
225 Broadway, Suite 2220          18 Damon Street
San Diego, CA  92101              Wayland, MA 01778
(619) 231-7702                    (978) 985-4668
kj@jan-law.com                    jjpentz3@gmail.com

*Attorneys for Appellants Feldman & Jan*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................i

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ......................................................................................... 1

JURISDICTIONAL STATEMENT .............................................................. 3

STATEMENT OF ISSUES ........................................................................... 4

STATUTORY AUTHORITIES ..................................................................... 4

STATEMENT OF THE CASE....................................................................... 5

SUMMARY OF ARGUMENT ...................................................................... 7

STANDARD OF REVIEW .......................................................................... 10

ARGUMENT ............................................................................................... 11

    I.      THE DISTRICT COURT APPLIED AN INCORRECT
           LEGAL STANDARD WHEN EVALUATING AND
           APPROVING THE PROPOSED SETTLEMENT........................... 11

           A.      The district court applied an incorrect standard
                   in using disgorgement as the measure of actual
                   class damages ......................................................................... 11

           B.      The district court applied the incorrect standard
                   by adopting Class Counsel's contention that
                   *State Farm* establishes due process limits on the
                   Recoverability of statutory damages....................................... 14

                  (1)     The district court incorrectly applied *State*
                          *Farm*'s limits on punitive damages when
                          analyzing settlement of a compensatory
                          damages claim ............................................... 15

i

(2)    The Wiretap Act's separate provision for punitive damages renders its $10,000 per violation statutory damages entirely compensatory ................................................................ 17

C.    The district court failed to compare potential damages for each claim with the proposed settlement recovery and to justify the astronomical discount, in violation of the Northern District's Procedural Guidance and the Circuit's *Hanlon* factors ............................ 21

II.    THE CLASS WAS DEPRIVED OF DUE PROCESS BY THE FAILURE OF CLASS NOTICE ................................................ 30

CONCLUSION ........................................................................................ 36

STATEMENT OF RELATED CASES ................................................... 38

CERTIFICATE OF COMPLIANCE ...................................................... 39

CERTIFICATE OF SERVICE ............................................................... 40

ADDENDUM ................................................................................ A-1–16

# TABLE OF AUTHORITIES

## CASES

*Acosta v. Trans Union, LLC*,
240 F.R.D. 564 (CD CA 2007) ...................................................................26, 27

*Bateman v. American Multi-Cinema, Inc.*,
623 F.3d 708 (9th Cir. 2010) ...........................................................12, 17, 19

*BMW of North America, Inc. v. Gore*,
517 U.S. 559 (1996)......................................................................................15

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*,
532 U.S. 424 (2001).................................................................................15, 16

*Davis v. Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020) ........................................................................14

*Devlin v. Scardelletti*,
536 U.S. 1 (2002)............................................................................................3

*Haggart v. Woodley*,
809 F.3d 1336 (Fed. Cir. 2016) ....................................................................31

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .............................................................1, 10, 22

*In re Bluetooth Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........................................................................10

*In re Facebook Biometric Info. Privacy Litig.*,
522 F. Supp.3d 617 (N.D. Cal. 2021)...............................................24, 28, 29

*In re Facebook Biometric Information Privacy Litigation*,
N.D. Cal. Case No. 3:15-CV-03747-JD .......................................................32

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
N.D. Cal. No 18-md-02483-VC ..............................................................25, 28

*In re: Facebook, Inc. Internet Tracking Litigation,*
   956 F.3d 589 (9th Cir. 2020) ................................................................5, 20, 33

*In re Hyundai and Kia Fuel Economy Litigation*,
   926 F.3d 539 (9th Cir. 2019) ...............................................................31

*In re Mego Financial Corp. Securities Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...............................................................10

*In re Online DVD-Rental Antitrust Litigation*,
   779 F.3d 934 (9th Cir. 2015) ...............................................................10, 31

*Jacobson v. Rose*,
   592 F.2d 515 (9th Cir. 1978) ...............................................................12

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...............................................................30

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)................................................................ 30, 31, 34, 35

*Protective Comm. For Indep. Stockholders of TMT*,
   390 U.S. 414 (1968)................................................................26

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) ...............................................................23

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...............................................................32

*Saucillo v. Peck*,
   25 F.4th 1118 (9th Cir. 2022) ...............................................................10

*Sea Coast Foods, Inc. v. Lu–Mar Lobster & Shrimp, Inc.*,
   260 F.3d 1054 (9th Cir. 2001) ...............................................................10

*Six Mexican Workers v. Arizona Citrus Growers*,
   697 F.2d 1333 (9th Cir. 1990)...............................................................10

*St. Louis, I.M. & S. Ry. Co v. Williams*,
251 U.S. 63 (1919) ......................................................... 16, 17, 18, 21

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
538 U.S. 408 (2003) .................................................................. *passim*

*Torrisi v. Tucson Elec. Power Co.,*
8 F.3d 1370 (9th Cir.1993) .............................................................10

*Trailer Ferry Inc. v. Anderson*,
390 U.S. 414 (1968) ........................................................................26

*U.S. v. Facebook, Inc.*,
456 F. Supp.3d 115 (D.D.C. 2020).................................................24

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022) .................................................. *passim*

*Weinberger v. Kendrick*,
698 F.2d 61, 74 (2d Cir. 1982) .......................................................27

## STATUTES

The Federal Wiretap Act

     10. U.S.C. § 2520 ...............................................................11, 17

     10. U.S.C. § 2520(b)(2) ..................................................12, 17, 20

     10. U.S.C. § 2520(c)(2)(A).....................................................11, 20

     10. U.S.C. § 2520(c)(2)(B) .................................... 11, 12, 13, 18, 20

Federal Rules of Civil Procedure

     Rule 23 ................................................................................ *passim*

     Rule 23(b)(3) .............................................................................29

Rule 23(c)(2)(B) ........................................................................30

Rule 23(e) .................................................................................31

Rule 23(e)(2) ...........................................................................4, 9

Rule 23(e)(2)(A) .......................................................................29

Rule 23(e)(2)(D) .......................................................................29

*Procedural Guidance for Class Action Settlements*
N.D. Cal ............................................................................8, 9, 22

# INTRODUCTION

Ninth Circuit law is silent about what factors a district court should consider when a settlement proposes to dramatically compromise available aggregate statutory damages.

The *Hanlon/Churchill* factors followed in this Circuit provide no guidance to courts asked to approve an astronomical discount of recoverable statutory damages. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Recently, this Court addressed the test for whether a statutory damages class judgment violates constitutional due process, *see Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1120 (9th Cir. 2022), and *declined* to adopt the Supreme Court's limitations on punitive damages for aggregated statutory damages. *Id.* at 1122. This case presents the question of first impression as to how courts are to apply due process limits in the context of a class action settlement, rather than a judgment. Here, Class Counsel compromised the Class's aggregate statutory damages claims for less than 0.0073% of total statutory damages. There is no basis in Ninth Circuit law for approving such a radical discount of the Class's potential recovery. A recovery of less than one-ten-thousandth of available damages suggests the case lacked merit, which is inconsistent with this Court's prior determinations regarding concrete damages and available causes of action.

1

The Federal Wiretap Act provides for statutory damages of $10,000 to each Class member for Facebook's violation.[1]  With over 124 million class members, the aggregated statutory damages for Facebook's violation of the Wiretap Act total at least one trillion two hundred forty billion dollars ($1,240,000,000,000).  The parties settled the case for ninety million dollars ($90,000,000), representing a discount against statutory damages of $1,239,910,000,000.  The district court, in approving the settlement, held that Appellants failed to "explain why *10% recovery* plus injunctive relief is unfair."  Dkt. 289, p. 14, l. 1-2 (emphasis added).  Yet, twenty-one days earlier, this Court had held that litigants are not limited to a single digit multiplier of actual losses when recovering statutory damages.[2]  *See Wakefield, supra*, at 1122.  The district court's approval of the settlement was based on Class Counsel's legally incorrect assertion that class damages are tied to disgorgement and class recovery would be capped at $900 million.

---

[1]  The Wiretap Act contains no provision restricting enforcement of claims through a class action or capping/limiting available statutory damages in a class action to a particular collective dollar amount.

[2]  The district court erred by accepting Class Counsel's contention that actual damages are confined to Facebook's purported profits on the sale of private class member information, and again erred by suggesting that *State Farm*'s single digit punitive damages multiplier must be applied to calculate maximum recoverable damages.  *See State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 424-6 (2003).

Furthermore, settlement notice to the class failed to provide class members with a clear statement of class claims and their rights in those claims, thus violating Rule 23 and constitutional due process.

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction in this matter pursuant to 28 U.S.C. §1331 because plaintiffs alleged defendant Facebook violated the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, and the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* As well, the district court had diversity jurisdiction over the state claims alleged in this action under 28 U.S.C. §1332(d) because the suit is a class action in which the citizenship of one or more plaintiffs differed from that of the defendant and the aggregate amount in controversy exceeded $5,000,000.

This Court has appellate jurisdiction because this is an appeal following entry of a final judgment. 28 U.S.C. §1291. The district court's Order Granting Motion for Final Approval of Class Action Settlement; Granting Motion for Attorneys' Fees, Expenses, and Service Awards; Judgment was entered on November 10, 2022. Dkt. 289. Appellants Sarah Feldman and Cameron Jan timely filed their Notice of Appeal on December 8, 2022. Dkt. 293. Appellants objected to the Settlement and so have standing to make this appeal. *Devlin v. Scardelletti*, 536 U.S. 1 (2002).

3

## STATEMENT OF ISSUES

1.      Did the district court apply an incorrect legal standard when considering the compromise of statutory damages in a settlement context?

2.      Did the district court abuse its discretion by approving a settlement that compromises statutory damages by over 99.9927% without first calculating and considering gross statutory damages?

3.      Did the district court abuse its discretion by finding class representatives and class counsel *adequately represented* the interests of the class within the meaning of Rule 23(e)(2) when they settled class member claims for 0.0073% of calculable statutory damages?

4.      Does the settlement, which provides a *gross* recovery of 73¢ on a class member's claim valued at $10,000.00, give *adequate relief* within the meaning of Rule 23(e)(2)?

5.      Did class notice comport with Rule 23 and satisfy constitutional due process?

## STATUTORY AND REGULATORY AUTHORITIES

Statutes and Rules are set forth in an Addendum following the brief.

**STATEMENT OF THE CASE**

The first class action complaint in this case was filed on September 30, 2011, in the Northern District of California in *Davis v. Facebook, Inc.*, Case No. 5:11-cv-04834-PSG, stating causes for violations of the Federal Wiretap Act, the Stored Electronic Communication Act, and the Federal Computer Fraud and Abuse Act. The Judicial Panel on Multidistrict Litigation subsequently ordered *Davis* and other cases consolidated in an MDL styled *In re: Facebook, Inc. Internet Tracking Litigation*, Case No. 5:12-md-02314-EJD-NC, out of which this appeal arises.

Plaintiffs sued Facebook for tracking their online activities without their consent, whether or not they were logged-in to Facebook, stating common law and statutory causes of action in contract and tort. A series of three amended consolidated class action complaints were filed in the district court. Facebook filed successful motions to dismiss each of these complaints, leading to an appeal.

On April 9, 2020, this Court issued its opinion affirming in part and reversing in part the district court's order(s) granting Facebook's several Motions to Dismiss (i.e., on the First, Second, and Third Amended Complaints). *In re: Facebook, Inc. Internet Tracking Litigation,* 956 F.3d 589 (9th Cir. 2020). This Court affirmed the district court's dismissal of causes of action for violation of the Federal Stored Communications Act, breach of contract, and breach of the implied covenant of good faith and fair dealing, but determined plaintiffs had standing to bring claims for

5

invasion of privacy, intrusion on seclusion, trespass to chattels, fraud, and larceny. This Court further determined that plaintiffs had standing to bring, and had adequately pled the elements of, causes for violation of the Federal Wiretap Act, the California Invasion of Privacy Act, and California's Computer Data Access and Fraud Act, all of which the district court had dismissed.

Facebook unsuccessfully sought a writ of certiorari from the Supreme Court. After remand to the district court, this case went into a procedural holding pattern, with the court issuing four orders extending deadlines while the parties negotiated a settlement. On February 14, 2022, Class Counsel filed a Motion for Settlement Class Certification and Preliminary Approval of Class Action Settlement.

The Third Amended Complaint, filed August 25, 2017, is the most recent and apparently operative complaint in this case. It contains *only two* causes of action (breach of contract and breach of the implied covenant of good faith and fair dealing), the same two causes this Court found had been correctly dismissed by the district court. No complaint conforming to this Court's April 9, 2020 opinion was ever filed.[3]

As consideration for the settlement, Facebook agrees to pay a gross amount of $90 million and promises to destroy any still-retained data collected in violation

---

[3] No operative complaint was on file – or posted to the settlement website – at the time of Settlement, Preliminary Approval, or Final Approval.

of the privacy and property rights of class members between April 22, 2010, and September 26, 2011.

The district court granted preliminary approval of the settlement, and ordered notice consistent with the Notice Plan, on March 31, 2022. Document 241. Class Counsel filed their Motion for Final Approval on August 23, 2022. Document 254. Appellants timely filed their objection on September 11, 2022. Document 265. The district court held a final approval hearing on October 27, 2022, and issued its Order Granting Motion for Final Approval of Class Action Settlement and Judgment on November 10, 2022. ER-3–27. Appellants timely filed their Notice of Appeal on December 8, 2022. ER-153.

## SUMMARY OF ARGUMENT

The district court abused its discretion by applying an incorrect standard to its evaluation of the settlement, which represents the smallest percentage of recoverable damages in the history of class action settlements. The district court erroneously believed that plaintiffs' recovery was limited to ten times disgorgement damages when it held that the settlement was 10% of maximum damages. In fact, this Court had rejected that standard in a decision issued three weeks before the district court approved the settlement. The ordinary ten-to-one ratio limit applies only to punitive damage awards, not aggregated statutory damages.

7

The settlement is by no means the largest privacy settlement Facebook has agreed to during the past three years in the Northern District, and whether the settlement was at the time "the tenth largest privacy rights settlement of its kind" is irrelevant under the *Hanlon* factors. Fairness Hearing Transcript, ER-37. The critical question is whether $90 million is an appropriate discount of the $1.24 *trillion* aggregate statutory damages suffered by the 124 million class members in light of plaintiffs' likelihood of prevailing on the merits.

The procedural guidelines of the Northern District of California obligated Class Counsel to provide the District Court with "the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims."[4] *Procedural Guidance for Class Action Settlements*, Addendum, A-5. The court failed to enforce Class Counsel's obligation; consequently, the court was never informed of the potential class recovery or provided any justification for the extreme discount presented by the settlement.

The settlement proposes to compromise statutory damages by 99.9927%, providing a gross recovery of only 73¢ for every $10,000 in available statutory

---

[4] This procedural guideline is consistent with the Rule 23, Notes of Advisory Committee-2009 Amendment, Subdivision (e)(1), which describe that at the preliminary approval stage "The parties should also supply the court with information about the likely range of litigated outcomes, and about the risks that might attend full litigation."

damages, yet the district court failed to examine and explain the massive discount in light of the case's merits. Such a monumental discount against statutory damages cannot – without proper analysis and sufficient justification – be regarded as adequate within the meaning of Rule 23(e)(2). The court's uninformed analysis was grounded in an incorrect assumption that limitations on post-trial punitive damages apply to statutory damages in a settlement setting, and no effort to justify the drastic discount against statutory damages was made.

At the time of settlement there was no operative complaint on file with the court, in violation of the Northern District's *Procedural Guidance for Class Action Settlements*. *See* Addendum, A-5 (requiring Class Counsel explain the "differences between claims to be released and the claims in the operative complaint"). Here, Class Counsel neither explained nor mentioned to the district court the enormous difference between the claims being released and the claims contained in the operative complaint – indeed, no operative complaint conforming to the 2020 opinion of this Court was ever filed.

Class notice failed to adequately inform class members regarding the claims that survived appeal and that were being compromised by the proposed settlement, and their interest in those claims, without which information class members could not evaluate the proposal and meaningfully exercise their right to opt out of the class settlement.

## STANDARD OF REVIEW

A district court's decision to approve a class action settlement is reviewed for abuse of discretion. *Saucillo v. Peck*, 25 F.4th 1118, 1129 (9th Cir. 2022). *In re Bluetooth Prod. Liab. Litig.*, 654 F 3d 935, 940 (9th Cir. 2011). The award of statutory damages is likewise reviewed for an abuse of discretion. *Six Mexican Workers v. Arizona Citrus Growers*, 697 F.2d 1333, 1339-40 (9th Cir. 1990). Whether the district court applied the correct legal standard is reviewed *de novo*. *Sea Coast Foods, Inc. v. Lu–Mar Lobster & Shrimp, Inc.*, 260 F.3d 1054, 1058 (9th Cir. 2001). "Settlements that take place prior to formal class certification require a higher standard of fairness." *In re Mego Financial Corp. Securities Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

This Court reviews "de novo whether notice of a proposed settlement satisfies due process." *In re Online DVD-Rental Antitrust Litigation* 779 F.3d 934, 946 (9th Cir. 2015). *See also Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1374 (9th Cir.1993).

## ARGUMENT

**I.** **THE DISTRICT COURT APPLIED AN INCORRECT LEGAL STANDARD WHEN EVALUATING AND APPROVING THE PROPOSED SETTLEMENT**

### A. The district court applied an incorrect standard in using disgorgement as the measure of actual class damages

The district court applied the wrong legal standard when it simply assumed, without explanation, that disgorgement of the amount Facebook purportedly earned from selling Class Member's web-surfing data would represent a 100% recovery of damages in this case. Dkt. 289, p. 13, l. 16 through p. 14, l. 2. This assumption – which undergirds the court's rejection of Appellants' objection and is foundational to its settlement approval – was entirely incorrect and worked to the substantial prejudice of the Class.

The Wiretap Act defines statutory damages as the greater of disgorgement[5] or $10,000 per violation.[6] If the sum calculable under 18 U.S.C. § 2520(c)(2)(A) is less than $10,000, then $10,000 is the statutory damage pursuant to (c)(2)(B). *See* Addendum, A-3. Hence, for purposes of analyzing available damages under the

---

[5] 18 U.S.C. § 2520, provides that disgorgement may only be considered as one of the two addends – along with actual damages suffered by plaintiff – that together equal a sum available for award under § 2520(c)(2)(A). This calculation becomes irrelevant if less than the $10,000 defined by § 2520(c)(2)(B).

[6] The district court made no finding as to *actual damages*, nor did it attempt to calculate the sum of damages available under § 2520(c)(2)(A).

11

Wiretap Act in this case, disgorgement becomes irrelevant, and 18 U.S.C. § 2520(c)(2)(B) controls and dictates that damages are $10,000 per class member.[7]

Frequently, "statutes combine deterrence, compensatory, and punitive goals in a single lump sum." *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022). That is not the case with 18 U.S.C. § 2520, which, in addition to statutory damages, provides for separate "punitive damages."[8] *See* 18 U.S.C. § 2520(b)(2). *See also Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) ("Congress provided for punitive damages in addition to any actual or statutory damages … which further suggests that the statutory damages provision has a compensatory, not punitive, purpose.") Here, principles of statutory construction compel the conclusion that Congress intended the $10,000 statutory damages to compensate a victim for the intangible injury to a person's privacy interests that are otherwise difficult to quantify, and that the specified amount is within Congress's "broad discretion in awarding damages." *Wakefield,* 51 F.4th at 1120.

---

[7] The statutory damages are only $10,000 per class member if they are limited to one violation per class member. The Federal Wiretap Act provides for $10,000 statutory damages *for each violation* of the Act, and the Act was arguably violated each time Facebook captured the URL of a website visited by a Facebook user.

[8] "Punitive damages are traditionally designed to punish and deter and thus may exceed the aggrieved party's actual loss." *Jacobson v. Rose* 592 F.2d 515, 520 (9th Cir. 1978).

There is absolutely no basis for using the arbitrary figure of $90 million to cabin the Class's recovery in this case. Nothing in the record explains this number. Facebook denies making even one dollar from the tracking histories that it captured. Fairness Hearing Transcript at ER-83 ("There was nothing obtained unjustly. There would be nothing to disgorge because, as we said in our papers, this was a bug. It was collecting information. It was not – it was not being tethered to the advertising apparatus at the company. It wasn't being monetized or used… What is the amount to be disgorged? I kept saying it's zero.").[9]

Therefore, there was absolutely no basis in the record for the district court's use of the arbitrary figure of $90 million in finding that the settlement recovered "10%" of potential damages. Disgorgement was a red herring made up out of whole cloth by Class Counsel to distract the district court from the settlement's patent inadequacy. Notwithstanding Class Counsel's assertion that "it would be difficult to prove unjust enrichment above $90 million" (Document 254, p. 15, l. 8), disgorgement is not the measure of statutory damages in any event. Here, the Wiretap Act's statutory damages of $10,000 per violation is the default damage amount. *See* 18 U.S.C. § 2520(c)(2)(B), Addendum, A-3.

---

[9] If the disgorgement figure did not come from Facebook, it is difficult to imagine where Class Counsel came up with that number. Typically, a defendant will share its revenue numbers with class counsel as part of a mediation. Here, Facebook continues to this day to deny that it received any revenue from the illegally captured internet histories.

In Congress' estimation, the concrete injury to a person's privacy and reputational interests is worth $10,000 to the average person. *See Davis v. Facebook, Inc.,* 956 F.3d 589 (9th Cir. 2020) ("Plaintiffs have adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information."). Who is to say that $10,000 is not an actual monetary approximation of the harm a person suffers when they lose control of their personal information? The district court had no authority to overrule Congress on this point. And if $10,000 is the proper measure of individual harm, then $1,240,000,000,000 is the aggregate amount of harm suffered by a class of 124 million.

The district court applied the wrong standard when examining the settlement by using disgorgement as the measure of class damages. This Court should make a *de novo* finding that the correct standard requires analysis using calculable statutory damages of $10,000 per class member.

**B.** **The district court applied the incorrect standard by adopting Class Counsel's contention that *State Farm* establishes due process limits on the recoverability of statutory damages**

Compounding the district court's fundamental error in limiting actual damages to the $90 million by which Class Counsel claimed Facebook was unjustly enriched through the sale of improperly-gathered data, the court further erred by assuming without analysis that a court would be limited to entry of a post-trial

14

judgment of no more than ten times those arbitrary damages. ER-15–16. Contrary to this Court's holding in *Wakefield*, *supra*, the district court here adopted and applied Class Counsel's argument that *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 424-6 (2003) controls the court's analysis of available statutory damages in this case. *See* ER-15–16 ("single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution") ("By Class Counsel's calculations, the settlement fund is 10% of the potentially recoverable statutory damages.").[10]

> **(1)** **The district court incorrectly applied *State Farm*'s limits on punitive damages when analyzing settlement of a compensatory damages claim**

"Compensatory and punitive damages serve different purposes. … Compensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.'" *State Farm*, *supra*, 538 U.S. at 416, citing *Cooper Industries, Inc. v. Leatherman Tool Group, Inc*., 532 U.S. 424 (2001). "Punitive damages are imposed for purposes of retribution and deterrence." *State Farm*, *supra*, at 416, *citing BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996).

---

[10] Nowhere in either their Motion for Preliminary Approval or Motion for Final Approval do Class Counsel discuss damages, including unjust enrichment claims, in the context of the Wiretap Act.

*State Farm*'s due process analysis of punitive damages – establishing a standard of reasonableness and proportionality to harm and general damages recovered – would apply if the district court were being asked to consider whether a supplementary punitive damages award, on top of a compensatory damages award, was "grossly excessive" or an "arbitrary punishment." *See State Farm*, *supra*, at 416, citing *Cooper Industries, supra*, at 433. The district court, however, was not asked to examine an award of punitive damages, and, as this Court held last October, *State Farm*'s standards expressly *do not* apply in a class action brought for aggregated statutory damages. *See Wakefield*, *supra*, 51 F.4th at 1122 (declining to extend *State Farm's* punitive damages limits to statutory damages cases). "We stress that only rarely will an aggregated statutory damages award meet the exacting [*St. Louis, I.M. & S. Ry. Co v. Williams*, 251 U.S. 63 (1919)] standard and exceed constitutional limitations where the per-violation amount does not." *Id*. at 1123.

Here, the district court mistakenly determined that available compensatory damages were limited to disgorgement of Facebook's mythical $90 million unjust enrichment, then multiplied that artificial number by ten to yield a denominator of $900 million, thereby producing the erroneous conclusion that $90 million is a 10% recovery of maximum damages. The district court's employment of *State Farm*'s limitation on punitive damages in the context of a statutory damages settlement is legal error requiring reversal.

16

**(2)** **The Wiretap Act's separate provision for punitive damages renders its $10,000 per violation statutory damages entirely compensatory**

"Punitive damages are imposed for purposes of retribution and deterrence," and compensatory damages are meant to provide redress for damages "plaintiff has suffered by reason of the defendant's wrongful conduct." *State Farm,* 538 U.S. at 416. Some statutory damages comprise punishment, deterrence, *and* compensation in their scope. 18 U.S.C. § 2520, however, provides $10,000 as the measure of *compensatory damages* only, and provides separately for the recovery of punitive damages. *See* 18 U.S.C. § 2520(b)(2), Addendum, A-2 .

Where Congress makes provision for punitive damages separate and apart from defined-amount statutory damages, the implication is that statutory damages are compensatory in nature. *See Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) ("Congress provided for punitive damages in addition to any actual or statutory damages … which further suggests that the statutory damages provision has a compensatory, not punitive, purpose.")

Congress has broad discretion in the establishment of statutory damages. *See St. Louis I.M. & S. Ry. Co. v. Williams,* 251 U.S. 63, 67 (1919). Here, as in *Williams*, it cannot be said that the $10,000 per violation statutory damages is wholly disproportionate or obviously unreasonable[11] in light of the Wiretap Act's important

---

[11] "When the penalty is contrasted with the overcharge possible in any instance it of

purpose of securing uniform adherence to laws protecting Americans' internet privacy or the "numberless opportunities for committing the offense" that Facebook possessed and exploited. *Id*. at 67.

Appellants acknowledge this Court's holding that "aggregation [of statutory damages] can, in extreme circumstances, result in awards that may greatly outmatch any statutory compensation and deterrence goals, resulting in awards that are largely punitive."[12] *Wakefield*, *supra*, 51 F.4th at 1122. And, "where statutory damages no longer serve purely compensatory or deterrence goals, consideration of an award's reasonableness and proportionality to the [statutory] violation and injury takes on heightened constitutional importance." *Id.* at 1222-23.

The fact that Congress provided for punitive damages separate and apart from statutory damages of $10,000 compels the conclusion that the 18 U.S.C. § 2520(c)(2)(B) statutory damages are compensatory only. True, when aggregated such damages "have the capacity to 'expand the potential statutory damages so far beyond the actual damages suffered that the statutory damages come to *resemble*

_____

course seems large, but, as we have said, its validity is not to be tested in that way. When it is considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence … we think it properly cannot be said to be so *severe and oppressive* as to be wholly disproportioned to the offense or obviously unreasonable." (Emphasis added.) *St. Louis I.M. & S. Ry. Co. v. Williams,* 251 U.S. 63, 67 (1919).

[12] It is unclear why *Wakefield* disassociates deterrence from punishment in contrast to *State Farm,* 538 U.S. at 416.

18

punitive damages." *Wakefield* 51 F.4th at 1122 (emphasis added). Here, however, even though class-wide statutory damages for violation of the Wiretap Act total $1.24 trillion, Congress did not intend these compensatory damages to be punitive in measure and has nowhere suggested a cap on available damages. *See Wakefield* 51 F.4th at 1124 ("We are constrained by a statute's language and interpret statutes with awareness that Congress could have enacted limits as to damages, including in large class action litigations…"). *See also Bateman v. American Multi-Cinema, Inc.,* 623 F.3d 708, 720 (9th Cir. 2010) ("Had Congress been sufficiently concerned about disproportionate damages as a result of class actions, it would have limited class availability or aggregate damages.")

In the context of FACTA's compensatory statutory damages – which were not capped in the case of class actions – this Court held:

> "'In the absence of such affirmative steps to limit liability,' we held, 'we must assume that Congress intended FACTA's remedial scheme to operate as it was written.' *Id.* at 722–23. As a result, we concluded that to refuse to follow the statute's text, in that instance by limiting class action availability to avoid 'enormous' potential liability,' would 'subvert congressional intent.' *Id.* at 723. Because the appropriate penalty for statutory violations is a legislative decision best left to Congress, courts should disregard the plain statutory language directing damages and allowing class action and other aggregation only in the most egregious of circumstances.

*Wakefield* 51 F.4th at 1124

The district court never analyzed the provisions of 18 U.S.C. § 2520(b)(2), (c)(2)(A), and (c)(2)(B), and never performed the simple, mechanical calculation of

aggregated statutory damages available to the class under the Wiretap Act. Instead, without identifying the important interests Congress sought to protect through the Wiretap Act and the unequal position occupied by Facebook when it illicitly and without consent monitored class member internet usage, the district court, at the prompting of Class Counsel, determined that disgorgement of profits establishes the limit of actual damage.[13]

While this Court has held that aggregated statutory damage awards could violate due process in "certain extreme circumstances" and has established a basic due process analysis for such awards, the district court ignored available statutory damages and failed to engage in the analysis necessary to make any adjustments to those damages. *See Wakefield* at 1121-22 ("An aggregated award could, like a per-violation award, be wholly disproportioned to the prohibited conduct (and its public importance) and greatly exceed any reasonable deterrence value."). The district court never measured the settlement against the important privacy interests sought to be protected by the Wiretap Act and never considered whether the settlement would have even a modest deterrent effect.

---

[13] This Court's earlier analysis of disgorgement of profits was in the context of standing related only to "California common law trespass to chattels and fraud, statutory larceny, and violation of the CDAFA." *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 599-601 (9th Cir. 2020). Disgorgement has nothing to do with plaintiffs' standing to make claims under the Wiretap Act.

Unless the district court first made a finding that the $10,000 statutory damages provided by the Wiretap Act are wholly disproportionate or obviously unreasonable considering the statute's purpose, it was bound to use the $10,000 per violation amount when beginning its evaluation of the proposed settlement. *See St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919). The district court never made such a finding. In this regard, the district court clearly applied the wrong legal standard.

It is certain, however, that the $90 million settlement approved by the district court will have absolutely no deterrent effect on a company worth in excess of $500 billion.[14]

## C. The district court failed to compare potential damages for each claim with the proposed settlement recovery and to justify the astronomical discount, in violation of the Northern District's Procedural Guidance and the Circuit's *Hanlon* factors

When asked to approve a proposed settlement the district court must balance the value of the claims being surrendered against what is being offered in exchange; otherwise, the court's approval is uninformed and arbitrary, and meaningful findings of fairness, reasonableness, and adequacy cannot be made. The Northern District has promulgated guidelines to assist in this evaluation. The District's *Procedural*

---

[14] In view of the public importance of the privacy rights protected by the Wiretap Act, a settlement of 1% of available statutory damages, $12.4 billion, would not be an excessive deterrent or violate due process.

21

*Guidance for Class Action Settlements* requires that Class Counsel provide the court with "the class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount." Addendum, A-5. This requirement is a prescribed means of addressing the first, second, and fourth factors set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1997) – strength of case, risk, and the amount of settlement – in a way that permits meaningful application of those factors.

Class Counsel actually concede that they failed to satisfy their requirement to inform the court about the risks of continued litigation because it was too much work: "I had 40 pages of the brief we had to cut out showing the strengths and weaknesses of the case because it was really too much to file." Fairness Hearing Transcript at ER-55. This is astonishing, given that a candid discussion of the strengths and weaknesses of the case is perhaps the most important thing to be included in a motion for settlement approval. By omitting the most critical information relevant to a settlement approval analysis, Class Counsel prevented the district court from discharging its duty to compare the likely result of continued litigation with the settlement amount.

A class action settlement amount must be reasonable as a function of the relationship between maximum potential recovery and a discount according to the

risk of continued litigation. As explained by the Seventh Circuit, a judge must "quantify the net expected value of continued litigation to the class, *since a settlement for less than that value would not be adequate*. Determining that value would require estimating the range of possible outcomes and ascribing a probability to each point on the range." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-285 (7th Cir. 2002) (emphasis added).

> Some arbitrary figures will indicate the nature of the analysis that we are envisaging. Suppose a high recovery were estimated at $5 billion, medium at $200 million, low at $10 million. Suppose the midpoint of the percentage estimates for the probability of victory at trial was .5 percent for the high, 20 percent for the medium, and 30 percent for the low… Then the net expected value of the litigation, before discounting, would be $68 million… [O]ur point is that the judge made no effort to translate his intuitions about the strength of the plaintiffs' case, the range of possible damages, and the likely duration of the litigation if it was not settled now into numbers that would permit a responsible evaluation of the reasonableness of the settlement.

*Id*. at 285.

The above description applies equally to the district court in this case. Judge Davila failed to "translate his intuitions" in arriving at his conclusion that $90 million is sufficient compensation for the trillion dollars in class member claims proposed to be released by this settlement. After this Court reversed the district court's dismissal of the plaintiffs' most valuable claims, including the Federal Wiretap Act claim, this case had cleared one of the major hurdles to recovery on the

merits.   Assuming the case has only a 1% chance of success at trial – which is conservative given plaintiffs' win on appeal – this case would demand a settlement in the range of $12.4 billion (i.e., 1% of $1.24 trillion).[15]

In another recent statutory damages class action against Facebook in this Circuit, the district court rejected a proposed settlement that represented 5.7% of total aggregated statutory damages, after that case had survived an appeal of class certification.  *See In re Facebook Biometric Info. Privacy Litig.*, 522 F.Supp.3d 617, 621 (N.D. Cal. 2021).[16]   The court ultimately approved a settlement representing 6.8% of aggregate statutory damages.  *Id*. at 622.[17]

---

[15] A settlement of this amount would also be fully consistent with the purposes of the Federal Wiretap Act, in light of Facebook's considerable net worth and prior conduct.  A $90 million settlement seems unlikely to have much deterrence value to a company that recently paid a $5 billion fine to the DOJ for failing to abide by a prior consent order regarding its privacy practices.  *See U.S. v. Facebook, Inc.*, 456 F. Supp. 3d 115 (D.D.C. 2020).  It would appear that something substantially greater than $90 million is required to deter Facebook in its unceasing efforts to amass a treasure-trove of personal information about its users.

[16] Unlike this case, *Facebook Biometric* did not sell its users' biometric data to other companies for revenue.  It used the data exclusively internally for face-tagging on the Facebook platform, which arguably enhanced users' experience.  Facebook Biometric is a "pure" statutory damages class action that obtained a settlement representing at least 6.8% of recoverable aggregate statutory damages.

[17] Facebook recently settled a privacy class action in the Northern District for $725 million in a case involving 250 million class members, or $3 per class member. Though that case had lower available maximum per class member statutory damages (i.e. between $1,000 and $2,500), using *only* the same ratio of class members to dollar recovery would suggest at least $375 million settlement would be appropriate in the instant case; if adjustment is made for this case's greater available statutory damages and fewer class members, a settlement of $1.49 billion would be

The *Facebook Biometric* settlement, which likewise included a promise by Facebook to discontinue its misconduct, should establish a benchmark for this and other statutory damage class actions. The court in that case first rejected a settlement that represented less than 6% of potentially recoverable statutory damages. Consequently, Facebook agreed to contribute an additional $100 million in order to settle a case that sought only statutory damages provided by Illinois statute. Facebook should be willing to pay at least as much to settle this case in which plaintiff's internet histories were illicitly captured, resulting in actual concrete harm to plaintiffs' privacy interests.

In its decision, the district court conflated the adequacy-of- settlement analysis with the *State Farm* due process test to support an incorrect finding that the settlement represents a 10% recovery of maximum damages. The due process limitation described in *Wakefield*, *supra*, however, is a check for oppressiveness to the defendant that is applied only *after* a judgment or verdict is rendered.

When analyzing a proposed settlement, the court should apply the *Wakefield* oppressiveness standard *only after* it has calculated recoverable damages in view of litigation risk. In this case, the district court's three-part analysis should have begun with a calculation of aggregated statutory damages, followed by a discount

---

appropriate by comparison. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, N.D. Cal. No 18-md-02843-VC, Docket No. 1096.

according to risk of continued litigation, and then proceeded to a cross-check – and, if necessary, an adjustment – for *Wakefield* oppressiveness. This is what the Northern District's own rules specify.

As an illustration, assume this case, having survived an appeal challenging standing and the ability to state a claim, has at least a 1% chance of success at trial.[18] Applying this 1% to the potential aggregate statutory damages of $1.24 trillion yields the figure of $12.4 billion. Barring punitive effect, this is the minimum amount required for a settlement of this case to be approved as adequate in every Circuit in the country. No Circuit, including the Ninth, permits a case to be settled for less than its likely litigation value, which is calculated by multiplying potential damages by the likelihood of success. "[I]n every instance [the court must] compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *Acosta v. Trans Union, LLC*, 240 F.R.D. 564 (C.D. Cal. 2007) ("court must apprise itself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated") (*quoting Weinberger*

---

[18] Of course, this case likely has a far higher chance of success on the merits, given its procedural posture and the fact that, by this Court's opinion, it has survived motions to dismiss. Appellants use the conservative number of 1% for purposes of illustration, only. If Class Counsel contend the case has a lower than 1% chance of success, this Court should require them to explain why they filed a frivolous case.

*v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)). By this measure, the settlement approved by the district court is about $12.3 billion short.

*Acosta, supra*, is particularly instructive and relevant to the facts of this case. *Acosta* was a class action for violation of the Fair Credit Reporting Act ("FCRA"), with potential statutory damages of $2 billion. After finding that the proposed settlement represented "not even one-fifth of one percent of the litigation value of these claims" the court denied approval to the settlement.[19] *Acosta*, *supra*, 240 F.R.D. at 578. "Were Plaintiffs' claims against Trans Union and Equifax grounded in such a tenuous basis that they were hopelessly doomed to fail in court, such a colossal discrepancy between their apparent litigation value and the value of the Settlement may be acceptable. That is not true here." *Id*. The same could be said of this case, where the settlement is just 0.0073% of the litigation value of the claims being settled. Class Counsel has failed to make the case that their claims are "hopelessly doomed to fail in court." Barring such a showing, approval of the proposed settlement is not permissible – it simply cannot be adjudged adequate.

After arriving at an adequate settlement value of $12.4 billion, the court then, and only then, should have subjected that figure to the *Wakefield* test for

---

[19] One-fifth of one percent of the litigation value of the claims in this case would be $2.5 billion. While this amount may still be insufficient compensation for the litigation value of the Wiretap Act claims, at least it is in the ballpark for starting a discussion. $90 million is absurd.

27

constitutional excessiveness. If the court determined that the amount of $12.4 billion was constitutionally excessive, it should then have determined the *maximum amount* that would not violate due process, *i.e.*, the constitutional limit, and set the minimum adequate settlement amount at that figure. For example, since Facebook has previously stipulated to and paid a $5 billion fine to the DOJ for violation of a prior privacy consent order, the court could have found the amount of $5 billion is *prima facie* not constitutionally excessive. Indeed, Facebook has borne that amount and again gone out and violated individual privacy rights.[20] This indicates that $5 billion does not exceed the amount reasonably necessary to deter Facebook from ongoing and knowing invasions of third-party privacy rights.[21]

The Class would be far better off taking this case to trial with a 1% chance of winning a verdict of $1.2 trillion, even if that judgment were ultimately reduced to $5 billion by the guidelines set forth in *Wakefield,* than they are with the $90 million settlement that is dwarfed by the $650 million settlement in *Facebook Biometric* and $750 million in *Facebook Consumer Privacy. See In re Facebook*

---

[20] *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, N.D. Cal. No 18-md-02483-VC.

[21] As pointed out by another objector, if the settlement paid minimum statutory damages of $10,000 to each of the 1.55 million valid claimants, a fair, reasonable and adequate settlement could be funded for $15.5 billion, far less than the $1.2 trillion number that gave the district court pause. It could also be pointed out that it would take a settlement of $150 million to provide just *current class claimants* with a 1% recovery of available statutory damages.

*Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617, 621 (N.D. Cal. 2021). *Facebook Biometric* had 9.4 million class members with potential aggregate statutory damages of approximately $9 billion and settled for $650 million. In this case, which has 124 million class members and potential aggregate damages of $1.2 trillion, a settlement for $90 million cannot be regarded as adequate when compared to *Facebook Biometric*[22] – certainly not without a determination that substantially greater litigation risk existed in this case, which topic was never addressed by Class Counsel or the district court.[23]

---

[22] This case and *Facebook Biometric* were in almost identical procedural posture at the time of settlement, each having survived a challenge to standing in this Court.

[23] On the other hand, if due process concerns really do limit recovery in this case to $900 million or less, then the proposed settlement class fails to satisfy the superiority requirement of Rule 23(b)(3). Each class member could sue individually and recover the statutory amount of at least $10,000, plus attorney's fees. If the very act of certifying a class compromises the class members' due process rights to the statutory damages provided by Congress, then aggregation of claims, a procedural device, adversely impacts class members' substantive rights, in violation of the Rules Enabling Act. The proposed settlement also fails the Rule 23(e)(2)(A) and (C) adequacy requirements for the same reasons. No adequate lead plaintiff or class counsel would pursue class litigation when doing so will provide inadequate relief of less than $1 for every $10,000 claim.

## II.   THE CLASS WAS DEPRIVED OF DUE PROCESS BY THE FAILURE OF CLASS NOTICE

Class notice in this case was nothing more than a procedural nicety that failed to provide absent class members with a reasonable description of the action being pursued on behalf of the class.  It was practically impossible for class members to glean a useful understanding of what was being compromised by the settlement and to make an informed decision about whether to opt out of this case and sue on their own for statutory damages of $10,000, plus attorney's fees.

Rule 23(c)(2)(B)[24] – in connection with both the certification notice and 23(e)(1) settlement notice – establishes that notice to the class  "must *clearly and concisely state* in plain, easily understood language: … (iii) the *class claims*, issues, or defenses."  (Emphasis added.)  Without adequate 23(e)(1) notice, absent class members cannot understand what they are giving up as part of the settlement.

The Supreme Court has held that class notice must be the "best practicable" and "should describe the action and the plaintiffs' rights in it."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  "[A] fully descriptive notice [ ] sent … to each class member, with an explanation of the right to 'opt out,' satisfies due process."  *Id.* at 812.  The Supreme Court has established that, at a minimum, due

---

[24] *See* Addendum, A-11.

process requires a description of both the action underlying the class action and plaintiffs' rights in that action.

Beyond requiring a description of the action and class members' rights in that action, there are no rules dictating the contents of a notice.[25]  The Federal Circuit has held "either notice or the method by which additional information is provided, must provide 'all necessary information for any class member to become fully apprised and make any relevant decisions.'"  (Internal citations omitted.)  *Haggart v. Woodley*, 809 F.3d 1336, 1349 (Fed. Cir. 2016).  This Circuit has held that "[b]efore the district court approves a class settlement under Rule 23(e), it is 'critical' that class members receive adequate notice."  *In re Hyundai and Kia Fuel Economy Litigation* 926 F.3d 539 (9th Cir. 2019).  "Rule 23(e) requires notice that describes 'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 945–946 (9th Cir. 2015).  To satisfy Rule 23(e)(1), settlement notice must "present information about a proposed settlement

---

[25] The Rule 23(e) "standard does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims."  *Lane v. Facebook, Inc.* (9th Cir. 2012) 696 F.3d 811, 826.  *See also In re Online DVD-Rental Antitrust Litigation* (9th Cir. 2015) 779 F.3d 934, 945–946.  However, *Lane* and *Online DVD* do not change the obligation of class notice to provide a description of class claims and class member rights in those claims consistent with *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 812.

neutrally, simply, and understandably." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).

Notice in the instant case failed to describe either the action or class members' rights being pursued by the action. See Class Notice, ER-144–152. Absent from the district court's memorandum and order is any finding that class notice provided a description of either the action or class members' rights protected by the action – both fundamental due process requirements of any Rule 23 settlement notice.

Instead, the court approved notice – under the heading "What is this lawsuit about?" – gave the following description of class claims:

> This lawsuit alleges that the Defendant improperly obtained and collected data from Facebook Users in the United States who visited non-Facebook websites that displayed the Facebook Like button between April 22, 2010 and September 26, 2011, inclusive.[26]

Class Notice, ER-146.

No description of the actual causes of action being pursued or individual class member interests in those causes appears anywhere in the notice.[27]

---

[26] This same description is given on the settlement website's FAQ page.

[27] By way of comparison, the notice provided class members in *In re Facebook Biometric Information Privacy Litigation*, Case No. 3:15-CV-03747-JD, stated specifically that "Facebook users … sued Facebook claiming [violation] of the Illinois Biometric Information Privacy Act (BIPA). That law says companies can't collect, store, or give out "biometric data," which includes things like face or fingerprint scans, without first giving notice and getting consent. This case alleges that Facebook used facial recognition technology to create face templates—unique templates that can be used to identify users in photos, that these templates are

Under the heading "What claims am I releasing if I stay in the Settlement Class?" the notice states:

> Unless you exclude yourself from the Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Defendant about any of the legal claims this Settlement resolves. The "Released Claims" section in the Settlement Agreement describes the legal claims that you give up ("release") if you remain in the Settlement Class. The Settlement Agreement can be found at www.FBInternetTracking Settlement.com.

Class Notice, ER-148.

There is, however, no "Released Claims section" in the Settlement Agreement.[28]

Class members hoping to find a meaningful description of "class claims, issues, and defenses" were left to documents posted to the settlement website. The website provided six different class action complaints, in three different captioned matters, the most recent of which – the operative Third Amended Consolidated Class Action Complaint ("TACAC") – was filed in August 2017 and stated causes of action for Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing, only. These two causes of action were earlier dismissed by the district court, which dismissal was affirmed by this Court. *See In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 611 (9th Cir. 2020). Class Counsel failed to

---

covered by BIPA, and that Facebook did this without the proper notice and consent."

[28] The settlement agreement includes a "RELEASES" section and a "CERTAIN DEFINITIONS" section, both of which use the phrase "Released Claims," but neither references the Federal Wiretap Act.

subsequently file a fourth amended class action complaint that conformed to this Court's 2020 opinion and there was no operative complaint on file when the action was tentatively settled and settlement notice given to the class.

Class Counsel did not post on the settlement website a copy of this Court's opinion in *In re Facebook, Inc. Internet Tracking Litigation*, and without the filing of a post-opinion fourth amended complaint class members were left thinking the only claims being advanced by class plaintiffs and Class Counsel were the TACAC's contractual causes, which were by ruling of this Court no longer enforceable against Facebook.

Remarkably, the district court describes this Court's 2020 opinion in this case as identifying "operative claims" without regard to the fact that actual class notice did not "clearly and concisely state in plain, easily understood language: … (iii) the *class claims*." *See* Rule 23(c)(2)(B). This Court's 2020 opinion cannot supplant necessary class notice; certainly not when the opinion was never posted to the settlement website and class members were not otherwise directed to seek it out to better understand what claims Class Counsel was advocating on their behalf.

Best practicable class notice requires the district court to consider "all the circumstances" of the case when determining what is required to "describe the action and the plaintiffs' rights." *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). When describing a class member's rights in the action – as opposed to class

34

members' rights in the *settlement* of the action – class notice should, at the very least, identify statutory claims that provide compensatory damages available to individual class members. In this case every class member's right to make a statutory claim worth $10,000 is being compromised for $0.73. Common sense and due process instruct that class members be informed, at the very least, of the statute that provides for available statutory damages, and thereby given the minimal means of exploring that claim. Nowhere in the class notice are class members told they have a claim under the Wiretap Act. Further, what appears to be the controlling TACAC misinforms class members by leading them to believe the claims being negotiated and compromised are those that in reality no longer exist.

Class notice is supposed to simply and understandably present class members with information sufficient to inform them of the claims underlying a class action and their rights in those claims. By failing to adequately inform class regarding claims being released, the notice deprived them of the critical information central to the most important decision they had to make – whether to stay in the settlement or opt out and sue on their own for the $10,000, plus fees, Congress provided for them. *Phillips Petroleum* 472 U.S. at 812. Here, class notice left class members guessing about their rights and hid that substantial individual statutory damages were being sold for a net recovery of less than the price of a postage stamp. The notice's lack of a clear statement of claim(s), including references to statutes giving rise to same,

along with the absence of any description of class member rights in those claims, violates Rule 23 and constitutional due process.

Appellants ask this Court to consider *de novo* the notice provided to class members and to find it fails to meet the standards of both Rule 23 and constitutional due process.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's approval of the settlement and remand to the district court with guidance as to how the district court should analyze the settlement in the context of the litigation value of the case and in light of *Wakefield*'s due process concerns.

This Court should further find the class notice violated Rule 23 and constitutional due process standards and direct the district court to provide notice to the class that clearly and concisely describes the claims being compromised by the settlement, including without limitation for violation of the Wiretap Act – including a description of the availability of individual statutory damages, plus attorney's fees, under the act – and advises that the only way to obtain those full damages is to opt out of this case.

Respectfully submitted,

Appellants Sarah Feldman and
Hondo Jan,
by their attorneys:


/s/ Kendrick Jan
Kendrick Jan, SBN 105149
Kendrick Jan, APC
225 Broadway, Ste. 2220
San Diego, CA 92101
Tel: (619) 231-7702
kj@jan-law.com


/s/ John J. Pentz
John J. Pentz, Esq.,
18 Damon Street
Wayland, MA 01778
Phone: (978) 261-5725
jjpentz3@gmail.com

37

## <u>STATEMENT OF RELATED CASES</u>

### (CIRCUIT RULE 28-2.6)

**9th Cir. Case No: 22-16903**

The undersigned attorney or self-represented party states the following:

I am aware of one or more related cases currently pending in this Court. The case number and name of each related case and its relationship to this case are:

**Case No. 22-16904** (Appellant Eric Alan Isaacson)
**Case Name:** *Perrin Davis, et al., v. Meta Platforms, Inc.*
**Case relationship:** Cases No. 22-16903 and No. 22-16904 arise out of the same final order and judgment issued in N.D. Cal. Civil Action No. 5:12-md-2314-EJD.

Signature: __s/John Pentz_____    Date: 4/19/2023

## <u>CERTIFICATE OF COMPLIANCE</u>

**9th Cir. Case No: 22-16903**

I am the attorney or self-represented party.

**This brief contains 8,745 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). (Note: This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.)

I certify this brief complies with the length limit set forth in Cir. R. 32-1(a).

Signature:    s/John Pentz                    Date: 4/19/2023

# <u>CERTIFICATE OF SERVICE</u>

**9th Cir. Case No: 22-16903**

I hereby certify that I electronically filed the foregoing and attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Description of Documents**:

Opening Brief of Appellants Sarah Feldman and Hondo Jan

Appellants' Excerpts of Record
(Circuit Rule 30-1)

Signature: ___s/John Pentz_____          Date: 4/19/2023

40

*Perrin Aikens Davis, et al., v. Meta Platforms, Inc., FKA Facebook, Inc.*
Case No. 22-16903

## <u>ADDENDUM TO APPELLANTS' OPENING BRIEF</u>

Statutes and Rules

## <u>INDEX</u>

Index ............................................................................................ A-1

United States Code Annotated
    18 U.S.C.A. § 2520.............................................................. A-2–4

Procedural Guidance for Class Action Settlements
    N.D. Cal. ............................................................................ A-5–9

Federal Rules of Civil Procedure
    Rule 23 ............................................................................... A-10–16

**A-1**

| United States Code Annotated |
| Title 18. Crimes and Criminal Procedure (Refs & Annos) |
| Part I. Crimes (Refs & Annos) |
| Chapter 119. Wire and Electronic Communications Interception and Interception of Oral Communications (Refs & Annos) |

### 18 U.S.C.A. § 2520

### § 2520. Recovery of civil damages authorized

### Effective: November 16, 2018

Currentness

**(a) In general.**--Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

**(b) Relief.**--In an action under this section, appropriate relief includes--

**(1)** such preliminary and other equitable or declaratory relief as may be appropriate;

**(2)** damages under subsection (c) and punitive damages in appropriate cases; and

**(3)** a reasonable attorney's fee and other litigation costs reasonably incurred.

**(c) Computation of damages.--(1)** In an action under this section, if the conduct in violation of this chapter is the private viewing of a private satellite video communication that is not scrambled or encrypted or if the communication is a radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the rules of the Federal Communications Commission that is not scrambled or encrypted and the conduct is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain, then the court shall assess damages as follows:

**(A)** If the person who engaged in that conduct has not previously been enjoined under section 2511(5) and has not been found liable in a prior civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages

of not less than $50 and not more than $500.

**(B)** If, on one prior occasion, the person who engaged in that conduct has been enjoined under section 2511(5) or has been found liable in a civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $100 and not more than $1000.

**(2)** In any other action under this section, the court may assess as damages whichever is the greater of--

**(A)** the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

**(B)** statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

**(d) Defense.**--A good faith reliance on--

**(1)** a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization;

**(2)** a request of an investigative or law enforcement officer under section 2518(7) of this title; or

**(3)** a good faith determination that section 2511(3), 2511(2)(i), or 2511(2)(j) of this title permitted the conduct complained of;

is a complete defense against any civil or criminal action brought under this chapter or any other law.

**(e) Limitation.**--A civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation.

**(f) Administrative discipline.**--If a court or appropriate department or agency determines that the United States or any of its departments or agencies has violated any provision of this chapter, and the court or appropriate department or agency finds that the circumstances surrounding the violation raise serious questions about whether or not an officer or employee of the United States acted willfully or intentionally with respect to the violation, the department or agency shall, upon receipt of a true and correct copy of the decision and findings of the court or appropriate department or agency promptly initiate a proceeding to determine whether disciplinary action against the officer or employee is warranted. If the head of the department or agency involved determines that disciplinary action is not warranted, he or she shall notify the Inspector General with jurisdiction over the department or agency concerned and shall provide the Inspector General

A-3

**§ 2520. Recovery of civil damages authorized, 18 USCA § 2520**

with the reasons for such determination.

**(g) Improper disclosure is violation.**--Any willful disclosure or use by an investigative or law enforcement officer or governmental entity of information beyond the extent permitted by section 2517 is a violation of this chapter for purposes of section 2520(a).

## CREDIT(S)

(Added Pub.L. 90-351, Title III, § 802, June 19, 1968, 82 Stat. 223; amended Pub.L. 91-358, Title II, § 211(c), July 29, 1970, 84 Stat. 654; Pub.L. 99-508, Title I, § 103, Oct. 21, 1986, 100 Stat. 1853; Pub.L. 107-56, Title II, § 223(a), Oct. 26, 2001, 115 Stat. 293; Pub.L. 107-296, Title XXII, § 2207(e), formerly Title II, § 225(e), Nov. 25, 2002, 116 Stat. 2157; renumbered § 2207(e), Pub.L. 115-278, § 2(g)(2)(I), Nov. 16, 2018, 132 Stat. 4178; amended Pub.L. 115-141, Div. V, § 104(1)(B), Mar. 23, 2018, 132 Stat. 1216.)

18 U.S.C.A. § 2520, 18 USCA § 2520
Current through P.L. 117-327. Some statute sections may be more current, see credits for details.

**End of Document**          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

A-4

## Procedural Guidance for Class Action Settlements

*Published November 1, 2018; modified December 5, 2018 and August 4, 2022*

> NOTE: Even though the guidance is highly recommended, the parties must comply in the first instance with the specific orders of the presiding judge.

Parties submitting class action settlements for preliminary and final approval in the Northern District of California should review and follow these guidelines to the extent they do not conflict with a specific judicial order in an individual case. Failure to address the issues discussed below may result in unnecessary delay or denial of approval. Parties and mediators should consider this guidance during settlement negotiations and when drafting settlement agreements and exhibits, including class notices. In cases litigated under the Private Securities Litigation Reform Act of 1995 and the Fair Labor Standards Act, follow the statute and case law requirements that apply to such cases, such as regarding reasonable costs and expenses awards to representative plaintiffs, and this procedural guidance to the extent applicable.

### Preliminary Approval

1) INFORMATION ABOUT THE SETTLEMENT—The motion for preliminary approval should state, where applicable:

a. Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.

b. Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.

c. The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.

d. Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state.

e. The proposed allocation plan for the settlement fund.

f. If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples.

g. In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.

2) SETTLEMENT ADMINISTRATION—The parties are expected to get multiple competing bids from potential settlement administrators. In the motion for preliminary approval, the parties should:

a. Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years.

A-5

    b. Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs.

The court may not approve the amount of the cost award to the settlement administrator until the final approval hearing. The Court encourages the parties to address the items listed in the checklist linked here in formulating their response.

3) NOTICE—The parties should ensure that the class notice is easily understandable, in light of the class members' communication patterns, education levels, and language needs. The notice should include the following information:

    a. Contact information for class counsel to answer questions.

    b. The address for a website, maintained by the claims administrator or class counsel, that lists key deadlines and has links to the notice, claim form (if any), preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in the case.

    c. Instructions on how to access the case docket via PACER or in person at any of the court's locations.

    d. The date and time of the final approval hearing, clearly stating that the date may change without further notice to the class.

    e. A note to advise class members to check the settlement website or the Court's PACER site to confirm that the date has not been changed.

The parties should explain how the notice distribution plan is effective. Class counsel should consider the following ways to increase notice to class members: identification of potential class members through third-party data sources; use of text messages and social media to provide notice to class members; hiring a marketing specialist; providing a settlement website that estimates claim amounts for each specific class member and updating the website periodically to provide accurate claim amounts based on the number of participating class members; and distributions to class members via direct deposit.

The notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23(c)(2). If U.S. mail is part of the notice distribution plan, the notice envelope should be designed to enhance the chance that it will be opened.

Below is suggested language for inclusion in class notices:

This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the settlement agreement available at www._____.com, by contacting class counsel at _____, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, [insert appropriate Court location here], between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

4) OPT-OUTS—The notice should instruct class members who wish to opt out of the settlement to send a letter, setting forth their name and information needed to be properly identified and to opt out of the settlement, to the settlement administrator and/or the person or entity designated to receive opt outs. It should require only the information needed to opt out of the settlement and no extraneous information or hurdles. The notice should clearly advise class members of the deadline, methods to opt out, and the consequences of opting out.

5) OBJECTIONS—Objections must comply with Federal Rule of Civil Procedure 23(e)(5). The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. All objections will be scanned into the electronic case docket, and the parties will receive electronic notices of filings. The notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The notice should clearly advise class members of the deadline for submission of any objections.

A-6

Below is suggested language for inclusion in class notices:

"You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object.

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number ( _____ v. _____, Case No. _____), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, [insert appropriate Court location here], and (c) be filed or postmarked on or before _____."

6)  ATTORNEYS' FEES AND COSTS—Although attorneys' fee requests will not be approved until the final approval hearing, class counsel should include information about the fees and costs (including expert fees) they intend to request, their lodestar calculation (including total hours), and resulting multiplier in the motion for preliminary approval. In a common fund case, the parties should include information about the relationship between the amount of the common fund, the requested fee, and the lodestar. To the extent counsel base their fee request on having obtained injunctive relief and/or other non-monetary relief for the class, counsel should discuss the benefit conferred on the class.

7)  SERVICE AWARDS—Judges in this district have different perspectives on extra payments to named plaintiffs or class representatives that are not made available to other class members. Counsel seeking approval of service awards should consult relevant prior orders by the judge reviewing the request. Although service award requests will not be approved until the final approval hearing, the parties should include information about the service awards they intend to request as well as a summary of the evidence supporting the awards in the motion for preliminary approval. The parties should ensure that neither the size nor any conditions placed on the incentive awards undermine the adequacy of the named plaintiffs or class representatives. In general, unused funds allocated to incentive awards should be distributed to the class pro rata or awarded to cy pres recipients.

8)  CY PRES AWARDEES—If the settlement contemplates a cy pres award, the parties should identify their chosen cy pres recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members' claims. The parties should also identify any relationship they or their counsel have with the proposed cy pres recipients. In general, unused funds allocated to attorneys' fees, service awards, settlement administration costs, and class member payments should be distributed to the class pro rata if feasible, or else awarded to cy pres recipients or to the relevant government authorities.

9)  TIMELINE—The parties should ensure that class members have at least thirty-five days to opt out or object to the settlement and the motion for attorney's fees and costs.

10)  CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS—The parties should address whether CAFA notice is required and, if so, when it will be given. In addition, the parties should address substantive compliance with CAFA. For example, if the settlement includes coupons, the parties should explain how the settlement complies with 28 U.S.C. § 1712. In addition, the parties should address whether any other required notices to government entities or others have been provided, such as notice to the Labor & Workforce Development Agency (LWDA) pursuant to the Private Attorneys General Act (PAGA).

11)  COMPARABLE OUTCOMES—Lead class counsel should provide information about comparable cases, including settlements and litigation outcomes. Lead class counsel should provide the following information for as many as feasible (and at least one) comparable class settlements (i.e., settlements involving the same or similar claims, parties, issues):

   a. The claims being released, the total settlement fund, the total number of class members, the total number of class members to whom notice was sent, the method(s) of notice, the number and percentage of claim forms submitted, the average recovery per class member or claimant, the amounts distributed to cy pres recipients, the administrative costs, the attorneys' fees and costs, the total exposure if the plaintiffs had prevailed on every claim.

   b. Where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests.

A-7

c. Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class.

Counsel should summarize this information in easy-to-read charts that allow for quick comparisons with other cases, supported by analysis in the text of the motion.

12) ELECTRONIC VERSIONS—Electronic versions (Microsoft Word or WordPerfect) of all proposed orders and notices should be submitted to the presiding judge's Proposed Order (PO) email address when filed. Most judges in this district use Microsoft Word, but counsel should check with the individual judge's Courtroom Deputy.

13) OVERLAPPING CASES—Within one day of filing of the preliminary approval motion, the defendants should serve a copy on counsel for any plaintiffs with pending litigation, whether at the trial court or appellate court level, whether active or stayed, asserting claims on a representative (e.g., class, collective, PAGA, etc.) basis that defendants believe may be released by virtue of the settlement.

## Final Approval

1) CLASS MEMBERS' RESPONSE—The motion for final approval briefing should include information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who opted out, and the number of class members who objected to or commented on the settlement. In addition, the motion for final approval should respond to any objections.

2) ATTORNEYS' FEES—All requests for approval of attorneys' fees must include detailed lodestar information, even if the requested amount is based on a percentage of the settlement fund. Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed. Counsel should be prepared to submit copies of detailed billing records if the court orders.

Regardless of when they are filed, requests for attorneys' fees must be noticed for the same date as the final approval hearing. If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions. The motion for attorneys' fees should refer to the history and facts set out in the motion for final approval.

3) SERVICE AWARDS—All requests for service awards must be supported by evidence of the value provided by the proposed awardees, the risks they undertook in participating, the time they spent on the litigation, and any other justifications for the awards.

4) ELECTRONIC VERSIONS—Electronic versions (Microsoft Word or Word Perfect) of all proposed orders and judgments should be submitted to the presiding judge's Proposed Order (PO) email address at the time they are filed.

## Post-Distribution Accounting

1) Within 21 days after the settlement checks become stale (or, if no checks are issued, all funds have been paid to class members, cy pres beneficiaries, and others pursuant to the settlement agreement), the parties should file a Post-Distribution Accounting (and post it on the settlement website), which provides the following information:

a. The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average, median, maximum, and minimum recovery per claimant, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, plaintiffs' counsel's updated lodestar total, and the lodestar multiplier.

b. Where class members are entitled to non-monetary relief, such as discount coupons, debit cards, or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests.

c. Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class.

A-8

Counsel should summarize this information in an easy-to-read chart that allows for quick comparisons with other cases.

3) The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.

| United States Code Annotated |
|---|
| Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos) |
| Title IV. Parties |

## Federal Rules of Civil Procedure Rule 23

### Rule 23. Class Actions [Rule Text & Notes of Decisions subdivisions I to VII]

Currentness

**(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

**(1)** the class is so numerous that joinder of all members is impracticable;

**(2)** there are questions of law or fact common to the class;

**(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

**(4)** the representative parties will fairly and adequately protect the interests of the class.

**(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

**(1)** prosecuting separate actions by or against individual class members would create a risk of:

**(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

**(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

**(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

A-10

available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

**(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

**(D)** the likely difficulties in managing a class action.

**(c) Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.**

**(1)** *Certification Order.*

**(A)** *Time to Issue.* At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

**(B)** *Defining the Class; Appointing Class Counsel.* An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).

**(C)** *Altering or Amending the Order.* An order that grants or denies class certification may be altered or amended before final judgment.

**(2)** *Notice.*

**(A)** *For (b)(1) or (b)(2) Classes.* For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.

**(B)** *For (b)(3) Classes.* For any class certified under Rule 23(b)(3)--or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)--the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:

**(i)** the nature of the action;

**(ii)** the definition of the class certified;

**(iii)** the class claims, issues, or defenses;

**(iv)** that a class member may enter an appearance through an attorney if the member so desires;

**(v)** that the court will exclude from the class any member who requests exclusion;

**(vi)** the time and manner for requesting exclusion; and

**(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

**(3)** *Judgment.* Whether or not favorable to the class, the judgment in a class action must:

**(A)** for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members; and

**(B)** for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members.

**(4)** *Particular Issues.* When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

**(5)** *Subclasses.* When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.

**(d) Conducting the Action.**

**(1)** *In General.* In conducting an action under this rule, the court may issue orders that:

**(A)** determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;

**(B)** require--to protect class members and fairly conduct the action--giving appropriate notice to some or all class members of:

**(i)** any step in the action;

**(ii)** the proposed extent of the judgment; or

**(iii)** the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;

**(C)** impose conditions on the representative parties or on intervenors;

**(D)** require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or

**(E)** deal with similar procedural matters.

**(2)** *Combining and Amending Orders.* An order under Rule 23(d)(1) may be altered or amended from time to time and may be combined with an order under Rule 16.

**(e)** **Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

**(1)** *Notice to the Class.*

**(A)** *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

**(B)** *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:

**(i)** approve the proposal under Rule 23(e)(2); and

**(ii)** certify the class for purposes of judgment on the proposal.

**(2)** *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

**(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

**(i)** the costs, risks, and delay of trial and appeal;

**(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

**(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

**(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

**(3)** *Identifying Agreements.* The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

**(4)** *New Opportunity to be Excluded.* If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

**(5)** *Class-Member Objections.*

**(A)** *In General.* Any class member may object to the proposal if it requires court approval under this subdivision (e). The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection.

**(B)** *Court Approval Required for Payment in Connection with an Objection.* Unless approved by the court after a hearing, no payment or other consideration may be provided in connection with:

**(i)** forgoing or withdrawing an objection, or

**(ii)** forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal.

**(C)** *Procedure for Approval After an Appeal.* If approval under Rule 23(e)(5)(B) has not been obtained before an appeal is docketed in the court of appeals, the procedure of Rule 62.1 applies while the appeal remains pending.

**(f) Appeals.** A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule, but not from an order under Rule 23(e)(1). A party must file a petition for permission to appeal with the circuit clerk within 14 days after the order is entered, or within 45 days after the order is entered if any party is the United States, a United States agency, or a United States officer or employee sued for an act or omission occurring in connection with duties performed on the United States' behalf. An appeal does not stay proceedings in the district

court unless the district judge or the court of appeals so orders.

**(g) Class Counsel.**

**(1)** *Appointing Class Counsel.* Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

**(A)** must consider:

**(i)** the work counsel has done in identifying or investigating potential claims in the action;

**(ii)** counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

**(iii)** counsel's knowledge of the applicable law; and

**(iv)** the resources that counsel will commit to representing the class;

**(B)** may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

**(C)** may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

**(D)** may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

**(E)** may make further orders in connection with the appointment.

**(2)** *Standard for Appointing Class Counsel.* When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.

**(3)** *Interim Counsel.* The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.

**(4)** *Duty of Class Counsel.* Class counsel must fairly and adequately represent the interests of the class.

**(h) Attorney's Fees and Nontaxable Costs.** In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

A-15

**(1)** A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

**(2)** A class member, or a party from whom payment is sought, may object to the motion.

**(3)** The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

**(4)** The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

## CREDIT(S)

(Amended February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 24, 1998, effective December 1, 1998; March 27, 2003, effective December 1, 2003; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009; April 26, 2018, effective December 1, 2018.)

Fed. Rules Civ. Proc. Rule 23, 28 U.S.C.A., FRCP Rule 23
Including Amendments Received Through 4-1-23

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

A-16