**Docket Nos. 22-16903 (L), 22-16904**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

In re: FACEBOOK, INC. INTERNET TRACKING LITIGATION,

PERRIN AIKENS DAVIS, BRIAN K. LENTZ,
CYNTHIA D. QUINN and MATTHEW J. VICKERY,

*Plaintiffs-Appellees,*

SARAH FELDMAN and HONDO JAN,

*Objectors-Appellants,*

v.

META PLATFORMS, INC., FKA Facebook, Inc.,

*Defendant-Appellee.*

_____

*Appeal from a Decision of the United States District Court for the Northern District of California,*
*No. 5:12-md-02314-EJD · Honorable Edward J. Davila*

## PLAINTIFFS' ANSWERING BRIEF

DAVID A. STRAITE, ESQ.
DICELLO LEVITT LLP
485 Lexington Avenue, Tenth Floor
New York, New York 10017
(646) 933-1000 Telephone
dstraite@dicellolevitt.com

AMY E. KELLER, ESQ.
ADAM PROM, ESQ.
DICELLO LEVITT LLP
Ten North Dearborn Street, 6th Floor
Chicago, Illinois 60602
(312) 214-7900 Telephone
akeller@dicellolevitt.com
aprom@dicellolevitt.com

STEPHEN G. GRYGIEL, ESQ.
GRYGIEL LAW LLC
127 Coventry Place
Clinton, New York 13323
(407) 505-9463 Telephone
stephengrygiel22@gmail.com

JASON "JAY" BARNES, ESQ.
SIMMONS HANLY CONROY LLC
112 Madison Avenue, 7th Floor
New York, New York 10016
(212) 784-6400 Telephone
jaybarnes@simmonsfirm.com

*Attorneys for Appellees Perrin Aikens Davis, Brian K. Lentz,*
*Cynthia D. Quinn and Matthew J. Vickery*



# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

COUNTER-STATEMENT OF THE ISSUES ...........................................6

STATEMENT OF THE CASE.................................................................7

    A.    Plaintiffs Engaged in Lengthy Litigation.............................................7

    B.    The Plaintiffs and Defendant Extensively Mediated with a Neutral ....8

    C.    The Proposed Settlement, the Claims Process, and the District Court's Approval.................................................................10

SUMMARY OF THE ARGUMENT ....................................................15

STANDARD OF REVIEW .................................................................19

ARGUMENT ...................................................................................20

    I.    THE DISTRICT COURT COMMITTED NO ABUSE OF DISCRETION IN FINDING THE SETTLEMENT FAIR, REASONABLE AND ADEQUATE.................................................20

        A.    Objectors-Appellants Proffer a Strawman Argument...............22

        B.    The District Court Applied the Correct Standard.....................27

        C.    The District Court Properly Followed the *Hanlon/Churchill* Factors and the Northern District's Procedural Guidance........30

            1.    Response Specifically to Objectors Feldman and Jan....31

            2.    Response Specifically to Objector Isaacson...................38

        D.    The District Court Did Not Apply a Presumption of Fairness to the Settlement.......................................................39

    II.    LIMITED SEALING OF CONFIDENTIAL DISCOVERY MATERIAL DOES NOT PRECLUDE APPROVAL OF SETTLEMENTS .................................................................42

III. THE DISTRICT COURT'S AWARD OF ATTORNEYS' FEES WAS APPROPRIATE ...........................................................................46

IV. SERVICE AWARDS TO LEAD PLAINTIFFS ARE PERMITTED IN THE NINTH CIRCUIT ...................................................................50

V. THE DISTRICT COURT CORRECTLY FOUND THAT CLASS NOTICE COMPLIED WITH ALL REQUIREMENTS AND WAS "IMPRESSIVE" ......................................................................................52

CONCLUSION ...........................................................................................56

STATEMENT OF RELATED CASES ....................................................58

CERTIFICATE OF COMPLIANCE ........................................................59

CERTIFICATE OF SERVICE .................................................................60

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC*,
    240 F.R.D. 564 (C.D. Cal. Mar 6, 2007), *superseded*,
    243 F.R.D. 377 (C.D. Cal. Mar. 31, 2007) ........................................................35

*In re Apple Device Performance Litig.*,
    50 F.4th 769 (9th Cir. 2022) .........................................................*passim*

*In re Apple Inc. Device Performance Litig.*,
    No. 5:18-md-02827-EJD, 2023 WL 2090981
    (N.D. Cal. Feb. 17, 2023) ................................................................40

*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) ..........................................................43

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................................................16, 19, 20

*Broomfield v. Craft Brew All., Inc.*,
    No. 17-cv-01027-BLF, 2020 WL 1972505
    (N.D. Cal. Feb. 5, 2020) .................................................................54

*Campbell v. Facebook, Inc.*,
    315 F.R.D. 250 (N.D. Cal. May 18, 2016) ......................................23

*Chambers v. Whirlpool Corp.*,
    980 F.3d 645 (9th Cir. 2020) ..........................................................50

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018) ...................................................................50

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ..........................................................*passim*

*Courthouse News Serv. v. Planet*,
    947 F.3d 581 (9th Cir. 2020) ..........................................................43

*In re Facebook Biometric Info. Privacy Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. Feb. 26, 2021)............................................*passim*

*In re Facebook Internet Tracking Litig.*,
    No. 5:12-md-02314-EJD, 2022 WL 16902426
    (N.D. Cal. Nov. 10, 2022).................................................................................23

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
    No. 18-MD-02843-VC (N.D. Cal.), Dkt. No. 1130 .........................................35

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F. 3d 589 (9th Cir. 2020) ........................................................................*passim*

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ...............................................................................46

*Flowers v. Wiley*,
    675 F.2d 704 (5th Cir. 1982) ...............................................................................48

*Fraley v. Facebook, Inc.*,
    966 F. Supp. 2d 939, 944 (N.D. Cal. 2013), *aff'd sub nom.*
    *Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016).........................................37

*In re Google Inc. Street View Elec. Commc'ns Litig.*,
    21 F.4th 1102 (9th Cir. 2021) ...............................................................................37

*In re Google Plus Profile Litig.*,
    No. 5:18-cv-06164-EJD (VKD), 2021 WL 242887
    (N.D. Cal. Jan. 25, 2021) ........................................................................................2

*In re Google Street View Elec. Commc'ns Litig.*,
    21 F.4th 1102 (9th Cir. 2021) ...............................................................................46

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .....................................................................*passim*

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479-JST, 2018 WL 6619983
    (N.D. Cal. Dec. 18, 2018)........................................................................................3

*Hodge v. Mayer Unified Sch. Dist. No. 43 Governing Bd.*,
    No. 05-15577, 2007 WL 1112954 (9th Cir. 2007)................................................4

*Hollis v. Union Pac. R.R. Co.*,
  No. EDCV 17-2449 JGB (SHKx), 2018 WL 6267342
  (C.D. Cal. Sept. 19, 2018)......................................................................33

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ...........................................................*passim*

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ...............................................................37

*Lobatz v. U.S. W. Cellular of Cal., Inc.*,
  222 F.3d 1142 (9th Cir. 2000) ..........................................................19, 20

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*,
  316 F. Supp. 3d 455 (D.D.C. Jun. 11, 2018) ........................................44

*McKinney-Drobnis v. Oreshack*,
  16 F.4th 594 (9th Cir. 2021) ............................................................38, 49

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)*, as amended* (June 19, 2000) ..........19, 20, 39

*Muransky v. Godiva Chocolatier, Inc.*,
  No. 15-60716-CIV, 2016 WL 11601079 (S.D. Fla. Sept. 16, 2019) ...................3

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Antitrust Litig.*,
  768 F. App'x 651 (9th Cir. 2019).............................................................48

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*,
  688 F. 2d 615 (9th Cir. 1982) ...............................................................36

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008................................................39

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ...........................................................*passim*

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ...............................................................32

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .........................................................32, 33, 36, 55

*Roe v. Frito-Lay, Inc.*,
  No. 14-cv-00751-HSG, 2016 WL 4154850
  (N.D. Cal. Aug. 5, 2016) ..................................................................24

*Roes, 1–2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) .........................................................44

*Rosenbaum v. MacAllister*,
  64 F.3d 1439 (10th Cir. 1995) .........................................................47

*Saucillo v. Peck*,
  25 F.4th 1118 (9th Cir. 2022) ..........................................................41

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
  825 F.3d 299 (6th Cir. 2016) ...........................................................44

*Sheikh v. Tesla, Inc.*,
  No. 17-cv-02193-BLF, 2018 WL 5794532
  (N.D. Cal. Nov. 2, 2018) ..................................................................48

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) .........................................................53

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003)..........................................................22, 28, 29

*Steiner v. Am. Broad. Co.*,
  248 F. App'x 780 (9th Cir. 2007) .....................................................48

*In re TikTok, Inc., Consumer Priv. Litig.*,
  617 F. Supp. 3d 904 (N.D. Ill. July 28, 2022) ..................................37

*In re TikTok, Inc., Consumer Privacy Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. Sept. 30, 2021).................................53

*In re TikTok, Inc., Consumer Privacy Litig.*,
  No. 20 C 4699, 2022 WL 2982782 (N.D. Ill. July 28, 2022)............48

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ..............................................................20

*In re Vizio, Inc., Consumer Privacy Litig.*,
No. 8:16-ml-02693-JLS-KES, 2019 WL 12966638
(C.D. Cal. July 31, 2019) ....................................................................37

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022) .............................................28, 29, 30

**Statutes**

18 U.S.C.A. § 2520(c)(2) .........................................................................24

Fed. R. Civ. P. 23 ............................................................................*passim*

**Other Authorities**

5 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 15:89 tbl.2
(6th ed.) ...........................................................................................48

# **INTRODUCTION**

The $90 million non-reversionary common fund approved by the District Court ranks as one of the ten largest data privacy class action settlements in history. This hard-won settlement, containing not a single "red flag" also features rarely won injunctive relief in the form of sequestration and ultimate expungement of the data that Plaintiffs contend was improperly collected by Facebook, now known as Meta Platforms, Inc. ("Meta"). Importantly, this injunctive relief will benefit all members of the class, whether or not they made claims, objected, or opted-out.

This settlement results from the dogged persistence of the Plaintiffs[1] and their counsel for over ten (10) years of litigation, including briefing and arguing three motions to dismiss; four rounds of document discovery including a motion to compel; interrogatories; briefing and successfully arguing an appeal to this Court;[2] successfully briefing the opposition to Defendant's petition for a writ of certiorari to the Supreme Court; and months of difficult arm's-length mediation and settlement

---

[1] Plaintiffs and Settlement Class Members-Appellees (hereinafter, "Plaintiffs").

[2] The Ninth Circuit's earlier opinion in this case, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589 (9th Cir. 2020), clarified the "party to the communication" defense to Wiretap Act liability on which Defendant, and many other privacy case defendants, had relied, and ruled that the alleged illicit copying and monetization of personal data alleges a basis for disgorgement of unjust enrichment—and is *economic* harm for Article III standing purposes. The Ninth Circuit's opinion has been cited in 127 cases as of July 19, 2023.

negotiations under the guidance of highly respected mediator Randy Wulff,[3] including three separate mediation sessions and acceptance of Mr. Wulff's mediator's proposal for settlement in principle. Plaintiffs also retained five expert advisors, including a respected economic and damages expert to propose class-wide economic models, including disgorgement of any unjust enrichment earned on the data.

When reviewing the proposed settlement, the District Court faithfully applied existing Ninth Circuit law. Following preliminary approval, Plaintiffs conducted a "belt-and-suspenders" notice program that included both direct email <u>and</u> publication notice that reached well in excess of 90% of the class, followed by a claims stimulation program and a second round of email reminder notices. More than 1.5 million valid claims were submitted. The District Court then conducted a lengthy final approval hearing, permitting each objector who attended fully to present his/her position. On November 10, 2022, the District Court issued a lengthy and well-reasoned order that finally approved the settlement and granted Plaintiffs' request for attorneys' fees, expenses, and service awards.

---

[3] *See, e.g., In re Google Plus Profile Litig.*, No. 5:18-cv-06164-EJD (VKD), 2021 WL 242887, at *1, 3 (N.D. Cal. Jan. 25, 2021) (finding Mr. Wulff an "experienced" and "highly-capable" mediator; granting final approval to settlement).

Nonetheless, three serial Objector-Appellants,[4] who, with their counsel, are well-known to Courts throughout the country,[5] seek to deny the other 1.5 million claiming class members, without a proper basis in law or fact, this exceptional monetary recovery and important injunctive relief. Objectors make five broad arguments, none of which establish an abuse of discretion or otherwise justify reversal of the District Court's order, and instead would require this Court to abandon long-settled rules and create new law.

First, the District Court applied the correct legal standard in reaching its decision, including binding jurisprudence from this Court. Objectors would have this Court create *new law* that would force Plaintiffs to reject fair, reasonable, and adequate settlement offers—including those that offer full satisfaction of economic damages—and instead chase fanciful and theoretical aggregate statutory damages

---

[4] Objector-Appellant Eric Alan Isaacson, Esq., is proceeding *pro se* under Case No. 22-16904. Objectors-Appellants Sarah Feldman and Hondo Jan are represented by counsel Kendrick Jan and John Pentz and are proceeding under Case No. 22-16903. On June 14, 2023, this Court consolidated the appeals. Case No. 22-16903, Dkt. 28. This brief uses the term "Objectors" to mean Objectors-Appellants Isaacson, Feldman and Jan unless otherwise noted.

[5] *See, e.g., Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *16 n.19 (N.D. Cal. Dec. 18, 2018) (noting the "apparent history of objector's counsel . . . John Pentz, as [a] serial, meritless objector[ ]"); *Muransky v. Godiva Chocolatier, Inc.*, No. 15-60716-CIV, 2016 WL 11601079, at * 3 (S.D. Fla. Sept. 16, 2019) ("Plaintiff aptly characterizes . . . Mr. Isaacson . . . as [a] 'professional objector[ ]'. . . .").

that could bankrupt many a defendant. Objectors also argue that the District Court was required to quantify maximum possible statutory damages when evaluating the fairness of a settlement, failing to note that the Ninth Circuit has already squarely addressed and rejected this argument. *Lane v. Facebook, Inc*., 696 F.3d 811, 823 (9th Cir. 2012) ("we reject Objectors' argument insofar as it stands for the proposition that the district court was required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award.").

Second, Objector Isaacson (but not Feldman or Jan) argues that the District Court's previous orders allowing limited redactions to two pleadings were improper and/or prevented his full analysis of the settlement even if sealing was proper. No support exists for this novel argument, which fails to properly account for the Ninth Circuit's granting of Meta's identical (and contested) sealing motion in this Court.

Third, Objector Isaacson (but not Feldman or Jan)[6] argues that the District Court's order granting attorneys' fees[7] was an abuse of discretion. However, the

---

[6] Objectors Feldman and Jan originally objected to the award of counsel fees in the District Court but elected not to pursue the objection on appeal, waiving that issue. *Hodge v. Mayer Unified Sch. Dist. No. 43 Governing Bd.*, No. 05-15577, 2007 WL 1112954, at *2 (9th Cir. 2007).

[7] No Objector raised any objection to the award of expenses, either here or in the District Court.

District Court correctly applied existing law, considered each of the factors relevant to determining an appropriate percentage of the common fund to award as counsel fees, and conducted a careful lodestar crosscheck. Isaacson does not argue that the District Court improperly applied these steps but argues that the Ninth Circuit should create new steps.

Fourth, the District Court approved modest service awards for the named Plaintiffs due to their decade-long dedication to this case, but Objector Isaacson wants a categorical prohibition on service awards to all plaintiffs in all class cases. Last year the Ninth Circuit rejected this argument, as Isaacson conceded during the final approval hearing and in his brief.

Fifth, Objectors Feldman and Jan argue that class notice was legally insufficient. But the District Court properly found the class notice program to be truly "impressive," including both direct notice and publication notice, reaching 99% of Class Members, and approximately 80% of *all* adults 18 years or older in the United States.

For these reasons, and the additional reasons discussed herein, the District Court's rulings should be affirmed in full.

## <u>COUNTER-STATEMENT OF THE ISSUES</u>

1.     Did the District Court clearly abuse its discretion by granting final approval to one of the ten largest data privacy class action settlements in history, providing a $90 million non-reversionary common fund along with injunctive relief, finding that the settlement was fair, adequate, and reasonable?

2.     Did the District Court clearly abuse its discretion in approving a class action settlement when portions of the operative pleadings were redacted in the ordinary course consistent with a Ninth Circuit order following a contested sealing motion?

3.     Did the District Court clearly abuse its discretion by awarding attorneys' fees of 29% of a non-reversionary settlement fund, after considering each of the factors relevant to an appropriate award of attorneys' fees in a class action, and conducting a careful lodestar crosscheck?

4.     Did the District Court clearly abuse its discretion by approving service awards for the named Plaintiffs and their decade-long dedication to this case?

5.     Did the District Court commit legal error by finding the class notice and claims administration was adequate and satisfied all applicable requirements of due process when it reached 99% of Class Members and reached approximately 80% of *all* adults 18 years or older in the United States?

## STATEMENT OF THE CASE

### A. Plaintiffs Engaged in Lengthy Litigation

A decade in the making, the path to final approval of this historic settlement began in 2012 with an MDL Transfer Order. Motion for Preliminary Approval dated February 14, 2022, District Court Dkt. No. 232 at 2, PSER-22.[8] The Court then consolidated 24 separate actions and approved a leadership structure. *Id*. Class Counsel and their colleagues consulted with multiple technology and privacy experts, carefully researched, and drafted in succession three extensive complaints describing in detail the nature of the alleged privacy violations. *Id*.; *see also* Joint Declaration dated February 14, 2022, District Court Dkt. No. 233 ¶ 28, PSER-5-6. Summarizing, Plaintiffs alleged that Facebook tracked class members' internet use through "cookies" associated with web browsing activity while they were logged out of the Facebook accounts despite Facebook's promise that it would not receive user-identifying information of logged out users.

Plaintiffs undertook and responded to written discovery, briefed a motion to compel, briefed Defendant's Motion to Stay Discovery, established a document database, reviewed Defendant's productions of documents, and, before settlement was reached, had been negotiating with Defendant about the scope of additional

---

[8] Plaintiffs' Supplemental Excerpts of Record or "PSER."

document productions from Defendant. PSER-10 (Motion for Preliminary Approval); PSER-3 (Joint Declaration). Plaintiffs also produced documents in response to document requests and responded to and verified interrogatories. *Id*.

Following the District Court's dismissal of the Third Amended Complaint, Plaintiffs filed, briefed, and argued an appeal to this Court. That appeal resulted in a ruling of first impression in the Ninth Circuit that "Facebook is not exempt from liability as a matter of law under the Wiretap Act or CIPA as a party to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020). Further, this Court's ruling found that Plaintiffs had sufficiently alleged economic harm in the form of a right to disgorgement of unjust profits and reversed the dismissal as to a number of Plaintiffs' other claims. Defendant filed a petition for a writ of *certiorari* to the United States Supreme Court, which Plaintiffs opposed and the Supreme Court declined. The case was then remanded with eight (8) operative claims for litigation. PSER-23 (Motion for Preliminary Approval at 3, n.3).

## B. The Plaintiffs and Defendant Extensively Mediated with a Neutral

Plaintiffs and Defendant next agreed to mediate the case before Randy Wulff, a highly respected mediator. PSER-6 (Joint Decl. ¶ 19). Plaintiffs engaged an economic consultant, Gary Olson, to perform economic analyses of several alternative damages models, including the approximate net profits Defendant

received from the information Plaintiffs alleged that Defendant improperly collected; royalty value of a license to monitor Internet browsing; and restitution models. PSER-7 (Joint Decl. ¶ 28); *see also* Transcript of March 31, 2022 Preliminary Approval Hearing at 10, 12, 4-IER-569.[9]

Having briefed their positions for Mr. Wulff, the parties engaged in an initial seven (7) hour mediation on April 27, 2021. Mr. Wulff helped guide substantial additional document discovery in aid of mediation. Plaintiffs submitted a supplemental mediation brief on July 12, 2021. The parties mediated again on July 13, 2021 for approximately ten (10) hours. In a final effort to settle the case consensually, the parties mediated again on July 23, 2021. After almost four (4) more hours of negotiations, the Parties agreed to accept a Mediator's proposal and reached a settlement agreement in principle. PSER-24 (Motion for Preliminary Approval at 4); PSER-6-7 (Joint Decl. ¶¶ 19-25).

The parties then spent approximately six (6) months negotiating the contours of the injunctive relief, vetted claims administrators, and evaluated and confirmed the class member data set to transfer for claims processing. *Id*.

---

[9] Isaacson Excerpts of Record or "IER," Dkt. No. 11-1 in Case No. 22-16904.

**C.     The Proposed Settlement, the Claims Process, and the District Court's Approval**

The settlement provides an excellent result for settlement class members who do not opt out, including, among other things, the following terms: (1) <u>Monetary Consideration</u> – $90 million in a non-reversionary settlement fund; (2) <u>Injunctive Relief</u> – Defendant has sequestered and is required to expunge the data Plaintiffs alleged was impermissibly gathered, subject only to preservation of that data in a restricted-access location for this litigation pending final judgment and dismissal of all appeals, and pledged not to use that data for any other purposes; (3) <u>Scope of Releases</u> – commensurate with the settlement consideration paid by the Defendant, settlement class members who do not opt-out will release only claims that were asserted or could have been asserted in the Actions and that arose during the class period; and (4) <u>Notice</u> – class counsel employed a "belt and suspenders" approach that includes publication notice and direct email notice, either of which alone is robust; (5) <u>Settlement Class Definition</u> – all persons who, between April 22, 2010 and September 26, 2011, inclusive, were Facebook Users in the United States that visited non-Facebook websites that displayed the Facebook Like button, with no attestation requirement that settlement class members with active accounts affirmatively state that they visited non-Facebook pages containing the Facebook Like button; (6) <u>Service Awards</u> – the named plaintiffs in the federal court action and in the state court action may receive service awards upon class counsel's

10

application to the court (amount of the request may not exceed $5,000 per named plaintiff); (7) <u>No Clear Sailing</u> – Class Counsel moved for a fee and expense award and Defendant retained the right to object, oppose, support or otherwise respond to any such motion; and (8) <u>Unconditional Settlement</u> – the settlement is not conditioned on the court's award of attorneys' fees or expenses or any service awards, or on the award of any amount of attorneys' fees and expenses or service awards.

On March 31, 2022, following briefing and a hearing, the District Court granted preliminary approval of the settlement and authorized dissemination of class notice, finding that the settlement satisfied the requirements under Fed. R. Civ. 23. *See* District Court Dkt. No. 241, 1-IER-027. Comprehensive yet and understandable, the notices were jointly drafted by the parties and carefully reviewed by the District Court. The notices included a description of the action, the material terms of the settlement and plan of distribution, the maximum amounts that would be requested by class counsel for attorneys' fees and expenses, and the deadlines and process to object, opt out, or submit claims. The District Court found the proposed notice procedures provided the best notice practicable and were reasonably calculated to apprise Class Members of the Settlement and their rights to object or exclude themselves. *Id.*

A highly experienced settlement administration firm, Angeion Group ("Angeion") administered the settlement. The notice program included (1) direct email notice to all reasonably identifiable Settlement Class members; (2) a media campaign that used targeted internet notice, social media notice, and a paid search campaign (3) creation of a case-specific website, where all forms of notice, claim forms, and important case filings were posted and updated, and (4) creation of a toll-free number and email address to provide information and field questions.

At the final approval hearing, Mr. Weisbrot (Angeion's CEO) reported that the media campaign reached slightly over 80% of all adults in the U.S. who are 18 years of age or older in addition to the 99% of all Class Members who were reached directly. 1-IER-009-010, 4-IER-688-689. Angeion also employed a "claims stimulation package" that consisted of sponsored listings on two class action settlement websites, www.topclassactions.com and www.classaction.org, and utilized active listening on Twitter to monitor Twitter traffic for discussion of the settlement and to provide notice and answer questions on Twitter as appropriate. *Id.* Angeion supplemented its notice efforts by sending a second round of email reminder notices to the 86,075,105 Class Members who had successfully received the first notice, extended the paid search campaign, and ran a month-long banner advertisement campaign. 1-IER-009.

At the final approval hearing, Mr. Weisbrot reported to the District Court, "I do thousands of these settlements and I've never seen such a concentrated effort by counsel on both sides of the litigation to figure out the best way to reach these people." 4-IER-689. The District Court then commented, "I'm very impressed with the efforts that were made" to make sure that "the incredible size of this class would be notified." 4-IER-730. Due to Angeion's robust notice efforts, over 2.1 million claims were submitted, and Angeion determined that over 1.5 million of those were valid. 1-IER-005-006. Each settlement class member with a valid claim would receive approximately $39 under the settlement, in addition to the injunctive relief deleting the personal data at issue. 4-IER-728-738.

Besides finding the notice program not just appropriate but impressive, at the final approval hearing, the District Court heard extensive argument for nearly three hours from Plaintiffs, Defendant, and objectors (including the three Objectors-Appellants). The District Court then made some observations on the record, including:

- The settlement complies with Fed. R. Civ. P. 23.

- "I've lived the lawsuit with you, and where it is now, the arrived settlement does appear to me to be fair, adequate, and reasonable."

- "There's no reason for the Court to believe that there was anything but arm's length settlement and negotiations in this case after hard fought litigation."

- "The $90 million is a lot of money . . . And I cannot untether that with the injunctive relief . . . I've never seen a case that had that injunctive relief where the party was, according to the settlement, they have agreed that we will delete, we'll destroy that data. That's significant . . . That in and of itself is hopefully *a game changer* for the industry, and to inform the public, much like the Ninth Circuit informed the legal community about one of the issues in this case." (emphasis added).

- "$39, in today's world, $39 is – that's significant . . . and that recovery I do think provides additional faith in Rule 23 for the affected class members and the public . . ."

4-IER-728-738.

On November 10, 2022, the District Court issued its order granting the motion for final settlement approval, granting the motion for attorneys' fees, expenses, and service awards, and overruling the objectors' (including Objector-Appellants') objections and arguments. 1-IER-004-025. As to the motion for fees, expenses, and service awards, the District Court (1) awarded as fees 29% of the settlement fund, after considering whether a modest upward adjustment from the 25% benchmark

was appropriate, particularly where Plaintiffs achieved a change in the law, and analyzing the request through a lodestar cross-check; (2) awarded reasonable out-of-pocket costs to class counsel, after noting that none of the objectors opposed the costs; and (3) awarded seven service[10] awards to the named plaintiffs ($5,000 to some of the plaintiffs and $3,000 to others, totaling $29,000 (*i.e.*, a fraction of a fraction of 1% of the settlement fund)), after noting that they represented the data privacy interests of more than 124 million others "for over a ten year period with very little personally to gain." 1-IER-019-025.

## SUMMARY OF THE ARGUMENT

The District Court's orders approving the settlement faithfully apply existing Ninth Circuit law and are fully supported by the record.

Urging a radical change in established settlement approval law, Objectors-Appellants seek to deny class members, without a proper legal or factual basis, this exceptional recovery and important injunctive relief and overturn the District Court's carefully considered judgment. None of their arguments come close to establishing an abuse of discretion or otherwise justify reversal of the District Court.

---

[10] The District Court emphasized when overruling Appellant's arguments against awarding "incentive" awards that "[t]his [service] characterization more appropriately captures the purpose of the award in this instance." FJER-25-26 ("Feldman/Jan Excerpts of Record" or "FJER," Dkt. No. 14 in Case No. 22-16903).

First, **<u>Fairness</u>**. Objectors contend that the District Court applied an incorrect legal standard when approving the settlement as fair, reasonable and adequate. Not so. The District Court applied binding jurisprudence from this Court in reaching its decisions. 1-IER-007-008 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)). The Objectors ask this Court to create *new law* that would force Plaintiffs to reject fair, reasonable, and adequate settlement offers—such as the full satisfaction of economic injury here—and instead chase hypothetically astronomical and difficult to prove statutory damages that would bankrupt any defendant. Such a new rule, untethered to Fed. R. Civ. P. 23 and contradicting abundant precedent, would perversely upend not only this excellent settlement but many other class-action settlements that appropriately weigh litigation risks, including the difficulties inherent in obtaining statutory damages under claims like the Wiretap Act (and additional difficulties certifying a contested class), when reaching resolution of large, complex cases.

Objectors' arguments suffer from the strawman fallacy. They assume—indeed, they base most of their arguments on the fiction—that statutory damages under the Wiretap Act could generate more than $1 *trillion* in statutory damages, and also proffer incorrect math when contending that settlement class members will receive less than $1.00 (in fact, valid claiming class members will receive

approximately $39). Yes, Plaintiffs in this Court three years ago successfully removed one hurdle to the application of the Wiretap Act claim as a legal matter. But they—and the District Court—properly recognized that such a claim, like the other statutory claims, faced continuing factual and legal obstacles. 1-IER-016 (citing Dkt. No. 254 at 12-14). Indeed, the District Court already found that Class Counsel "analyzed maximum recoveries in the 'best day in court' scenario and weigh[ed] it against the barriers to achieving such a result before accepting settlement." *Id*. Objectors Feldman and Jan conceded that their claimed trillion-dollar damages calculation was likely illusory and admitted that a cap of no more than ten times actual damages would likely be permitted. Thus, even if Plaintiffs could prove $90 million of unjust enrichment at trial, Feldman and Jan concede that the Court must cap statutory damages at $900 million, or less. The District Court noted that the Objectors "do not explain why 10% recovery plus injunctive relief is unfair under these circumstances." *Id*. at 1-IER-014-015. The District Court did not abuse its discretion in making these findings.

Second, **<u>Sealing</u>**. Objector Isaacson argues that the District Court's previous orders allowing limited redactions to two pleadings were improper and prevented a full analysis of the settlement. But several years later on appeal, this Court sealed the identical confidential material (following contested motion practice), with no deviation from the District Court's earlier sealing order. Both Courts sealed the

identical confidential discovery material that Meta/Facebook demonstrated—to the District Court and later to the Ninth Circuit in fully briefed and contested sealing motions—would injure the company if disclosed. The District Court committed no error in approving a settlement when small portions of two pleadings were redacted.

Third, **Attorneys' Fees**. Objector Isaacson argues that the District Court's order granting attorneys' fees was an abuse of discretion. However, the District Court correctly considered each of the factors relevant to a percentage award of attorneys' fees when securing a non-reversionary common fund, and also conducting a careful lodestar crosscheck of the attorneys' time sorted by timekeeper, task, and year, verified independently in declarations submitted by each Firm.

Fourth, **Service Awards**. The Court approved modest service awards for the named Plaintiffs for their decade-long dedication to this case, including participation in discovery. Objector Isaacson argues that service awards are categorically improper. But during the pendency of the District Court's review of the settlement, the Ninth Circuit, reviewing a settlement to which Feldman and Jan had objected (*In re Apple Device Performance Litig.*, 50 F.4th 769, 785-86 (9th Cir. 2022)), squarely rejected this argument, a fact Isaacson acknowledged during the Final Approval hearing. *See* Tr. 66:11-12 ("I recognize that this court is bound by the Ninth Circuit's ruling on that point"), 4-IER-693. Nevertheless, Isaacson persists, apparently hoping that the Supreme Court will take up the issue and reverse the Ninth Circuit. *Id.*, Tr.

66:12-14 ("I want to preserve the issue for purpose of en banc review before the Ninth Circuit and certiorari to the United States Supreme Court.").

Fifth, **Class Notice**. Objectors Feldman and Jan argue that the class notice program was somehow deficient, despite demonstrably extensive and successful direct notice and publication notice. The District Court, however, properly found "the notice plan to be adequate," noting that the Settlement Administrator "considered the plan very successful, as it reached 99% of Class Members directly and reached approximately 80% of *all* adults 18 years or older in the United States." *Id*. The District Court committed no error.

In sum, the District Court neither abused its discretion nor committed any legal error. The District Court's rulings should be affirmed.

## STANDARD OF REVIEW

A district court's decision to approve a class action settlement is reviewed for a "clear abuse of discretion." *In re Bluetooth Handset Prods. Liab. Litig*., 654 F.3d 935, 940 (9th Cir. 2011); *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 460 (9th Cir. 2000)*, as amended* (June 19, 2000). That review is "extremely limited," and this Court "will affirm if the district judge applies the proper legal standard and his findings of fact are not clearly erroneous." *In re Mego*, 213 F.3d at 458.

Likewise, a district court's award of fees and costs to class counsel, as well as its method of calculation, is reviewed for abuse of discretion. *See Lobatz v. U.S. W.*

*Cellular of Cal., Inc.*, 222 F.3d 1142, 1148–49 (9th Cir. 2000); *In re Bluetooth Handset Prods. Liab. Litig.*, 654 F.3d at 940. Findings of fact underlying an award of fees are reviewed for clear error. *See Lobatz*, 222 F.3d at 1148. A court's approval of service awards is also reviewed for abuse of discretion. *See Mego*, 213 F.3d at 463.

Whether notice of a proposed class action settlement satisfies due process is a question of law reviewed de novo, *see Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015).

## **ARGUMENT**

## I. **THE DISTRICT COURT COMMITTED NO ABUSE OF DISCRETION IN FINDING THE SETTLEMENT FAIR, REASONABLE AND ADEQUATE**

The District Court committed no abuse of discretion, let alone clear abuse. The District Court correctly found that the requirements of Fed. R. Civ. P. 23 have been fully satisfied for purposes of certification of the settlement class. 1-IER-008, 1-IER-018, 4-IER-729, 4-IER-738. The District Court made findings on the record during both the preliminary and final approval hearings and in its orders, concluding that all Rule 23(a) and (b) factors supported settlement class certification. *See, e.g.*, 4-IER-620-622, 1-IER-008, 1-IER-018, I-IER-027.

The District Court thoroughly analyzed all the 23(e) and *Hanlon/Churchill*[11] factors, along with the Northern District of California's Guidelines on Class Actions. 1-IER-008, 4-IER-738; *Churchill Vill.*, 361 F.3d at 576. It made detailed findings, including: (1) the case was hard-fought, including Plaintiffs' successful appeal to this Court that developed data privacy precedent in the process and the denial of Defendant's petition for writ of *certiorari* to the Supreme Court; (2) while Plaintiffs believed their case was strong, they recognized the substantial risks and costs of continued litigation from a promised fourth motion to dismiss, class certification, summary judgment, trial, and appeals; (3) the arm's length and lengthy mediation and settlement discussions; (4) the amount offered in settlement—one of the largest data privacy class action monetary settlements and injunctive relief to expunge the data at issue; and (5) the class's overall positive reaction of the class to the settlement. 1-IER-007-011.

The District Court gave all objectors, including Objectors-Appellants, every opportunity to express their concerns with the settlement, and carefully addressed their arguments in its final approval order. 1-IER-011-018. The Court properly applied binding Ninth Circuit law, and Objectors' arguments to overturn the District Court's rulings should be rejected. *Lane*, 696 F.3d at 820 (affirming class action settlement, where the district court considered objectors' arguments, held a fairness

---

[11] This Court's *Churchill* opinion cites the eight *Hanlon* factors. 361 F.3d at 575.

hearing, and accompanied its Rule 23(e) conclusion with findings that included weighing factors such as the strength of plaintiffs' case, the risk and expense of continued litigation, the amount of settlement, the reaction of class members, etc.).

### A. Objectors-Appellants Proffer a Strawman Argument

Objectors try to argue that this is a case with available statutory damages over $1 *trillion*[12] (*see, e.g.*, Isaacson App. Br. at 4-8, 65-67, 75-77; Feldman/Jan App. Br. at 2) and thus a settlement fund of "only" $90 million is unacceptably low. In this strawman argument the Objectors manufacture and then attack a fiction. The Objectors improperly assume the success of Plaintiffs' statutory claims through trial and assume again that $1.24 trillion in statutory damages would be awarded. Indeed, Feldman and Jan correctly conceded in the District Court that a trillion-dollar verdict is "unlikely" to pass constitutional muster. 1-IER-014, 4-IER-681. The District Court properly recognized the inconsistency. 1-IER-014.[13] And Defendant correctly noted that a settlement is by definition a compromise, and this $90 million settlement must also be viewed in the context of Defendant's position that the actual provable

---

[12] $10,000 statutory damages multiplied by 124 million potential class members.

[13] The District Court noted that objectors Feldman and Jan admitted that this trillion-dollar figure was "unlikely" if statutory damages were considered punitive damages because Plaintiffs' recovery of statutory damages at trial might have been capped at $900 million, consistent with *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). *See* FJER-015; 1-IER-014.

ascertainable loss in this case (*i.e.,* the amount to be disgorged) is zero. 4-IER-682-683. Obviously, a defendant would never settle for ruinous damages and a settlement agreement must be viewed from both sides, not just an objector's calculation of maximum possible damages. Bedrock law teaches that a class action settlement need not be perfect in the eyes of an objector or a reviewing court. *Lane*, 696 F.3d at 819 ("As our precedents have made clear, the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court.").

Objectors' contention that Plaintiffs' statutory claims would succeed and that $10,000 statutory damages would be awarded for each 124 million class member offers no grounds for settlement reversal for several additional reasons: (1) Defendant would have filed another motion to dismiss against the Wiretap Act claim, *see* Prelim. Appr. Tr. at 49-50, 4-IER-617-618;[14] (2) as the District Court recognized (*In re Facebook Internet Tracking Litig.,* No. 5:12-md-02314-EJD, 2022 WL 16902426, at *9 (N.D. Cal. Nov. 10, 2022)) damages under the Wiretap Act are theoretically large but, of particular significance in class actions, are (i) discretionary and (ii) "all or nothing" (*see Campbell v. Facebook, Inc.*, 315 F.R.D. 250, 268 (N.D.

---

[14] This Court left open that possibility, not opining on whether Plaintiffs adequately pleaded the other requisite elements of the Wiretap Act. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608.

Cal. May 18, 2016));[15] (3) when resurrecting Plaintiffs' Wiretap Act claim, this Court adopted the First and Seventh Circuits' understanding that a defendant is not exempt from liability in the context of unauthorized duplication and forwarding of *unknowing users'* information,[16] which would make class certification of that claim contested; and (4) Due Process and constitutional difficulties with $1.24 trillion in statutory damages. The District Court acknowledged such reasoning when overruling objections. 1-IER-014. Such careful reasoning is neither error nor an abuse of discretion. *See Roe v. Frito-Lay, Inc.*, No. 14-cv-00751-HSG, 2016 WL 4154850, at *7 (N.D. Cal. Aug. 5, 2016) ("[t]he risks and costs associated with class litigation weigh strongly in favor of settlement" where "Plaintiff would [have been] required to successfully move for class certification under Rule 23, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal.").

The Ninth Circuit held in this case that Plaintiffs had pled economic damages for Article III standing purposes because several causes of action, if proven at trial, could entitle the Plaintiffs to the disgorgement of net profits earned on the allegedly

---

[15] 18 U.S.C.A. § 2520(c)(2) provides that the court "may assess" as damages whichever is the greater of the sum of actual damages suffered by the plaintiff and any profits made by the violator or statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

[16] *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608.

illicit copying of personal information (including web browsing information) without consent. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 599-600 (noting Plaintiffs' allegation that Defendant was unjustly enriched through the use of their data and that California law recognizes a right to disgorgement of profits as a measure of damages under several causes of action). Using this "disgorgement" measure recognized by this Court, Class Counsel retained an economic consultant to perform economic analyses, including calculating the increase in net profits during the period when the data collection was happening. Motion for Preliminary Approval, Dkt. No. 232, at 4 (PSER-24); Prelim. App. Tr. at 10, 12 (4-IER-579, 580). The calculations showed that a disgorgement measure of damages would be approximately $90 million, even assuming *arguendo* that all net profits during the class period were the result of the allegedly illicit tracking. Settlement at the mediator's proposal of $90 million would have provided the class full disgorgement. As importantly, Facebook was willing to sequester and delete the very data that Plaintiffs contend was improperly collected. Faced with Facebook's eventual willingness to pay every penny of economic damages under a disgorgement measure that Plaintiffs could likely have proven at trial, coupled with the injunctive relief, and armed with full knowledge of the case law and volumes of discovery allowing Class Counsel to evaluate the offer on an informed basis, Class Counsel correctly said "Yes."

Objectors-Appellants, however, ask this Court to abandon decades of settlement approval precedent and rule as a matter of law that Class Counsel were required to say "No" to full disgorgement, because the statutory causes of action might provide for billions or even *trillions* of dollars. But this is not the law in the Ninth Circuit. *Cf. In re Facebook Biometric Information Privacy Litig.*, 522 F. Supp. 3d 617, 626-627 (N.D. Cal. Feb. 26, 2021) (error to "cloak the adequacy analysis in a robe of pseudo-science. All good trial lawyers and judges know that it is a fool's errand to predict a jury verdict. Consequently, it makes little sense to say a payout to class members is adequate or not because there is a 5% or 65% chance of success at trial."). Even Objectors Feldman and Jan concede that a trillion dollars of damages is not in the cards, volunteering that a Court might cap statutory damages at ten times the actual damages measure, if statutory damages were considered punitive. 1-IER-014-016. But they then failed to explain – because they cannot, under established law – why 10% recovery plus injunctive relief is unfair under these circumstances. 1-IER-015; *see Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). Plaintiffs are aware of at least 224 federal district courts to have cited that language from *Hanlon*.

The District Court committed no error and did not abuse its discretion when finding that Plaintiffs properly evaluated their "best day in court" scenario, with the assistance of robust discovery and expert advisers (especially when considering the barriers to achieving such a "best day" result) before accepting the mediator's proposal. 1-IER-016. Indeed, this Court has made clear that a district court need not include in its settlement approval order a specific finding of fact as to the potential recovery of plaintiffs' causes of action, because predictions even as to statutory damages are speculative at best. *See, e.g.*, *Lane*, 696 F.3d at 822-823 (district court did not abuse its discretion in rejecting objectors' argument that the settlement was too low in light of possible statutory liquidated damages recovery).[17]

## B. The District Court Applied the Correct Standard

Objectors also contend that the District Court used the wrong standard when discussing possible damages caps and how the $90 million settlement fund represents disgorgement of net profits earned on the allegedly improperly collected

---

[17] The Feldman and Jan Objectors incorrectly argue that they present a "question of first impression," Feldman/Jan App. Br. at 1, but this is incorrect. This Court in *Lane*, 696 F.3d at 822-23, rejected this exact argument, affirming the approval of a $9.5 million settlement without requiring a mathematical calculation of the value of all statutory damages. *Id*. at 823 ("we reject Objectors' argument insofar as it stands for the proposition that the district court was required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award."). The Feldman/Jan Objectors even cite to *Lane* but for a different proposition, Feldman/Jan App. Br. at 31, n.25, but fail to note that *Lane* disposes of their main argument.

data. Isaacson App. Br. 61-65, 75-77; Feldman/Jan App. Br. 11-16. But, as discussed above, the District Court correctly conducted and thoroughly analyzed of all the 23(e) and *Hanlon/Churchill* factors and the Northern District of California's Guidelines on Class Actions. 1-IER-008, 4-IER-738.

The District Court's final approval order cited class counsel's view that the real measure of statutory damages would likely be capped at some multiplier of actual damages (or less) in consideration of the Supreme Court's *dicta* in *State Farm*, reasoning that while there is no rigid benchmark, statutory damages would likely be capped at a multiplier of ten. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 410, 424–26 (2003) ("[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process."). 1-IER-014. Considering all *Hanlon/Churchill* settlement approval factors, including class counsel's view and reasoning, is the opposite of adopting the wrong standard. The District Court correctly concluded that the potentially recoverable statutory damages would not be a trillion dollars were *State Farm* or a similar limiting rule were applied. 1-IER-014-016. Such a finding is entirely appropriate when applying the applicable *Hanlon/Churchill* factors, namely, the strength of Plaintiffs' case, the risks of further litigation, the amount offered in settlement, and the views of counsel.

Nor was it problematic that the District Court's final approval order did not cite this Court's *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022) decision,

which was issued merely one week before this case's final approval hearing.[18] That is because *Wakefield* is consistent with *State Farm*[19] in that this Court held "aggregated statutory damages awards are, in certain extreme circumstances, subject to constitutional due process limitations." *Wakefield*, 51 F.4th at 1121-23, *cert. denied*, No. 22-920, 2023 WL 2959423 (2023). In *Wakefield*, this Court vacated and remanded for the district court to assess whether the aggregate award of $925,220,000 in that class action is so severe and oppressive that it violates the defendant's due process rights and, if so, by how much the cumulative award should be reduced. *Wakefield*, 51 F.4th at 1125. Therefore, here, the District Court committed no error by considering Class Counsel's view—which is consistent with *Wakefield*—that the real measure of potentially recoverable damages is far lower than Objectors' proposed $1.24 *trillion* figure.

Objectors cite *Wakefield* in order to argue that the District Court "utterly failed to apply the standards mandated by this Court[]" and should not have held that

---

[18] Nonetheless, counsel for Plaintiffs and Defendant both discussed *Wakefield* at the final approval hearing in making the point that although statutory damages may be constitutional, at some point at which their aggregation will run into *State Farm* due process concerns, the principle of which helped inform the mediator's proposal and settlement here. 4-IER-655-657.

[19] This Court specifically found *State Farm* analogous, because it teaches that "where statutory damages no longer serve purely compensatory or deterrence goals, consideration of an award's reasonableness and proportionality to the violation and injury takes on heightened constitutional importance."

aggregated damages over $1 *trillion* raises Due Process problems. *See, e.g.,* Isaacson App. Br. at 76-77; Feldman/Jan App. Br. at 17-21. But as discussed above, the District Court did apply the correct standards that are consistent with *Wakefield* and heard argument during the final approval hearing specifically about *Wakefield*. Beyond Objectors' problematic assumptions discussed above regarding the statutory claims, their position puts the cart before the horse. *Wakefield*'s *post-trial* decision evaluates the Due Process concerns attendant to statutory damages, whereas this case comes to this Court in a settlement posture. The District Court was under no obligation to make a finding as to the propriety of $10,000 statutory damages under the Wiretap Act when evaluating the settlement. It was obligated to follow Rule 23 and the *Hanlon/Churchill* factors. That is precisely what the District Court did; therefore, it committed no error. And it bears repeating: Objectors' argument invites this Court to create a *new* rule/standard in the settlement context that would require a district court to *assume* the availability of statutory damages (here, $10,000 per class member for a total of $1.24 trillion) no matter the strength (or weakness) of the claim, litigation risk, or views of counsel. That novel requested standard fundamentally contradicts well-settled law and should be rejected out of hand.

## C. The District Court Properly Followed the *Hanlon/Churchill* Factors and the Northern District's Procedural Guidance

Objectors argue that the District Court's analysis somehow did not fully evaluate the settlement. *See, e.g.*, Isaacson App. Br. 65-67, 75-76. As discussed in

detail above, that is not true. The District Court cited and discussed the correct factors and applicable standard when approving the settlement. Just because the District Court credited Plaintiffs' damages analysis, informed by expert work, rather than Objectors' $1.24 trillion statutory damages figure, does not mean that the District Court committed error. Indeed, the District Court also recognized the inconsistency in the Feldman/Jan Objectors' position. FJER-15 (Feldman/Jan Objectors acknowledged in the District Court that a trillion-dollar recovery is unlikely).

### 1.    Response Specifically to Objectors Feldman and Jan

Objectors Feldman and Jan proffer a grab bag of unmeritorious arguments. First, they contend that class counsel did not provide the District Court with sufficient information under the Northern District's Procedural Guidance. Feldman/Jan App. Br. 21-22. Not so. Plaintiffs' motion for preliminary approval of the settlement explicitly addressed each of the Guidance factors. Motion for Preliminary Approval, District Court Dkt. No. 232 at 14-25, PSER-34-45; Joint Decl., District Court Dkt. No. 233, PSER-3. And counter to their statement otherwise, Plaintiffs did, in fact, address the risk of continued litigation. *Id*. at 12; *see also* FJER-17.[20] Objectors' suggestion that the District Court was somehow

---

[20] Objectors cherry-pick a quotation from the final fairness hearing to suggest that class counsel somehow concede that they did not provide the District Court with the strengths and weaknesses of the case. Feldman/Jan App. Br. 22. The full context of

unable to compare continued litigation with the settlement amount is belied by the

face of the District Court's order where it found:

> While Plaintiffs believed in the strength of their case, Class Counsel recognized the substantial risk and cost in continued litigation, including novel and uncertain damage theories that may likely require a "battle of experts" to determine, for example, the value of the data and the extent of any damages calibrated to the Defendant's use of the data. Dkt. No. 254 at 12–15. Counsel also pointed to other considerations, such as obtaining class certification and "[a] fourth Motion to Dismiss, discovery, litigation class certification, summary judgment, trial and appeals would have consumed many more years, involving tremendous time and expense of the parties and the Court." *Id.* at 14.

FJER-9.

Second, Feldman and Jan accuse the District Court of failing to "translate his

intuitions" when concluding that the settlement is fair, reasonable, and adequate.

Feldman/Jan App. Br. 23. They cite as authority the Seventh Circuit's decision in

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-285 (7th Cir. 2002). But this

Court does not evaluate class action settlements in the same way as the Seventh

Circuit, and this Court has found *Reynolds* inapposite for that reason. For example,

in *Rodriguez*, this Court rejected the argument that the district court should have

---

that quote reveals that class counsel was emphasizing how extensively they considered the strengths and weaknesses of the case for purposes of the settlement. FJER54-55 ("*We were fully aware of all of the strengths and weaknesses of our case. We had vetted them intensively.* As Mr. Straite could tell your Honor, I had 40 pages of the brief we had to cut out showing the strengths and weaknesses of the case because it was really too much to file.") (emphasis added).

quantified the expected value of fully litigating the matter, making clear that the Ninth Circuit's approach is different: "[w]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009);[21] *see also In re Facebook Biometric Information Privacy Litig.*, 522 F. Supp. 3d 617, 626 (N.D. Cal. Feb. 26, 2021) (rooting analysis in *Rodriguez*, stating: "[t]he Court declines the objectors' invitation to adopt the Seventh Circuit's approach of basing the evaluation on probabilities expressed in specific percentage…[t]hat is not the law of our Circuit").

Third, Feldman and Jan argue that this settlement is inadequate compared to other class-action settlements. Feldman/Jan App. Br. 24-29. First, their premise is wrong. "What matters is a realistic assessment of the overall risks and rewards of a trial in the context of each specific case." *Facebook Biometric*, 522 F. Supp. 3d at 626-27. Second, their facts are wrong. Feldman and Jan they ignore that this settlement ranks in the top ten of all data privacy class action settlements in history. Feldman and Jan fail to explain how the District Court committed any sort of abuse of discretion when finding, in pertinent part: (1) "The $90 million is a lot of money

---

[21] *Accord, Hollis v. Union Pac. R.R. Co.*, No. EDCV 17-2449 JGB (SHKx), 2018 WL 6267342, at *5 (C.D. Cal. Sept. 19, 2018) ("[i]n determining the probability of Plaintiffs' success on the merits, there is no 'particular formula by which that outcome must be tested.'") (quoting *Rodriguez*, 563 F.3d at 965).

. . . And I cannot untether that with the injunctive relief . . . I've never seen a case that had that injunctive relief where the party was, according to the settlement, they have agreed that we will delete, we'll destroy that data. That's significant . . . That in and of itself is hopefully a game changer for the industry, and to inform the public, much like the Ninth Circuit informed the legal community about one of the issues in this case."; and (2) "$39, in today's world, $39 is – that's significant . . . and that recovery I do think provides additional faith in Rule 23 for the affected class members and the public . . ." FJER-128-138.

The other settlements cited by Feldman and Jan do not support their argument that the District Court abused its discretion here. In *Facebook Biometric*, 522 F. Supp. 3d at 621-622, the district court initially denied preliminary approval of a $550 million settlement for several reasons, including the amount of the settlement, over-broad releases, and the form of notice. After the parties increased the settlement fund amount from $550 million to $650 million, the district court approved it.[22] That case actually *supports affirming the settlement here*, because it provides an example of a district court—just like here—properly employing the Ninth Circuit's wholistic

---

[22] Objectors acknowledge that the revised *Facebook Biometric* settlement amount only increased by 1.1% of aggregate statutory damages. Feldman/Jan App. Br. 24. Moreover, such an increase was arguably warranted in that case, which involved the willful use of highly sensitive personal biometric data, in contrast to the data at issue in this case that Facebook characterized as "a glitch in the system." FJER-129.

settlement analysis and approving a settlement fund that is a significant discount of theoretical aggregate statutory damages. In *Acosta v. Trans Union, LLC*, 240 F.R.D. 564 (C.D. Cal. Mar 6, 2007), *superseded*, 243 F.R.D. 377, 386-389 (C.D. Cal. Mar. 31, 2007), the district court found numerous flaws in the proposed settlement, including structural defects that "by themselves" required disapproval. In rejecting the settlement, the *Acosta* court also found the "arbitrary structural division of class members" was "compounded" by the fact that the class members outside the subclass would receive no economic relief at all. *Id.* at 387–88.[23] No such structural problems are present here. The $90 settlement fund is available to *all* class members who submitted a valid claim form, and the injunctive relief benefit all class members irrespective of who submitted a claim.

Finally, Feldman and Jan cite another recently preliminarily approved class action settlement with Facebook, *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 18-MD-02843-VC (N.D. Cal.), Dkt. No. 1130. Although that prospective settlement has a common fund of $725 million, it does not include injunctive relief in the form of data expungement that the District Court here highlighted as "hopefully a game changer for the industry." FJER-134. Moreover, just because the

---

[23] The *Acosta* court also found the proposed settlement relief to be insufficient, particularly because it made "economic relief available to only a select group of class members." *Id.* at 389. Feldman and Jan are wrong to argue that *Acosta's* facts are particularly instructive here.

fund in a different case is larger than the fund in this case, does not mean that the District Court committed error or an abuse of discretion—or else it would be an abuse of discretion to approve any settlement, except one. *See Rodriguez*, 563 F. 3d at 965 (adequacy of settlement payout is case-specific "amalgam of delicate balancing, gross approximations and rough justice," unconfined by any "particular formula"). The cases are far different factually, procedurally, and legally;[24] and *Rodriguez* teaches that those other settlements say nothing about the $90 million here.

None of those cases stand for the proposition that Feldman and Jan advance here: that this Court should create entirely new law and require plaintiffs to chase astronomical statutory damages in the settlement context regardless of litigation risks, and only allow a district court to approve a settlement if plaintiffs succeeded in obtaining a stratospheric sum. The reality is that such a new rule would upend not only this excellent settlement but countless others. *See Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*, 688 F. 2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (rejecting

---

[24] As one example, the FTC also fined Facebook/Meta $5 billion in connection with the facts of that case, whereas there was no parallel regulator fine in the present case specifically related to the facts here.

appellants' "speculation about what damages 'might have been' won had they prevailed at trial," noting settlement is compromise and settlement amounting to fraction of potential recovery does not require settlement disapproval (citing cases)).

Numerous settlements within this Circuit and throughout the country have been properly approved under district court's discretion when possible statutory damages are significantly discounted. *See, e.g.*, *In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617 (N.D. Cal. Feb. 26, 2021); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 934–936 (N.D. Ill. July 28, 2022) (approving $92 million settlement fund plus injunctive relief; noting that cases with potential statutory damages (*e.g.,* under VPAA and BIPA) often settle for relatively modest relief). Notably, the *TikTok* court found that the $92 million fund "compare[d] favorably to the monetary relief provided in other data privacy class settlements." *Id.*[25] And it rejected objectors' argument—just like Objectors raise here—that the $92 million fund in that case was inadequate compared to the *In re Facebook Biometric Info. Privacy Litig.* settlement's $650 million fund, because the

---

[25] Citing *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013) ($15 per claim in case alleging misappropriation of users' likenesses), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016); *In re Vizio, Inc., Consumer Privacy Litig.*, No. 8:16-ml-02693-JLS-KES, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (VPPA settlement providing $16.50 per claim). Indeed, some privacy class actions award only *cy pres* relief. *See In re Google Inc. Street View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1113–14 (9th Cir. 2021) (collecting cases). Here, settlement class members will receive approximately $39 per claim, which the District Court found to be "significant." FJER-128-138.

37

latter settled on the eve of trial, after plaintiffs had survived multiple motions to dismiss and motions for summary judgment and had won a hotly contested motion for class certification in the district court and on appeal. *Id*. at 936-937.

## 2.  Response Specifically to Objector Isaacson

Isaacson's arguments are groundless. He contends that the District Court did not consider factors under Rule 23(e) and 23(c), particularly whether the settlement treats class members equitably relative to each other. Isaacson App. Br. 65-67. That suggestion is belied by the face of the District Court's order where it cited Rule 23(e) in the legal standard section, specified that "the *Hanlon* factors indicate the settlement here is fair and reasonable and treats Class Members equitably relative to one another," and concluded that the settlement is "fair, reasonable, and adequate." 1-IER-007-010, 1-IER-018. Indeed, the factors under Rule 23(e) are largely subsumed in this Court's *Hanlon/Churchill*. *See Lane*, 696 F.3d at 818-819 (explaining that the *Hanlon/Churchill* factors guide the district court in making the Rule 23 determination that a settlement is fair, reasonable, and adequate).[26] Isaacson is simply wrong in claiming that the District Court ignored Rule 23's requirements

---

[26] Isaacson cites to *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2021), but that opinion specified that the amended Rule 23(e) "did not 'displace' this court's previous articulation of the relevant factors [under *Hanlon/Churchill*] and *it is still appropriate for district courts to consider these factors in their holistic assessment of settlement fairness*. *See* Fed. R. Civ. P. 23 advisory committee's note to the 2018 amendment." (emphasis added).

or otherwise did not sufficiently address whether the settlement is fair, reasonable, and adequate.

Isaacson, like Feldman and Jan, also ignores that this settlement ranks in the top ten of all data privacy class action settlements and ignores the right of class members to opt out and pursue their own statutory damages.

### D. The District Court Did Not Apply a Presumption of Fairness to the Settlement

The District Court correctly conducted a thorough analysis of all the 23(e) and *Hanlon/Churchill* factors, along with the Northern District of California's Guidelines on Class Actions. 1-IER-008, 4-IER-738. Objector Isaacson, however, contends that District Court relied on a "strong presumption" of fairness when approving the settlement. Isaacson App. Br. 61-62. That is false. First, the Plaintiffs expressly *disclaimed* any reliance on such a presumption, recognizing it has no place in settlement approval. 4-IER-597-598 ("We understand, Your Honor, there's no presumption of fairness . . . We don't need it. There's a heightened . . . scrutiny in the precertification settlement analysis."). The District Court also plainly cited and applied the required "higher standard of fairness." 1-IER-007 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).

The word "presumption" appears only once in the District Court's order, in quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. Jan. 9, 2008), to say that the absence of a large number of objections to a proposed

settlement is indicative of favorable settlement terms. 1-IER-010.[27] Put into its proper context, the District Court's *Omnivision* quote merely added authority to its conclusion that the small number of objectors and opt-outs here meant that "[t]he reaction of the class was for the most part positive." *Id*. The Plaintiffs expressly disavowed any presumption of fairness, and the District Court did *not* apply any such presumption (let alone a strong presumption) to the settlement as a whole.

Isaacson tries to analogize the foregoing with *Apple*, 50 F.4th at 775, where the district court mistakenly stated that it applied a presumption that the settlement was fair and reasonable. On remand after this Court's *Apple* decision, the district court explained that it "was thorough in its discussion but cited the incorrect legal standard," and it reiterated its findings as to the Rule 23(e)(2) and the *Churchill* factors. *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2023 WL 2090981, at *6 (N.D. Cal. Feb. 17, 2023).

Here, by contrast, the District Court did no such thing; it correctly eschewed any "presumption of fairness" and applied the higher standard of fairness, which the law requires and the Plaintiffs requested. Isaacson compares apples to oranges when suggesting that the District Court's quotation here in the context of the minimal

---

[27] The District Court did not only cite *Omnivision*, the Court also cited *Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

number of objectors and opt-outs is the same as relying upon and applying the wrong legal standard to the settlement as a whole as in *Apple*.[28]

Isaacson further erroneously contends that the District Court did not analyze the *Hanlon* factors when finding the settlement fair and reasonable. Isaacson App. Br. 61-64. But the District Court conspicuously cited the eight *Hanlon/Churchill* factors within the "Legal Standard" section of its order. 1-IER-007. Then, on the very next page, the District Court analyzed the *Hanlon/Churchill* factors and found them "satisfied." 1-IER-008. Appellant quibbles with the District Court's statement later in its final approval order that it previously found in its preliminary approval order that the *Hanlon/Churchill* factors indicate the settlement here is fair and reasonable. Isaacson takes issue with the fact that the preliminary approval order, itself, did not cite and analyze the *Hanlon/Churchill* factors. But in that preliminary approval order, the District Court found the settlement fair, reasonable, and adequate, 1-IER-028, *after* Plaintiffs also specifically cited the *Hanlon/Churchill* factors at the March 31, 2022 preliminary approval hearing. 4-IER-598-600. Isaacson cites no authority that requires a District Court to provide citation to and

---

[28] Isaacson's other cited cases are similarly inapposite, because they both cited and applied a presumption of fairness standard (*i.e.*, "the district court here overlayed its entire discussion of the settlement agreement with the erroneous presumption"), as opposed to the heightened fairness standard the District Court applies. *Saucillo v. Peck*, 25 F.4th 1118, 1131-1132 (9th Cir. 2022) (likening the case to *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019).

analysis of the *Hanlon/Churchill* factors in both preliminary approval *and* final approval orders. The District Court committed no error in hearing argument about the *Hanlon/Churchill* factors prior to its preliminary approval order and providing written analysis of the *Hanlon/Churchill* factors in its final approval order.

## II. LIMITED SEALING OF CONFIDENTIAL DISCOVERY MATERIAL DOES NOT PRECLUDE APPROVAL OF SETTLEMENTS

Objector Isaacson argues that class notice provided inadequate information to analyze the settlement, because small parts of two pleadings remain under seal. App. Br. 48-61. Appellant is wrong both under the law and the facts.

After contested briefing, the District Court sealed certain confidential material obtained by Plaintiffs in discovery and used to support certain allegations in the Second and Third Amended Complaints, but the causes of action and most factual allegations were and remain in the public record. When the Plaintiffs appealed their loss on motion to dismiss, Plaintiffs redacted the sealed material from excerpts of record but moved to unseal. This Court, however, reached the same conclusion as the District Court and ordered that the exact same material remain sealed, with no changes. *In re Facebook Internet Tracking Litig.*, 17-17486, Circuit Dkt. No. 32, Order Granting Motion to Seal dated June 4, 2018 (9th Cir. 2018).

During the final approval process, for the first time, Objector Isaacson attempted to relitigate the issue, claiming that the District Court should have somehow rejected the Ninth Circuit's sealing order, or alternatively the settlement

cannot be approved as a matter of law. Even if it were proper to relitigate the issue (it is not), sealing a few portions of a complaint citing Meta's confidential discovery material is no barrier to settlement approval. Isaacson cites no authority that would allow, let alone require, rejection of a class action settlement because Plaintiffs obtained confidential material in discovery and cited to it in a redacted complaint. Instead, Isaacson protests along First Amendment and Fifth Amendment due process grounds that are inapposite and unsupported with analysis. Isaacson App. Br. 53-61. For example, he cites a non-binding Fifth Circuit case discussing adequacy but not in the settlement context.[29] He cites a string of cases, most of which are non-binding, out-of-circuit decisions, regarding the non-controversial principle of the public's right of access to judicial proceedings. App. Br. 57-58.[30] None of that authority changes the appropriate previous actions taken by the District Court and this Court to seal limited portions of some of the complaints in this litigation.[31] Nor does it

---

[29] *Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001).

[30] Isaacson also cites an opinion from this Court *Courthouse News Serv. v. Planet*, 947 F.3d 581 (9th Cir. 2020), but that opinion dealt with a state court clerk's policies for timely access to and scanning of new civil complaints. It had nothing to do with class action settlements nor the appropriate procedures for sealing limited information in pleadings or other court filings, which is standard practice under the District Court's and this Court's rules.

[31] Isaacson cites two additional non-binding, out-of-circuit and factually distinguishable decisions that did not involve limited redactions such as those here. *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 304-306 (6th Cir. 2016) (vacating and remanding for further examination of the settlement's

change the applicable standard, fully met here, for adequate class notice. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1044-45 (9th Cir. 2019), puts the established rule plainly: "As we have consistently maintained, Rule 23(e) simply 'requires notice that describes 'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard.'" (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2011), in turn quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012)). Mr. Isaacson's objection itself shows notice was fully satisfactory.

Unsealing the limited redactions in these complaints is not necessary for Isaacson to investigate and come forward to be heard. Not only were the complaints (and other important documents) available on the settlement website, https://fbinternettrackingsettlement.com/, the redactions were very limited. The First Amended Consolidated complaint contained *zero* redactions, having been filed before discovery.[32] The Second Amended Consolidated complaint contained limited

---

fairness, because "both the general public and the class were able to access only fragmentary information about the conduct giving rise to this litigation, and *next to nothing* about the bases of the settlement itself") (emphasis added); *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 316 F. Supp. 3d 455, 470-471 (D.D.C. Jun. 11, 2018) (not involving a class action settlement; granting and denying in part motions to seal, allowing narrowly tailored redactions).

[32] Likewise, the two complaints from the companion California state court action *Ung v. Facebook*, 2-IER-150 (settlement agreement defining *Ung* as a related action) contained *zero* redactions and were posted to the settlement website.

redactions in only 22 out of the 178 paragraphs with factual allegations, and there were zero redactions in the paragraphs summarizing the elements of Counts I-XI. The Third Amended Consolidated complaint likewise contained limited redactions in only 29 out of the 138 paragraphs with factual allegations; there were zero redactions in the Counts. Because the complaints posted to the settlement website were almost entirely unsealed and readily available to anyone—including Isaacson—the District Court did not abuse its discretion in rejecting his objection.[33] All potential settlement class members had more than enough information in the complaints—even setting aside the additional case descriptions and information contained in the class notice and other settlement papers—to evaluate the settlement and come forward to be heard.[34]

---

[33] Plaintiffs are aware of no requirement that would have necessitated a conforming complaint be filed by Plaintiffs following the prior appeal in this Court, particularly when Plaintiffs and Defendant were extensively mediating the case after this Court's appellate decision. In no way were potential individual statutory damages somehow hidden in the district court record, especially due to the public nature of the multiple complaints in this case and this Court's appellate decision resurrecting, *e.g.*, the Wiretap Act claim. It was just as easy for Appellant to identify the operative claims in this case at the time of settlement, as it was for the District Court. 1-IER-014 n.6.

[34] Isaacson also contends that the named plaintiffs themselves were somehow insufficiently informed about the settlement because some discovery material remained sealed. Isaacson App. Br. 54. That is categorically false. Plaintiffs submitted declarations in support of the settlement, explaining that they were informed and agreed to the key settlement terms. 2-IER-117-146. In support of Isaacson's false contention, he cites from a reply brief regarding sealing filed by Plaintiffs, but the cited excerpt merely refers to a limited number of "Highly Confidential – Attorneys' Eyes Only" ("AEO") documents obtained from Defendant

### III. THE DISTRICT COURT'S AWARD OF ATTORNEYS' FEES WAS APPROPRIATE

The District Court correctly evaluated Plaintiffs' motion for attorneys' fees by conducting a percentage-of-the-fund analysis with a lodestar cross-check analysis, consistent with this Court's decision in *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954-55. 1-IER-005, 1-IER-019-023. The District Court awarded 29% of the settlement fund, after considering whether a modest upward adjustment from the 25% benchmark was appropriate, particularly where Plaintiffs achieved a significant change in the law after appealing and arguing before this Court. *Id*. (citing *In re Google Street View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1120 (9th Cir. 2021) (quoting *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002)). And the District Court found that class counsel "achieved an exceptional result for the Class in obtaining both monetary and injunctive relief," both of which warranted an upward adjustment from the benchmark. *Id*. Furthermore, the lodestar cross-check revealed that the combined lodestar compared to the requested fee award represents a multiplier of 2.7 on all time reported on the case from inception

---

during discovery that shed additional light on the tracking practice at issue in the case. 3-IER-377-378. By Isaacson's logic, whenever Class Counsel fight hard and successfully obtain highly confidential AEO discovery material—which informs their views about their case's strengths and weaknesses and establishes a basis for settlement analysis – the case can no longer be settled by operation of law.

through the motion for fees, and 3.28 if one excludes all pre-consolidation time. *Id*.[35]

Not only did the District Court find the hours reported and rates charged reasonable, but it also found "that Class Counsel represented their clients with skill and diligence for over ten years on a contingent fee basis and obtained an excellent result for the class, taking into account the possible outcomes and risks of proceeding trial." *Id*.

In sharp contrast to those findings, Objector Isaacson baselessly accuses class counsel of "quitting[] and selling the Class out for the tiniest fraction of recoverable damages." Isaacson App. Br. 69. The record refutes his *ad hominem* and unprofessional attack. Isaacson also takes issue with the lodestar cross-check and contends that it is an abuse of discretion for the District Court to award class counsel a 29% award when it amounts to three times their lodestar. Once again, however, Isaacson's argument relies on out-of-circuit, non-binding authority.[36] And Isaacson

---

[35] The 2.7 multiplier would be lower if one included lodestar incurred after the filing of the fee motion, including claims administration tasks, traveling to, and preparing for and arguing the final approval hearing, and of course briefing this appeal, all of which time is not separately compensated. Conversely, as the District Court noted, if one excludes all time spent on the case prior to consolidation and all time after motion, the multiplier is 3.28. I-IER-021.

[36] Appellant cites cases from the Second, Fifth, and Tenth Circuits, but none of them prohibit a multiplier of just over 3 in the context of valuable settlement consideration, an important development in the law, and lengthy litigation that is present here. *See e.g.*, *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1447 (10th Cir. 1995) (involving a settlement with no fund of money, but most class members had to pay the defendant 97% of the market price for additional shares in order to realize any benefit; finding percentage-of-the-fund approach not appropriate in that

ignores the fact that "Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases." *Sheikh v. Tesla, Inc.*, No. 17-cv-02193-BLF, 2018 WL 5794532, at *8 (N.D. Cal. Nov. 2, 2018) (citation omitted); *see also In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (approving 3.66 multiplier in $200 million settlement); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (even a multiplier of 6.85 was "well within the range of multipliers that courts have allowed"); *In re TikTok, Inc., Consumer Privacy Litig.*, No. 20 C 4699, 2022 WL 2982782, at *29 (N.D. Ill. July 28, 2022) (awarding a lodestar multiplier of 2.04, equal to 33% of the common fund, but noting that 2.04 "is well below average for a fund of [$92 million]" citing 5 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 15:89 tbl.2 (6th ed.) (for fund sizes over $44 million, the *mean* multiplier was 2.39)).

Finally, Isaacson contends that the District Court "utterly failed" to balance the amount and timing of proposed attorneys' fees with the settlement relief under Fed. R. Civ. P. 23(c)(2)(C)(iii). Isaacson App. Br. 66-67. That is false. The District Court's Order analyzed how much of the settlement fund would remain after deducting fees, costs, and service awards, determined that that meant each class member who submitted a valid claim would receive approximately $39 (which, as

context); *Flowers v. Wiley*, 675 F.2d 704, 704 (5th Cir. 1982) (not a class action settlement).

discussed above, the District Court concluded is "significant"), and found the settlement to be fair, reasonable, and adequate, expressly accounting for the amount and timing of attorneys' fees. 1-IER-005, 1-IER-008-023.

Isaacson cites to *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021) for the uncontroversial point that a Rule 23(e) analysis of a proposed settlement includes a review of the related proposed award of attorneys' fees. Isaacson App. Br. 67. But *Oreshack* expressly incorporates the *Bluetooth* factors, all of which strongly support approval here. First, counsel did not negotiate a "disproportionate" distribution of fees, *Oreshack*, 16 F.4th at 607, because they did not negotiate for any fees – the amount and timing of attorneys' fees were instead left to the discretion of the Court and approval of the settlement was in no way contingent on approval of a minimum fee award. Furthermore, the Court awarded 29% of the common fund, which is a modest 4% higher than the Ninth Circuit benchmark of 25%, an adjustment amply supported by the record as discussed above. Second, there was no clear-sailing arrangement, *id*. at 607-08, because Defendant retained the right to support, oppose or take no position on fees. And third, there was no "kicker or reverter clause," *id*. at 608, because the common fund is completely non-reversionary. *Oreshack* supports the District Court's ruling, not Isaacson. In sum, the District Court did not abuse its discretion in granting Plaintiffs'

motion for fees.[37]

## IV. SERVICE AWARDS TO LEAD PLAINTIFFS ARE PERMITTED IN THE NINTH CIRCUIT

This Court recently concluded that Supreme Court precedent does not foreclose incentive payments or service awards to class representatives. *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 (9th Cir. 2022). This Court further noted that it has "repeatedly held that reasonable incentive awards to class representatives are permitted," including under recent Supreme Court precedent. *Id*. (citing *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 n.7 (2018)) (internal quotations omitted). It reasoned that its twenty-first century precedent allowing such awards does not conflict with nineteenth century caselaw[38] and concluded, "[s]o long as they are reasonable, they can be awarded." *Id*.

Notwithstanding this Court's clear authority, which Objector Isaacson acknowledges (Isaacson App. Br. 72), he states that he preserves the issue for review by the en banc court or the Supreme Court. The District Court properly followed this

---

[37] In *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020), cited by Isaacson, see App. Br. at 71, this Court found error, because the multiplier awarded by the district court was improperly based on the value of the coupon portion of the relief and on factors (such as the amount of work and contingent nature) subsumed in the lodestar calculation. Here, the District Court did no such thing—the common fund here is a non-reversionary cash fund.

[38] Isaacson cites the same old caselaw (*Greenough* and *Pettus*) that this Court evaluated and found inapplicable in its *Apple* decision. Isaacson App. Br. 71.

Court's binding *Apple* decision when awarding reasonable service awards here. 1-IER-024. Appellant's objection to service awards should be rejected out of hand, just as it has been rejected by this Court and the Supreme Court repeatedly before.

Here, the District Court awarded seven *service*[39] awards to the named plaintiffs ($5,000 to four of the plaintiffs and $3,000 to three of the plaintiffs, totaling $29,000), after noting that they represented the data privacy interests of millions of others "for over a ten-year period with very little personally to gain." 1-IER-024-025. Service awards in that context align with this Court's view that service awards are intended to compensate class representatives for work undertaken on behalf of a class. *Id.* (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943).

The District Court also rejected Isaacson's incorrect suggestion that the class representatives were somehow improperly incentivized in this case, because Class Counsel made clear that, as a matter of practice, they do not inform class representatives of service awards until *after* they have examined the other terms of the Settlement Agreement to ensure that any award would not influence the class representatives' acceptance of the terms. *Id.* Isaacson theorizes that the service awards are unsupportable because someone might have been willing to "charge

---

[39] The District Court emphasized when overruling Isaacson's objection that "[t]his [service] characterization more appropriately captures the purpose of the award in this instance. The class representatives are being rewarded for their service to the class." 1-IER-025-026.

zero" for their service to the class and because Plaintiffs purportedly did not document the work that they did throughout the case. Once again, Isaacson is wrong on the law and the facts. He cites Sixth and Seventh Circuit cases to contend that incentive awards are justified when necessary to induce individuals to be a named plaintiff. Isaacson App. Br. 72-73. Not only are those decisions not binding on this Court, but this Court most recently explained that a district court must simply evaluate the proposed awards by considering the actions the plaintiffs took to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort expended, and any financial or reputation risks the plaintiffs faced. *In re Apple Inc. Device Performance Litig.*, 50 F.4th at 786. The District Court here undertook that exact analysis when finding the service awards reasonable, and the facts support a finding that the awards were reasonable. 1-IER-023-025 (discussing the Plaintiffs' actions over a ten-year period). The District Court did not abuse its discretion when awarding service awards.

## V. THE DISTRICT COURT CORRECTLY FOUND THAT CLASS NOTICE COMPLIED WITH ALL REQUIREMENTS AND WAS "IMPRESSIVE"

The District Court correctly rejected the Feldman/Jan Objection regarding class notice, and there is no legal error. Class notice here was exceptional. The District Court emphasized the Claims Administrator's report that the media campaign reached slightly over 80% of *all adults in the U.S.* who are 18 years of age

or older in addition to the 99% of all Class Members who were reached directly. 1-IER-009-010, 4-IER-688-689. The District Court further commented, "I'm very impressed with the efforts that were made" in order to make sure that "the incredible size of this class would be notified." 4-IER-730.

At the final approval hearing, Mr. Weisbrot (the CEO of Angeion, the Claims Administrator) was equally impressed when he stated to the District Court: "I do thousands of these settlements and I've never seen such a concentrated effort by counsel on both sides of the litigation to figure out the best way to reach these people." 4-IER-689. He added, "[s]o this truly . . . was a belts and suspenders program that goes above and beyond similarly situated settlements. 4-IER-690. Due to Angeion's robust notice efforts, over 2.1 million claims were submitted, and Angeion determined that over 1.5 million of those were valid. 1-IER-010.

In addition to the extensive reach of the class notice, the District Court also correctly found that the approximate 2% claims rate here is "satisfactory" for class sizes in the millions. 1-IER-015. The average claims rate for classes in the millions is less than 1.5%. *Id*. (citing *In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1090 n.6 (N.D. Ill. Sept. 30, 2021)); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990) (citing that "[s]ettlements of large class action suits have been approved where less than 5% of the class files claims"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 945 (9th Cir.

2015); *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (approving settlement with claims rate of "about two percent").

Objectors Feldman and Jan argue that the Class Notice is defective per se because it did not include a detailed statement and analysis of the remaining live claims. Feldman/Jan App. Br. 30-36. Here, too, they depart from Ninth Circuit law. As this Court has made clear, the Rule 23(e) "standard *does not* require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it *does not* require an estimate of the potential value of those claims." *Lane*, 696 F. 3d at 826 (emphasis added). Rule 23(e) simply requires notice that describes "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Id.* (internal quotation omitted). Factually, the class notice contained more than enough detail for those with adverse viewpoints—including Objectors—to come forward and be heard. Indeed, class notice here contained the same categories of information that this Court found sufficient in *In re Online DVD-Rental Antitrust Litig.*:

| **Information Provided in This Case** | **Information Provided in *Online DVD*** |
|:---:|:---:|
| About the Case | About the Case |
| Status of the Case | Status of the Case |
| A Website and Phone Number with More Detail | A Website and Phone Number with More Detail |
| Amount of the Settlement Fund | Amount of the Settlement Fund |
| Amount Sought in Fees, Expenses, and Service Awards | Amount Sought in Fees, Expenses, and Service Awards |
| Deadlines to Opt Out, Object, or Submit a Claim | Deadlines to Opt Out, Object, or Submit a Claim |

*Compare* 779 F.3d at 945-946 with Motion for Preliminary Approval, District Court Dkt. No. 232 at 24, PSER-44[40]; 1-IER-008-009, 4-IER-641-643, 4-IER-677-679, 2-IER-238-246.

In sum, the class notice here "communicated the essentials of the proposed settlement in a sufficiently balanced, accurate, and informative way to satisfy due process concerns." *Rodriguez*, 563 F.3d at 962–63 (rejecting objectors' argument that the settlement notice should have included information like the content of the objections and the expected value of fully litigating the case). And Appellant proffers a false argument to suggest a lack of adequacy, when in reality Plaintiffs' declarations show that they understood their claims and approved of the key settlement terms. 2-IER-117-146. The District Court did not legal error in finding the class notice here to be adequate.

---

[40] The notice here provided additional information, such as the reasons the parties propose the settlement, the parties' disagreements over liability and damages, the releases, and the plan for distributing the settlement payment.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs-Appellees respectfully request that this Court affirm the District Court's Order granting the motion for final approval of the class action settlement, granting the motion for attorneys' fees, expenses, and service awards, overruling the objectors' objections, and entering judgment.

Dated: July 20, 2023                    Respectfully Submitted,

                                        _____*/s/ David Straite*_____
                                        David A. Straite
                                        DiCELLO LEVITT LLP
                                        485 Lexington Ave., Tenth Floor
                                        New York, NY 10017
                                        Tel.: (646) 933-1000
                                        *dstraite@dicellolevitt.com*

                                        Amy E. Keller
                                        Adam Prom
                                        DiCELLO LEVITT LLP
                                        Ten North Dearborn Street, 6th Floor
                                        Chicago, Illinois 60602
                                        Tel.: (312) 214-7900
                                        *akeller@dicellolevitt.com*
                                        *aprom@dicellolevitt.com*

                                        _____*/s/ Stephen Grygiel*_____
                                        Stephen G. Grygiel
                                        GRYGIEL LAW LLC
                                        127 Coventry Place
                                        Clinton, NY 13323
                                        Tel.: (407) 505-9463
                                        *stephengrygiel22@gmail.com*

                                        _____*/s/ Jay Barnes*_____
                                        Jason 'Jay' Barnes
                                        SIMMONS HANLY CONROY LLC
                                        112 Madison Avenue, 7th Floor
                                        New York, NY 10016
                                        Tel.: (212) 784-6400
                                        *jaybarnes@simmonsfirm.com*

<u>**STATEMENT OF RELATED CASES**</u>

On June 14, 2023, the Ninth Circuit consolidated the two objector appeals addressed above, the first brought by Sarah Feldman and Hondo Jan (No. 22-16903), and the second brought by *pro se* objector Eric Alan Isaacson, Esq. (No. 22-16904). Plaintiffs-Appellees are not aware of any other related case.

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this filing complies with the requirements of Fed. R. App.

P. 32(a)(7)(B) and Circuit Rule 32-1(a). The word count is 13,565, excluding those

portions excepted by Rule 32(f), and the typeface is Times New Roman, 14-point.

Dated: July 20, 2023          <u>      */s/ David A. Straite*      </u>
                                     David A. Straite

## **CERTIFICATE OF SERVICE**

I, David A. Straite, hereby certify that on July 20, 2023, I caused to be electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the CM/ECF system which will send notification of such filing to all counsel of record registered in the CM/ECF system.


       */s/ David A. Straite*
       David A. Straite