No. 22-16903

_____

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

PERRIN AIKENS DAVIS, et al.,
*Plaintiffs-Appellees*,

v.

META PLATFORMS, INC., FKA FACEBOOK, INC.
*Defendant-Appellee*,

v.

SARAH FELDMAN and HONDO JAN,
*Objectors-Appellants*.

_____

On Appeal from the Northern District of California
Civil Action No. 5:12-md-2314-EJD
Hon. Edward J. Davila

_____

## REPLY BRIEF OF APPELLANTS
## SARAH FELDMAN AND HONDO JAN

_____

Kendrick Jan                          John J. Pentz
Kendrick Jan, APC                     Law Offices of John J. Pentz
225 Broadway, Suite 2220              18 Damon Street
San Diego, CA  92101                  Wayland, MA 01778
(619) 231-7702                        (978) 985-4668
kj@jan-law.com                        jjpentz3@gmail.com

*Attorneys for Appellants Feldman & Jan*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................i

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ...............................................................................1

ARGUMENT ......................................................................................2

    I.    The *Hanlon* factors, *Wakefield*, and the Northern
          District's own guidelines, required the district court
          to more thoroughly examine the compromise of
          class claims proposed by the settlement..............................................2

    II.    Appellants did not forfeit the notice issue.........................................10

    III.    Class notice did not meet the standards established
           By *Phillips Petroleum Co. v. Shutts* or Rule 23...............................11

    IV.    The linking of the second and third amended complaints
           to the settlement website does not help class members
           understand class claims; quite the opposite .....................................13

CONCLUSION ...................................................................................15

CERTIFICATE OF COMPLIANCE....................................................16

CERTIFICATE OF SERVICE ............................................................17

i

# TABLE OF AUTHORITIES

## CASES

*Acosta v. Trans Union, LLC*,
    240 F.R.D. 564 (CD CA 2007) ............................................................9

*Dish Network LLC v Gonzalez*,
    2013 WL 2991040 (ED Cal. 2013) ..............................................5, 6, 7

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................3

*In re Apple Inc. Device Performance Litig.*,
    50 F.4th 769 (9th Cir. 2022) ..............................................................1

*In re Facebook Biometric Info. Privacy Litig.*,
    522 F. Supp.3d 617 (N.D. Cal. 2021) ................................................4

*In re: Facebook, Inc. Internet Tracking Litigation*,
    956 F.3d 589 (9th Cir. 2020) ............................................................14

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ..................................................7, 8, 12

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) .......................................... 2, 11, 12, 13, 14, 15

*Protective Comm. For Indep. Stockholders of TMT*,
    390 U.S. 414 (1968) ..........................................................................9

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ............................................................4

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ....................................................3, 4, 5

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) ..........................................................................9

*St. Louis, I. M. & S. Ry. Co. v. Williams et al*
    251 U.S. 63 (1919)............................................................6

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) ................................. 2, 5, 6, 7, 8, 10, 15

## STATUTES

The Federal Wiretap Act

    18 U.S.C. § 2520(b)(2) ......................................................4

    18 U.S.C. § 2520(c) ..........................................................9

    18 U.S.C. § 2520(c)(2) ......................................................8

    18 U.S.C. § 2520(c)(2)(B) ...............................................4, 5, 9

Federal Rules of Civil Procedure

    Rule 23...................................................................1, 11

    Rule 23(c)(2)(B) ........................................... 2, 10, 11, 12, 14, 15

    Rule 23(e) ...................................................................12

    Rule 23(e)(1)(B) ...........................................................12

*Judges' Class Action Notice and Claims Process*
*Checklist and Plain Language Guide* ....................................13, 14

*Procedural Guidance for Class Action Settlements*
    N.D. Cal ...........................................................2, 3, 7, 12

William B. Rubenstein, *3 Newberg and Rubenstein on*
*Class Actions* § 8:17 (6th ed.)........................................12

## INTRODUCTION

A $90 million settlement in a case that presents statutory damages of $1.2 trillion is simply not reasonable and the district court made no findings that would justify such a radical discount. The district court did find that a ten percent recovery is reasonable based on its mistaken finding – stemming from misapplication of superseded law – that $900 million is the maximum possible recovery.

While Ninth Circuit precedent may not require mathematical precision, a district judge must demonstrate in his approval order that he is aware of whether the case carries the prospect of damages measured in the millions, billions, or trillions of dollars. The district court here never reached that stage, since it mistakenly believed the maximum possible recovery is limited to ten times a number manufactured by Plaintiff's expert. A settlement approval infected by a legally incorrect belief about the breadth of the judge's discretion regarding available damages must be reversed. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 783 (9th Cir. 2022).

Class Counsel misrepresent Appellants' notice argument when they claim "Feldman and Jan argue that the Class Notice is defective per se because it did not include a detailed statement and analysis of the remaining live claims." Not so. Rather, Appellants argue simply that class notice failed to meet applicable due process and Rule 23 standards. Appellee Facebook, on the other hand, argues that

Appellees "forfeited this challenge" and that the settlement website's links to documents afford sufficient notice. Facebook is wrong on both counts. Appellees also entirely ignore the lack of a controlling complaint, whether in the docket or on the settlement website.

Class notice was plainly neither *best practicable*[1] nor *clear and concise*,[2] in violation of governing standards.

## ARGUMENT

**I.    The *Hanlon* factors, *Wakefield*, and the Northern District's own guidelines, required the district court to more thoroughly examine the compromise of class claims proposed by the settlement**

The Northern District of California's *Procedural Guidance for Class Action Settlements*[3] requires Class Counsel to provide the district court with "the class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery *if plaintiffs had fully prevailed on each of their claims, claim by claim,* and a justification of the discount."[4]  (Emphasis added.)  OB,

---

[1] *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

[2] *See* Rule 23(c)(2)(B).

[3] Attached to Appellants' Opening Brief ("OB"), p. A-5 – A-9.

[4] Contrary to Class Counsel's assertion, neither their motion for preliminary approval nor their motion for final approval addresses the *Procedural Guidance* requirement that they provide the court with potential claim by claim class recovery and a justification of the discount proposed by the settlement.  Instead, they

2

p. A-5.    While the particulars of the *Procedural Guidance* may be more specific than what this Court has required in the past, the Northern District obliges parties to "follow [the] guidelines to the extent they do not conflict with a specific judicial order in an individual case."  The purpose of the *Procedural Guidance* is to ensure that the court is provided sufficient information to determine whether or not a proposed settlement is reasonable and adequate in light of the case's prospects.  *See Rodriguez v. West Publ. Corp*., 563 F.3d 948, 965-55 (9th Cir. 2009) (citing to *Federal Judicial Center, Manual for complex Litigation*) ("one factor 'that may bear on review of a settlement' is 'the advantages of the proposed settlement versus the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members.'").  More directly, the *Procedural Guidance* requirements provide the district court with the means to comprehensively explore the first (strength of plaintiff's case) and fourth (the amount offered in settlement) *Hanlon* factors.[5]

Contrary to Facebook's implication, in *Rodriguez* "estimated recovery ranges by both parties" were in fact before the court and nothing in *Rodriguez* supports the district court's disregard of the value of the Wiretap Act claims when evaluating the

---

irrelevantly boast the settlement was "one of the ten largest privacy settlements of all time."

[5] *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1026 ("To survive appellate review, the district court must show it has explored comprehensively all factors.").

3

instant settlement. *See Rodriguez v. West Publ. Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). Rather, *Rodriquez* confirms that "judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the *potential recovery*, and the chances of obtaining it, discounted to present value" *id.* at 965, (emphasis added) which sounds very much like the quantification analysis of *Reynolds v. Beneficial* (288 F.3d 277, 284-285 (7th Cir. 2002)), minus the math.

In the instant case, no recovery range for statutory damages was provided by either party, and the district court's analysis did not compare the settlement amount to the "best possible outcome" or "potential recovery" for the class. *See Rodriguez* at 964-965.

The settlement in *Rodriguez* represented 30% of potential single damages. This Court noted that even compared to the higher treble damages number,[6] the settlement still represented a 10% recovery. *Id*. at 965. When considered in terms of percentage of relative value, *Rodriguez'* 10% recovery is 1,429 times greater than the instant settlement, which represents just 0.007% of calculable statutory damages. Courts have routinely approved settlements that represent a recovery of 10%, 5% or even 2% of potential damages. *See, e.g., In re Facebook Biometric Info. Privacy*

---

[6] Single damages in this case are calculated using the per claimant $10,000 statutory damages available under 18 U.S.C. 2520(c)(2)(B). Punitive damages – likened to treble damages in antitrust – are separately available under 18 U.S.C. § 2520(b)(2). Appellants have never argued the district court should have considered the prospect of punitive damages in its review of the proposed settlement.

4

*Litig.*, 522 F. Supp. 3d 617, 621 (N.D. Cal. 2021) (6.8% recovery).  Therefore, the settlement in *Rodriguez* was reasonable whether compared to single or treble damages.  However, no class settlement has ever been approved that represents anything close to the miniscule percentage yield proposed in this case, whether in this Circuit or elsewhere.

Appellee Facebook disingenuously claims "objectors incorrectly assume that plaintiffs' success on the Wiretap Act claim would have resulted in a $1.2 trillion payout."  Facebook AB, p. 35.   Appellants never suggested anything of the sort.  Appellants have consistently recognized that gross calculable statutory damages are simply the starting point, and are subject to due process limitations.  Appellants argued in their Opening Brief that the "district court's three-part analysis should have begun with a calculation of aggregated statutory damages, followed by a discount according to risk of continued litigation, and then proceeded to a cross-check – and, if necessary, an adjustment – for *Wakefield* oppressiveness."  Appellants OB, p. 25-26.

Facebook cites to *Dish Network LLC v Gonzalez*, 2013 WL 2991040 (ED Cal. 2013) as authority for the proposition that courts must either award the full $10,000 statutory damages available under the Wiretap Act[7] or award nothing, and not some number in between.  First, *Dish Network* and the cases cited therein are all individual

---

[7] *See* 18 U.S.C. 2520(c)(2)(B).  OB, p. A-5.

cases, not class actions. Therefore, Facebook's asserted "rule" prohibiting the award of an amount less than $10,000 but greater than $0 only applies in non-class action cases. Second, the court in *Dish Network* actually awarded the full measure of statutory damages to the plaintiff in that case, in part because the lack of evidence of the extent of plaintiff's damages was the fault of the defendant, which was in sole possession of that evidence; facts similar to Facebook's privacy intrusion in the present case. One of the factors a court is to consider is "the extent of any intrusion into the victim's privacy." Here, that intrusion was substantial. "Awarding Plaintiffs no damages would effectively reward Defendant for wrongful actions by allowing the misconduct to remain unsanctioned." *Id*. at *10. It is inconceivable the district court would have elected to allow Facebook's privacy violations to be immune from consequence. Had the matter been tried, it is clear the court would have had no choice but to award the full $10,000 per class member – subject to a *Wakefield* reduction.[8] *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1121-1122 (9th Cir. 2022) *citing St. Louis, I. M. & S. Ry. Co. v. Williams et al*, 251 U.S. 63, 66-67 ("We have recognized the application of *Williams* to statutory awards on a per-

---

[8] *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1121-1122 (9th Cir. 2022) ("We now hold that, pursuant to *Williams*, aggregated statutory damages awards are, in certain extreme circumstances, subject to constitutional due process limitations….Thus, where aggregation has resulted in extraordinarily large awards wholly disproportionate to the goals of the statute, *Williams* implies a constitutional limit may require reduction.")

violation basis, holding '[a] statutorily prescribed penalty violates due process rights 'only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'") *See also Dish Network LLC v Gonzalez*, 2013 WL 2991040 *10 (ED Cal. 2013) ("a district court's refusal to award any damages without giving serious consideration to the adverse effects of allowing the misconduct to go unsanctioned is an abuse of discretion. … a refusal to award statutory damages incentivizes, rather than deters, Defendant and others from similar acts…").

Finally, this Court has never held that a court's choices in the resolution of *class actions* – whether through settlement or at the trial stage – are limited to awarding zero dollars or maximum statutory damages multiplied by the number of class members. Rather, the appropriate discount of statutory damages is accomplished through application of the *Wakefield* standards of constitutional excessiveness to a number that is the product of gross statutory damages adjusted for risk. In the instant case – accounting for economies of scale and substantial deterrent effect – it would be perfectly reasonable to award each class member substantially less than $10,000. For example, a settlement recovering $100 per class member would result in a total damages award of $12.4 billion, an amount sufficient to deter similar misconduct in the future, but not so excessive as to put Facebook out of business. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012)

("annihilative" statutory damages would likely exceed limits imposed by due process clause).

While *Lane v. Facebook, Inc*., *supra,* holds that district courts "need not include findings of fact as to the potential recovery for each of the plaintiffs' causes of action," this statement is at odds with the Northern District's own *Procedural Guidance*, and, in any event, Appellants' argument is not limited to the absence of a factual finding but instead takes issue with the district court's failure to recognize the Wiretap Act carried aggregate damages measured in the trillions, not millions of dollars. The district court need not have calculated the value of the Wiretap Act claims down to the cent in order to realize that a $90 million settlement is woefully inadequate in a case that presents a potential post-*Wakefield*-adjustment net recovery of something in the range of $12.4 billion (i.e. one percent of calculable statutory damages).

The district court failed entirely to consider the appropriate measure of Wiretap Act damages in this case because of its mistaken belief that recovery would be limited to an amount that is ten times the actual damages, and that actual damages equal the amount Plaintiffs' expert *estimated* Facebook might have derived from the tracked data.[9] Both of these assumptions are incorrect. *Wakefield* established that

---

[9] In so doing the district court disregarded the instruction of 18 U.S.C. § 2520(c)(2) which makes disgorgement damages irrelevant to the discussion of statutory damages.

limits on punitive damages do not apply in the context of statutory damages, and using a figure based on hypothetical sales that the defendant might have made – but never did – is not a correct basis for calculating unjust enrichment damages or limiting damages available under 18 U.S.C. § 2520(c).

The only basis for establishing gross damages in this case is the statutory amount set by Congress to apply to those situations in which the damage to a plaintiff's privacy is difficult to quantify. This is exactly such a case. The Plaintiffs suffered harm as a result of having their private internet surfing histories tracked, whether or not they lost money – or Facebook made money – as a result. Per 18 U.S.C. 2520(c)(2)(B), the dollar amount Congress has specified in this case is $10,000 per claimant. OB, p. A-3. The district court's legal error in applying *State Farm*[10] to the facts of this case caused it to disregard these Wiretap Act damages entirely, in violation of law. *See Acosta v. Trans Union LLC,* 240 FRD 564, 575 (CD Cal. 2007) (basic to process of settlement approval is need to compare terms of compromise with likely rewards of litigation) (*citing Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).[11]

---

[10] *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

[11] The district court's finding that Class Counsel "analyzed maximum recoveries in the 'best day in court' scenario and weigh[ed] it against the barriers to achieving

Appellants ask the Court to provide guidance about how to apply *Wakefield's* due process standards to the examination of a class settlement that proposes a huge discount of massive statutory damages.

## II.    Appellants did not forfeit the notice issue

Contrary to Facebook's claim, Appellants have not forfeited the notice issue. *See*: Appellants' objection at Facebook SER-4 ("The Notice Plan is not the best notice practicable under the circumstances and was not reasonably calculated to apprise members of the Settlement Class of those concerns set forth in Rule 23(c)(2)(B)(i) and (iii)."); Facebook SER-5 ("The controlling Third Amended Complaint ("TAC"), however, states causes of action for only Breach of Contract (Count I) and Breach of the Covenant of Good Faith and Fair Dealing (Count II)."); and Facebook SER 5 ("The parties have failed to satisfy this District's Procedural Standards for Approving Class Action Settlements.  In particular, they have failed to provide potential recoveries if the Plaintiffs had prevailed on all of their claims, compare that amount to the actual $90 million recovery, and justify the enormous discount of 99.9927%.  They have also failed to explain why the claims being released are different from and broader than the claims contained in the TAC.").  *See also*: FAH Transcript at ER 75-76 ("once again, the class is left to wonder what that

_____

such a result before accepting settlement" mischaracterizes Class Counsel's motion for final approval.  See ER 17.  In their motion, while Class Counsel identify several defenses, they never assign any value to underlying claims.

means because there is no controlling current form of complaint with the court, that means that the TAC has no valid causes, and the second amended complaint had been earlier dismissed without prejudice. So we don't know what's before the court."); and ER 74 ("I think that's a function of people not really understanding or having the information available to them. It helps them to understand what it was that was sought. […] there would be a lot more class member response if class members knew that what they were getting out of this was 1/100th of 1 percent, actually less than 1, 1/100th of 1 percent of available damages, that is, calculable damages.")

Appellants addressed inadequacy of notice in their objection (by direct reference to best practicable notice and Rule 23(c)(2)(B)(i) and (iii), as well as the inadequacy of information provided in the moving papers) and at the final approval hearing (through discussion of the failure to clearly and concisely inform the class what claims survived appeal).

### III. Class notice did not meet the standards established by *Phillips Petroleum Co. v. Shutts* or Rule 23

The settlement class notice met neither the standards of *Phillips Petroleum* nor Rule 23(c)(2)(B). *Phillips Petroleum* requires that class notice be the "best practicable" and that it "should describe the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). This requirement is

reflected in Rule 23(c)(2)(B),[12] which states that notice to the class "must *clearly and concisely state* in plain, *easily understood* language: … (iii) the *class claims, issues, or defenses.*" (Emphasis added.) Appellants are not looking to break new ground, they are simply asking that standards governing class notice be observed.

Class Counsel entirely ignore *Philips Petroleum*. Instead, citing to *Lane v. Facebook, Inc.* 696 F.3d 811, 826 (9th Cir. 2012), they focus on the Rule 23(e) standard that notice "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims."[13] Plaintiffs' AB, p. 54. Appellants have not, however, suggested that notice must provide a detailed analysis of the statutes or causes of action, nor an estimate of the potential value of related claims.[14] Rather, consistent with *Phillips Petroleum* and Rule 23(c)(2)(B), Appellants contend

---

[12] If "a class is certified at the same time that a settlement is reached, the court must issue notice that complies with both 23(c)(2)(B)'s certification notice requirements (that do require specific content) and 23(e)'s settlement notice requirement (which does not)." William B. Rubenstein, *3 Newberg and Rubenstein on Class Actions* § 8:17 (6th ed.). Appellants Feldman and Jan do not contend the "belt and suspenders" notice program in this (Plaintiffs AB, p. 10) failed to satisfy Rule 23(e)(1)(B)'s "reasonable manner" requirement for disseminating notice.

[13] Plaintiffs have chosen not to address the simple language of Rule 23(c)(2)(B) – the requirements of which apply equally to settlement notice given under 23(e)(1) – requiring that notice provide a clear and concise statement of class claims.

[14] Notwithstanding that the Northern District's *Procedural Guidance* requires that *motions for settlement approval* contain these details.

notice must contain a clear and concise statement of claims, and, if a notice purports to incorporate by reference a complaint, the operative complaint must reflect claims viable at the time of settlement – here necessarily consistent with the rulings of this Court. While the settlement website provides links to complaints filed in this case, the newest and controlling complaint includes *none* of the claims viable at the time of settlement.

Facebook, acknowledges the controlling authority of *Phillips Petroleum*, but – citing to the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* – argues that "[t]o avoid 'reader burnout,' [class] notices should 'avoid details that only lawyers care about.'" Facebook AB, p. 48-49. Ironically, two sentences later Facebook highlights the settlement's dedicated website with its postings of the second and third amended complaints, documents filled with abstruse language only lawyers can plumb and which, even if apprehended, confusingly point readers in opposite directions regarding available class claims.

## IV. The linking of the second and third amended complaints to the settlement website does not help class members understand class claims; quite the opposite

Facebook claims that Appellants seek "to break new ground on class notice, arguing that a notice is per se inadequate if it does not precisely list all the claims at issue (even if, as in this case, it provides a link to many documents that do just that)." But the linked documents offer only confusion. Facebook and Class Counsel would

have a class member try to figure out which of the second and third amended complaints are controlling in order to understand what class claims are being settled. One would logically assume the third amended complaint – later in time and containing only contract causes of action – is operative. However, the third amended complaint's two causes of action have been dismissed by this Court and are entirely unavailable to the class – though it would be impossible to know this by simply reading the complaints.

Only by reading the complaints in conjunction with this Court's opinion in the first appeal in this case could a class member piece together which claims are still viable and which have been dismissed. That is highly arcane legal work beyond the ken of the average Facebook user, and it is precisely what the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* says should be avoided.

The easy solution to the confusion would have been to file a controlling fourth amended complaint drawn to conform to this Court's opinion in *In re: Facebook, Inc. Internet Tracking Litigation,* 956 F.3d 589 (9th Cir. 2020), and linking *only* that complaint to the settlement website.

The settlement class notice failed to meet the due process standards of *Phillips Petroleum* and the statutory standards of Rule 23(c)(2)(B). These failures are compounded by the contradictory second and third amended complaints posted as

*important documents* to the settlement website, and the lack of an accurate and current operative complaint.

## CONCLUSION

This Court is asked to reverse the lower court's approval and remand with guidance as to how the district court should apply *Wakefield*'s due process standards to the compromise of statutory damages in the context of the proposed class action settlement. As well, the Court is asked to reverse for the failure of class notice to meet the standards of *Phillips Petroleum* and Rule 23(c)(2)(B), including the failure to make available to class members an up-to-date, controlling complaint that accurately states class claims to be released by the proposed settlement.

Respectfully submitted,

Appellants Sarah Feldman and
Hondo Jan, by their attorneys:

*/s/ Kendrick Jan*
Kendrick Jan, SBN 105149
Kendrick Jan, APC
225 Broadway, Ste. 2220
San Diego, CA 92101
Tel: (619) 231-7702
kj@jan-law.com

*/s/ John J. Pentz*
John J. Pentz, Esq.
18 Damon Street
Wayland, MA 01778
Phone: (978) 261-5725
jjpentz3@gmail.com

15

<u>**CERTIFICATE OF COMPLIANCE**</u>

**9th Cir. Case No: 22-16903**

I am the attorney or self-represented party.

**This brief contains 3,553 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).  (Note:  This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.)

I certify this brief complies with the length limit set forth in Cir. R. 32-1(a).

Signature: ___*/s/ Kendrick Jan*_____     Date: 9/5/2023

16

## <u>CERTIFICATE OF SERVICE</u>

**9th Cir. Case No: 22-16903**

I hereby certify that I electronically filed the foregoing and attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Description of Documents**:

Reply Brief of Appellants Sarah Feldman and Hondo Jan

Signature: _  /s/ Kendrick Jan_____          Date: 9/5/2023