Nos. 22-16903, 22-16904

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

*IN RE FACEBOOK, INC. INTERNET TRACKING LITIGATION*,

PERRIN AIKENS DAVIS, DR. BRIAN K. LENTZ, MICHAEL J. VICKERY AND CYNTHIA D. QUINN, PLAINTIFFS-APPELLEES,

vs.

META PLATFORMS, INC. (FKA FACEBOOK, INC.), DEFENDANT-APPELLEE

_____

APPEAL OF ERIC ALAN ISAACSON, OBJECTOR-APPELLANT

_____

Appeal from the United States District Court
for the Northern District of California
No. 5:12-md-02314-EJD
The Honorable Edward J. Davila

## REPLY BRIEF OF ERIC ALAN ISAACSON

*Of Counsel:*

C. BENJAMIN NUTLEY
ATTORNEY AT LAW
65-1279 Kawaihae Rd., Suite 203
Kamuela, HI 96743-8444
California Bar No. 177431
(808) 238-8783
nutley@zenlaw.com

JOHN W. DAVIS
LAW OFFICE OF JOHN W. DAVIS
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL 33607
(813) 533-1972
john@johnwdavis.com

ERIC ALAN ISAACSON
  *Objector-Appellant*
LAW OFFICE OF ERIC ALAN
ISAACSON
6580 Avenida Mirola
La Jolla, CA 92037-6231
(858)363-9581
ericalanisaacson@icloud.com

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................i

TABLE OF AUTHORITIES..........................................................ii

GLOSSARY...............................................................................ix

I.    INTRODUCTION .................................................................1

II.   ARGUMENT ........................................................................6

    A.    The Time Has Come for the Unredacted Second and Third
          Amended Complaints, and Their Numerous Exhibits, to be
          Unsealed........................................................................6

          1.    Appellees Have Not Shown that This Court's Mandate
                Required the District Court to Keep Anything
                Permanently Sealed on Remand ...................................6

          *2.*    No Court Has Ever Found that Compelling Reasons Exist
                to Keep the Unredacted Second and Third Amended
                Complaints, and their Numerous Sealed Exhibits, Under
                Seal ........................................................................7

          3.    Facebook Emails from More than a Decade Ago are No
                Longer Entitled to Protection....................................17

    B.    Improper Sealing of the Unredacted Second and Third
          Amended Complaints and their Exhibits Also Requires
          Reversal of the District Court's Settlement Approval So that
          Class Members May Reconsider Their Options ................................21

    C.    The District Court Abused Its Discretion in Finding the
          Settlement Fair, Reasonable, and Adequate Based on an
          Explicitly Articulated "Strong Presumption" of Fairness and a
          *Hanlon*-Factors Analysis it Never Performed....................................22

D.  Evaluating the Settlement's Adequacy Required a Comparison of the Relief Obtained of Seventy-Three-Cents-Per-Class with Class Members' Potential Recovery ....................................................26

E.  The Attorney's Fees Award is Grossly Excessive .............................31

F.  Named Plaintiffs' Incentive Awards Should be Vacated...................32

III.  CONCLUSION .............................................................................................35

# TABLE OF AUTHORITIES

**CASES**

*In re Apple Inc. Device Performance Litig.,*
   50 F.4th 786 (9th Cir.2022)................................................5, 26, 34

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).....................................................................10

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007).....................................................................10

*Brown v. Stored Value Cards, Inc.,*
   953 F.3d 567 (9th Cir.2020)..........................................................8

*CDK Glob. LLC v. Brnovich,*
   16 F.4th 1266 (9th Cir.2021)........................................................8

*Center for Auto Safety v. Chrysler Grp., LLC,*
   809 F.3d 1092 (9th Cir.2016)..................................................2, 16

*Central R.R. & Banking Co. v. Pettus,*
   113 U.S. 116 (1885).....................................................................32

*Chambers v. Whirlpool Corp.,*
   980 F.3d 645 (9th Cir.2020)........................................................32

*Churchill Village, L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004)......................................................23

*In re Continental Illinois Sec. Litig.,*
   962 F.2d 566 (7th Cir.1992)........................................................35

*Courthouse News Serv. v. Schaefer,*
   2 F.4th 318 (4th Cir.2021)..........................................................31

*DirecTV, Inc. v. Barczewski,*
   604 F.3d 1004 (7th Cir.2010)......................................................31

*DirecTV, Inc. v. Rawlins,*
   523 F.3d 318 (4th Cir.2008)........................................................30

iii

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)....................................................................10

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    999 F.3d 1247 (11th Cir.2021)...................................................33

*In re Facebook Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir.2020).........................................6, 14, 20

*Falck N. California Corp. v. Scott Griffith Collaborative Sols., LLC*,
    25 F.4th 763 (9th Cir.2022)..........................................................8

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
    62 F.4th 704 (2d Cir.2023).........................................................33

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir.1998)...............................................22-24

*Hensley v. Eckerhart*,
    461 U.S. 424, 435 (1983)............................................................31

*Huntsman v. Corp. of the President of the Church
    of Jesus Christ of Latter-day Saints*,
    76 F.4th 962 (9th Cir.2023).......................................................16

*Hyland v. Navient Corp.*,
    48 F.4th 110 (2d Cir.2022)........................................................33

*IDT Corp. v. eBay*,
    709 F.3d 1220 (9th Cir.2013).....................................................15

*Johnson v. City of Shelby, Miss.*,
    574 U.S. 10 (2014)......................................................................10

*Johnson v. NPAS Solutions, LLC*,
    975 F.3d 1244 (11th Cir.2020),
    *reh'g denied*, 43 F.4th 1138 (11th Cir.2022)...........................33

*Kamakana v. City and County of Honolulu*,
    447 F.3d 1172 (9th Cir.2006).............................................2-3, 16

iv

*Kim v. Allison,*
8 F.4th 1170 (9th Cir.2021)............................................................24

*Lane v. Facebook, Inc.,*
696 F.3d 811 (9th Cir.2012)......................................................27-29

*Lacey v. Maricopa County,*
693 F.3d 896 (9th Cir.2012)(en banc)............................................8-9

*Medical & Chiropractic Clinic, Inc. v. Oppenheim,*
981 F.3d 983 (11th Cir.2020)........................................................33

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir.2000)..........................................................24

*Melito v. Experian Mktg. Sols. Inc.,*
923 F.3d 85 (2d Cir.2019)............................................................33

*Mokhiber v. Davis,*
537 A.2d 1100 (D.C.1988)............................................................18

*Moses v. New York Times Co.,*
__F.4th__, 2023 WL 5281138 (2d Cir. Aug. 17, 2023)...................26

*Murray v. Grocery Delivery E-Services USA Inc.,*
55 F.4th 340 (1st Cir.2022)..........................................................29

*In re National Prescription Opiate Litig.,*
927 F.3d 919 (6th Cir.2019)......................................................2, 18

*Olympic Refining Co. v. Carter,*
332 F.2d 260 (9th Cir.1964)..........................................................18

*In re Omnivision Techs., Inc.,*
559 F.Supp.2d 1036 (N.D.Cal.2008).......................................4, 23, 25

*Philibotte v. Nisource Corp. Servs. Co.,*
793 F.3d 159 (1st Cir.2015)......................................................14-15

*Protective Committee for Independent Stockholders,*
390 U.S. 414 (1968)....................................................................27

*Public Citizen v. Liggett Group,*
    858 F.2d 775 (1st Cir.1988) ............................................................. 18

*Ramirez v. County of San Bernardino,*
    806 F.3d 1002 (9th Cir.2015) .......................................................... 8-9

*Roes, 1-2 v. SFBSC Mgmt., LLC,*
    944 F.3d 1035 (9th Cir.2019) ....................................................... 7, 26

*Royal Brush Mfg., Inc. v. United States,*
    75 F.4th 1250 (Fed.Cir.2023) .......................................................... 22

*San Jose Mercury News, Inc. v. U.S. District Court,*
    187 F.3d 1096 (9th Cir.1999) .......................................................... 17

*Saucillo v. Peck,*
    25 F.4th 1118 (9th Cir.2022) ........................................................... 26

*Shane Group, Inc. v. Blue Cross Blue Shield of Mich.,*
    825 F.3d 299 (6th Cir.2016) .................................................. 2, 16, 22

*Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506 (2002) ...................................................................... 9-10

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir.2001) ............................................................ 35

*Trustees v. Greenough,*
    105 U.S. 527 (1882) .................................................................. 32, 34

*United States v. IBM Corp.,*
    67 F.R.D. 40 (S.D.N.Y.1975) .......................................................... 18

## CONSTITUTIONAL PROVISIONS

U.S. Constitution,

    First Amendment ............................................................... 1-2, 8-9

**STATUTES**

Wiretap Act.......................................................................................30-31

**RULES**

Federal Rules of Civil Procedure

Fed.R.Civ.P. 8(a)(2)....................................................................9

Fed.R.Civ.P. 23(e)(2).............................................................22, 36

Fed.R.Civ.P. 23(e)(2)(C)............................................................26

Northern District of California Local Rules

Rule 79-5(a)...........................................................................19

Rule 79-5(g)(3)................................................................19-20

# GLOSSARY

| | |
|---|---|
| IER | Isaacson Excerpt of Record (filed July 20, 2023) |
| IsaacsonOB | Opening Brief of Eric Alan Isaacson (filed April 19, 2023) |
| MetaAnsBf | Appellee Meta Platforms, Inc.'s Answering Brief (filed July 20, 2023) |
| PlsAnsBf | Plaintiffs' Answering Brief (filed July 20, 2023) |
| RSACCA | REDACTED Second Amended Consolidated Class Action Complaint RSACCA (DE93) |
| RTAC | REDACTED Third Amended Complaint (DE157) |

## I.  INTRODUCTION

Named Plaintiffs and Facebook (a.k.a. Meta Platforms) give short shrift to Isaacson's central challenge on appeal, which is to the District Court's orders sealing the unredacted versions of the the Second Amended Complaint and Third Amended Complaint, and the numerous exhibits supporting those complaints' allegations, in violation of the First Amendment and common-law rights of public access to court documents. Facebook pretends the sealing itself is not really an issue on appeal, framing the single question presented as: "Did the district court abuse its discretion in approving a settlement that calls for Meta to pay $90 million and delete the data that gave rise to this lawsuit?" MetaAnsBf at 5. Although Named Plaintiffs' framing of the issues on appeal is broader, they spin the sealing issue as one that relates only to the propriety of settlement approval: "Did the District Court clearly abuse its discretion in approving a class action settlement when portions of the operative pleadings were redacted in the ordinary course consistent with a Ninth Circuit order following a contested sealing motion?" PlsAnsBf at 6.

Appellees have essentially chosen not to address the leading issues Isaacson presents on appeal, which are clearly framed in his Opening Brief:

> Did the District Court misconstrue this Court's mandate when it denied Objector-Appellant's Isaacson's motion to unseal critical parts of the district court record?

> Did the District Court violate class members' First Amendment and common-law rights of access to judicial records?

IsaacsonOB at 12-13.

Appellees have effectively conceded error, for they do not contend that this Court's mandate required the District Court to keep the Second and Third Amended Complaints permanently sealed on remand. They do not contend that Facebook ever made the showing required to keep those documents under seal, whether before the district court, on appeal before this Court, or on remand. "[O]nly the most compelling reasons can justify non-disclosure of judicial records." *In re National Prescription Opiate Litig.,* 927 F.3d 919, 940 (6th Cir.2019)(quoting *Shane Group, Inc. v. Blue Cross Blue Shield,* 825 F.3d 299, 305 (6th Cir.2016)); *see Center for Auto Safety v. Chrysler Grp., LLC,* 809 F.3d 1092, 1096-97 (9th Cir.2016); *Kamakana v. City & County of Honolulu,* 447 F.3d 1172, 1178–79 (9th

2

Cir.2006). The record contains no such showing, and no findings, by any court sufficient to keep the Second and Third Amended Complaints, and their exhibits, under seal.

The District Court's orders sealing the Second and Third Amended Complaints, and their sealed exhibits, should accordingly be vacated, with instructions to unseal those documents. This Court should, moreover, immediately unseal Volume VII of the Excerpt of Record from its own record *In re Facebook, Inc. Internet Tracking Litig.,* No. 17-17486. Volume VII of the Excerpts of Record from that appeal includes the unredacted Third Amended Complaint and its numerous sealed exhibits, consisting of "Email Correspondence, Dated February 19, 2011" through "September 25, 2011," as well as the unredacted Second Amended Complaint with its numerous sealed exhibits, consisting of "Email Correspondence, Dated January 27, 2011," through "December 5, 2011."[1] *See infra* 6-21.

---

[1] *See* "Table of Contents" in Excerpt of Record, Vol. I of VII, at pp. vii-viii, *In re Facebook, Inc. Internet Tracking Litig.,* No. 17-17486, DktEntry 10-1 (PACER Document ID 1083374, filed March 26, 2018).

Isaacson's appeal does not end with his challenge to the sealing orders. The fact that the unredacted Second and Third Amended Complaints, and their sealed exhibits, were illegally withheld not only from the public at large, but also from Class Members who needed them to evaluate whether to participate in the Settlement, object, or opt out, requires reversal of the District Court's approval of the Settlement. The Court should consider the Proposed Settlement only after Class Members have had both an opportunity to review the whole record, and also an opportunity to opt out or to file objections taking into account the currently concealed material. *See infra* 21-22.

Settlement Approval must be reversed for the further reason that the District Court expressly based its decision on an impermissible "'strong presumption that the terms of a proposed class settlement action are favorable to the class members,'" 1-IER-010(DE289:9)(quoting *In re Omnivision Techs., Inc.,* 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008)), and on a nonexistent finding "in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable." 1-IER-010(DE289:9). This Court's precedents prohibit indulging presumptions that class-action settlements are fair, reasonable, and

4

adequate. And the District Court's preliminary order contained no *Hanlon*-factors analysis. *Infra* 22-26.

Evaluating the settlement obviously requires evaluating its recovery of only seventy-three cents per Class Member against what might have been recovered had the case proceeded, and in light of Facebook's potential liability. No one thinks that Facebook could pay more than a trillion dollars. But it clearly could pay a lot more than seventy-three cents per Class Member. The paltry recovery, given Named Plaintiffs' assertions that they had a strong case on the merits, has not been adequately explained or justified. *Infra* 26-31.

The paltry recovery, moreover, is an insufficient result to justify a generous attorney's fee award amounting to more than three times Class Counsel's hourly billing rates. Their fees should be capped at their lodestar. *Infra* 31-32.

Finally, the Named Plaintiffs' incentive awards should be vacated as contrary to both Supreme Court and Ninth Circuit precedent, because Named Plaintiffs "needed no inducement to bring suit." *In re Apple Inc. Device Performance Litig.,* 50 F.4th 769, 786 (9th Cir.2022). *Infra* 32-35.

## II.   ARGUMENT

### A.   The Time Has Come for the Unredacted Second and Third Amended Complaints, and Their Numerous Exhibits, to be Unsealed

#### 1.   Appellees Have Not Shown that This Court's Mandate Required the District Court to Keep Anything Permanently Sealed on Remand

Named Plaintiffs and Facebook fail to address or to seriously counter Isaacson's argument that nothing in this Court's mandate in *In re Facebook Internet Tracking Litig.,* 956 F.3d 589 (9th Cir.2020), required the District Court to keep the Second Amended Complaint and Third Amended Complaint, and scores of exhibits attached to them, under seal after Named Plaintiffs and Facebook settled the case and sought the District Court's approval of the Settlement in October of 2022.

Thus, the District Court unquestionably erred when it ruled that it was bound by this Court's mandate to keep court records, including the complaints on which a class-action settlement now is founded, under seal:

> Isaacson objects to the filing of the complaints under seal (with publicly available redacted versions) as improperly depriving class members of information. However, as Class Counsel points out, the Ninth Circuit affirmed the sealing and the Court cannot now relitigate the issue. Dkt. No. 173 at 12.

1-IER-015-016(DE289:14-15).

6

**2.    No Court Has Ever Found that Compelling Reasons Exist to Keep the Unredacted Second and Third Amended Complaints, and their Numerous Sealed Exhibits, Under Seal**

Neither Facebook nor Named Plaintiffs contend that they ever made the required showing for the Second and Third Amended Complaints, and their numerous sealed exhibits, to be kept indefinitely under seal with only extensively redacted copies available to Class Members and the public.

Appellees try to dodge the real issues. Named Plaintiffs dissemble, pretending "Isaacson argues that class notice provided inadequate information to analyze the settlement, because small parts of two pleadings remain under seal. App. Br. 48-61." PlsAnsBf 42. But Isaacson never attacked the Class Notice. Named Plaintiffs hope to confuse the issue that Isaacson raised, concerning rights of public access to court records, with that of "class notice," dealing with the contents of a notice designed merely to "describe[] 'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard.'" *Roes, 1-2 v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1044-45 (9th Cir.2019)(citations omitted).

7

The problem is not with the Settlement notice mailed or emailed to Class Members. The problem is that anyone who received the notice and tried "to investigate" was stymied by the redaction of apparently critical portions of the operative complaints. Members of the public in general—and class members in particular—have a right of access to the entirety of those critical documents, both under First Amendment and common-law principles.

Named Plaintiffs say that however extensive the redactions from the Second and Third Amended Complaints might be, their "First Amended Consolidated complaint contained zero redactions." PlsAnsBf 44. So what? That complaint was superseded by the filing of the amended complaints, and thus is "no longer operative." *Falck N. California Corp. v. Scott Griffith Collaborative Sols., LLC,* 25 F.4th 763, 765 (9th Cir.2022). "'[T]he general rule is that an amended complaint super[s]edes the original complaint and renders it without legal effect.'" *Falck,* 25 F.4th at 765 (parenthetically quoting *Lacey v. Maricopa Cnty.,* 693 F.3d 896, 927 (9th Cir.2012)(en banc)); *accord, e.g., CDK Glob. LLC v. Brnovich,* 16 F.4th 1266, 1274 (9th Cir.2021); *Brown v. Stored Value Cards, Inc.,* 953 F.3d 567, 573 n.5 (9th Cir.2020). "In other words, 'the

original pleading no longer performs any function...." *Ramirez v. Cnty. of San Bernardino,* 806 F.3d 1002, 1008 (9th Cir.2015)(citation omitted).

The Second and Third Amended Complaints, with their numerous sealed exhibits, are the pleadings that matter, because they assert the claims that the district court dismissed with prejudice, and claims that this Court restored. *See Lacey,* 693 F.3d at 925-28. The public has a right to see those complaints and sealed exhibits in their entirety, under both the First Amendment and common-law rights of public access.

Named Plaintiffs ask this Court to assume the redacted material does not really matter. They ask this Court, class members, and the public at large to assume that anything they redacted is immaterial as a matter of law. But why would they have included immaterial allegations in their operative pleadings? A complaint is supposed to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The redacted material had no place in the complaint if it did not contribute materially to "showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Under the Federal Rules and controlling precedent, a complaint "must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"

9

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 (2002) (quoting Fed.R.Civ.P. 8(a)(2)); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

Under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), moreover, a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 12 (2014)(citing *Twombly* and *Iqbal*). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. 544, 555.

Thus, it must be assumed that the extensive redactions here were of material necessary to evaluate the claims' substantive plausibility— which goes directly to their strength and value. Information "showing that the pleader is entitled to relief" is material, both to members of the public entitled to view open court proceedings, and even more directly to class members evaluating the case's strength, and whether the proposed Settlement makes sense.

For its part, Facebook faults Isaacson for not knowing what has been redacted. It says that the redacted material, and dozens of emails attached to the two redacted complaints, should remain sealed because

10

Isaacson cannot "identify what sort of information plaintiffs and the absent class members might be missing." MetaAnsBf 51-52. Isaacson cannot identify what has been redacted because it is being held unlawfully under seal! Facebook thinks Isaacson, and other Class Members, should be able to figure it out from paragraphs like these, from the Third Amended Complaint:



3-IER-334:¶¶82-83(157DE:16¶¶82-83[ECFp19]).

An interested member of the public, or even a Class Member, who wants to check out Exhibit U gets to see this:



**Highly Confidential**

FB_IRC 002992

12

3-IER-435(DE95:Ex.U[ECFp48]).

Paragraph after paragraph of the Second and Third Amended Complaints are redacted in this fashion. *See* 3-ER-469-530(DE93) ([REDACTED] Second Amended Complaint); 3-IER-316-348(DE157) ([REDACTED] Third Amended Complaint). And sealed document after sealed document incorporated in those complaints are available only as fully blacked-out pages, just like Ex.U.; 3-IER-388-457Exx.M-AA(DE95:Exx.M-AA[ECFpp1-70])(sealed exhibits). They can only guess at what the redactions might be designed to hide. Members of the public, and Class Members such as Mr. Isaacson, can only guess at what the two redacted complaints' numerous sealed exhibits might contain. According to the [REDACTED] Third Amended Complaint's Paragraph 135(i), moreover, the major issues presented by the case include:

5          i.     whether Facebook in fact ███████████████

6   ███████████████████████████████████████;

3-IER-344¶135(i)(DE157:26¶135(i)[ECFp28]).

Many redacted paragraphs' allegations are supported by sealed exhibits attached to the two redacted complaints. Working from the index to Volume VII of the Excerpt of Record filed in 2018 in *In re Facebook*

*Internet Tracking Litig.,* 956 F.3d 589 (9th Cir.2020), it is possible to work out which sealed exhibits support which redacted allegations. *See* "Table of Contents" in Excerpt of Record, Vol. I of VII, at pp. vii-viii, *In re Facebook, Inc. Internet Tracking Litig.,* No. 17-17486, DktEntry 10-1 (PACER Document ID 1083374, filed March 26, 2018). All the sealed exhibits appear to be emails dating from 2011. But it is impossible to make out what the redacted information might be, or what the emails actually contain, for most are completely blacked out in the record below just like Exhibit U. *See* 3-IER-388-457Exx.M-AA(DE95:Exx.M-AA[ECFpp1-70]).

A review of the redacted paragraphs and exhibits belies Named Plaintiffs' and Facebooks' assertions that they are "limited" or immaterial to understanding the pleadings. They are extensive, and they go to the core of the Class's claims against Facebook.

Facebook tries to justify the continued sealing in this case with cases that are entirely off point and that, if anything, demonstrate that the Second and Third Amended Complaints, and their exhibits, must be unsealed. Facebook cites *Philibotte v. Nisource Corp. Servs. Co.,* 793 F.3d 159, 162 n.2 (1st Cir.2015), for instance, which held that a district court

14

could seal materials that were improperly filed and that were never considered. According to the First Circuit, the "presumptive right of access attaches to those materials 'which **_properly_** come before the court,'" and we will not permit litigants to abuse this right to circumvent state court procedures aimed at curbing discovery abuse." *Id.* (court's emphasis).

No one contends that the sealed complaints in this case were not properly before the District Court, and unsealing them rewards no misconduct on anyone's part. Under *Philibotte,* the presumption of public access thus attaches—and should be honored.

Facebook cites *IDT Corp. v. eBay,* 709 F.3d 1220 (9th Cir.2013), where this Court held that discovery materials produced in private litigation, and never considered by the district court in connection with any dispositive motion, might be sealed or redacted to protect confidential information. But that case, between private litigants, is materially different from this one which was litigated and settled as a class action. That there is no public right of access to mere discovery materials, does not permit orders barring public access to documents filed in connection with the settlement of a class action. For "there is a stark

15

difference between so-called 'protective orders' entered pursuant to the discovery provisions of Federal Rule of Civil Procedure 26, on the one hand, and orders to seal court records, on the other." *Shane Group,* 825 F.3d 299, 305 (6th Cir.2016).

Significantly, neither Named Plaintiffs nor Facebook can point to any record findings sufficient to support sealing the unredacted Second and Third Amended Complaints and their exhibits. This Court requires a showing of "compelling reasons." *See Center for Auto Safety v. Chrysler Grp., LLC,* 809 F.3d 1092, 1096-97 (9th Cir. 2016). "Under this stringent standard, a court may seal records only when it finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* (quoting *Kamakana v. City & County of Honolulu,* 447 F.3d 1172, 1178-79 (9th Cir.2006)); *see Huntsman v. Corp. of the President of the Church of Jesus Christ of Latter-day Saints,* 76 F.4th 962, 967 (9th Cir.2023)(finding no "'compelling reasons' to seal the financial information in this opinion'"). No sealing order in this case has ever met that standard.

Nor does the fact that Named Plaintiffs and Class Counsel have abandoned the Class when it comes to their right of access to the Second

and Third Amended Complaints. "The right of access to court documents belongs to the public, and the Plaintiffs were in no position to bargain that right away." *San Jose Mercury News, Inc. v. U.S. District Court,* 187 F.3d 1096, 1101 (9th Cir.1999).

### 3. Facebook Emails from More than a Decade Ago are No Longer Entitled to Protection

"Almost a decade ago," Facebook asserts, "the parties litigated whether it was necessary to seal parts of plaintiffs' second amended complaint." MetaAnsBf 51. Facebook does not contend that the District Court applied the correct standards. But even assuming that redacted information about Facebook's operation was in fact sufficiently sensitive ***a decade ago*** to warrant protection does not mean that it is sufficiently sensitive today. Facebook offers no reason to think any of the redacted material in the redacted complaints, and their many sealed exhibits, needs to remain under seal, under today's competitive conditions.

Even if a protective order was valid when entered, the precedents hold that "the district court necessarily also retain[s] power to modify the protective order in light of changed circumstances."[2] This is critically

---

[2] *Public Citizen v. Liggett Group,* 858 F.2d 775, 782 (1st Cir.1988); *accord, e.g., Olympic Refining Co. v. Carter,* 332 F.2d 260, 265 (9th

17

important, as the public right of access "exists today for the records of cases decided a hundred years ago as surely as it does for lawsuits now in the early stages of motions litigation." *Mokhiber v. Davis,* 537 A.2d 1100, 1105 (D.C.1988). And in today's world, the need for protecting what once was sensitive competitive business information quickly evaporates. Facebook offers no reason to think emails from 2011, even if they might have been legitimately protected from public disclosure in 2017 or 2018, still need to be protected today—when they are more than a decade old. Here, as in *In re National Prescription Opiate Litig.,* 927 F.3d 919, 937 (6th Cir.2019), "the age of the data makes the risk of anticompetitive harm slight and speculative." *See also United States v. IBM Corp.,* 67 F.R.D. 40, 49 (S.D.N.Y.1975)("Certainly, a corporation might expectedly seek to maintain the secrecy of a business planning report. But, here, the report is five years old.").

The Northern District's local rules confirm that there is no basis for assuming that filings should remain under seal indefinitely. Recognizing

---

Cir.1964)(sustaining modification of a protective order "nearly three years after termination of the Government suit, and from four to eight years after the documents were placed under the protective orders").

that "[t]he public has a right of access to the Court's files," Local Rule 79-5 "applies in all instances where a party seeks to conceal information from the public by filing a document, or portions of a document, under seal."[3] But information rapidly becomes stale, and ineligible for protection from disclosure. The Northern District's Rule 79-5(g)(3) accordingly provides that whenever access to sealed court records is sought "more than 3 years after the case is closed, there will be a strong presumption that the document will be unsealed."[4]

Had Named Plaintiffs taken no appeal from the District Court's November 17, 2017, entry of judgment of dismissal with prejudice, DE174(dismissal) & DE175(judgment), Local Rule 79-5(g)(3)'s "strong presumption that the document[s] will be unsealed" would have applied as of November 17, 2020. Even though Named Plaintiffs appealed, had this Court's April 9, 2020, appellate decision affirmed the District Court's final dismissal rather than reversing it, *see In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589 (9th Cir.2020), the Northern District's

---

[3] Northern District Local Rule 79-5(a) [https://bit.ly/44RemXU].

[4] Northern District Local Rule 79-5(g)(3) [https://bit.ly/44RemXU].

"strong presumption" of public access still would have applied as of November 17, 2020.

The fact that this Court reversed may well render Local Rule 79-5(g)(3)'s strong presumption of access technically inapplicable. Nonetheless, redactions at issue relate to emails generated ***more than a decade ago***. The index to the Excerpt of Record for the 2017 appeal shows Volume VII included the unredacted Third Amended Complaint and its numerous sealed exhibits, consisting of "Email Correspondence, Dated February 19, 2011" through "September 25, 2011," as well as the Second Amended Complaint with its numerous sealed exhibits, consisting of "Email Correspondence, Dated January 27, 2011," through "December 5, 2011."[5]

Facebook offers no basis for assuming that emails from 2011, though critical to Named Plaintiffs' allegations—and thus to the Settlement of this case—still remained sufficiently sensitive to require judicial protection by October of 2022, when the District Court held its

---

[5] Excerpt of Record, Vol. I of VII, Table of Contents at pp. vii-viii, *In re Facebook, Inc. Internet Tracking Litig.,* No. 17-17486, DktEntry 10-1 (PACER Document ID 1083374, filed March 26, 2018).

final-approval hearing and rejected Isaacson's contention that the redacted materials must be made public.

The district court's order directing that the redacted materials remain under seal should be reversed, with directions that the district court vacate its sealing orders forthwith, and that place the unredacted and unsealed documents on the public record. This Court should, moreover, immediately unseal, and make publicly available, Volume VII of the Excerpt of Record filed in the 2017 appeal, *In re Facebook, Inc. Internet Tracking Litig.,* No. 17-17486, which also contains the material subject to the District Court's sealing orders.

### B. Improper Sealing of the Unredacted Second and Third Amended Complaints and their Exhibits Also Requires Reversal of the District Court's Settlement Approval So that Class Members May Reconsider Their Options

Class Members were entitled to review the unredacted Second and Third Amended Complaints, and accompanying exhibits, in connection with their evaluation of whether to participate, object, or opt out of the Settlement. "Class members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record." *Shane Group,* 825 F.3d at 309. Here, as

21

in *Royal Brush Mfg., Inc. v. United States,* 75 F.4th 1250, 1253 (Fed.Cir.2023), moreover, "the failure to provide access to the redacted information was a violation of due process."

The District Court's order approving the Settlement should accordingly be reversed, with instructions to provide Class Members with the right either to opt out of the Settlement, or to file objections that are informed by the currently concealed material.

      **C.**      **The District Court Abused Its Discretion in Finding the Settlement Fair, Reasonable, and Adequate Based on an Explicitly Articulated "Strong Presumption" of Fairness and a *Hanlon*-Factors Analysis it Never Performed**

Named Plaintiffs and Facebook insist that the District Court applied no presumption of fairness and adequacy when it approved the Settlement, but instead conducted a thorough analysis of Rule 23(e)(2)'s requirements and careful application of the *Hanlon* factors. Yet its Order shows exactly the opposite. The District Court set out its analysis at pages 9-10 of that Order under the heading "***3. The Settlement Is Fair And Reasonable***":

> As the Court previously found in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable and treats Class Members equitably relative to one another. Dkt. No. 241.

22

The reaction of the class was for the most part positive; there were very few objectors and opt-outs relative to the size of the Settlement Class. There were a total of 9 objectors and 1,374 opt-outs as of the September 12, 2022 deadline. These objections and opt-outs constitute a small fraction of the approximately 1,558,805 total Class Members who submitted valid claims by September 22, 2022. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.,* 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.,* 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

In its preliminary approval order, the Court approved the proposed plan of allocation. Dkt. No. 241. That plan is straightforward; all Settlement Class members are entitled to equal cash payment, and payments will be based on final claims rates and the size of the Settlement Fund less fees and expenses. *Id.* at 17. The Court finds the plan of allocation to be fair and reasonable and to treat Class Members equitably and therefore approves the plan of allocation.

1-IER-010-011(DE289:9-10)(Final Approval Order).

Two things are clear from this. First, the Court's finding that the Settlement is fair reasonable and adequate rested on its assertion that it had "previously found in its order granting preliminary approval, the Hanlon factors indicate the settlement here is fair and reasonable and treats Class Members equitably relative to one another. Dkt. No. 241." 1-IER-010-011(DE289:9-10)(Final Approval Order, citing Preliminary

23

Approval Order, 1-ER-027-033(DE241)). Yet the Preliminary Approval Order contains no reference to the *Hanlon* factors, let alone any application of them. *See* 1-ER-027-033(DE241). Facebook points out that Judge Davila's Final Approval Order listed the *Hanlon/Churchill* factors two pages earlier, at page 7 of the Final Order, under the heading "***1. The Settlement Class Meets the Prerequisites for Certification***." 1-IER—008(DE289:7). But listing factors is not the same as actually applying them. "Only when the district court 'explore[s] these factors comprehensively' can the settlement award 'survive appellate review.'" *Kim v. Allison*, 8 F.4th 1170, 1178-79 (9th Cir.2021)(quoting *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir.2000)).

But here, the District Court rested its *Hanlon/Churchill*-factors "analysis" on the palpably false assertion that it had "previously found in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable and treats Class Members equitably relative to one another. Dkt. No. 241." 1-IER-010-011(DE289:9-10)(Final Approval Order, citing Preliminary Approval Order, 1-ER-027-033(DE241)).

24

The second thing that is absolutely clear from the District Court's fairness-and-adequacy analysis is its express holding: "'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'" 1-IER-010(DE289:9)(quoting *In re Omnivision Techs., Inc.,* 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008)).

Named Plaintiffs say this "strong presumption" formulation "appears only once in the District Court's order." PlsAnsBf at 39. But it appears at the core of the District Court's statement of its fairness-and-adequacy holding. *See* 1-IER-101(DE289:9). Named Plaintiffs say the District Court's Order cannot possibly mean what it says, because "[t]he Plaintiffs expressly disavowed any presumption of fairness." PlsAnsBf at 39. But the fact Named Plaintiffs themselves disavowed any presumption of fairness as erroneous just makes the District Court's error in adopting such a presumption all the more egregious. Named Plaintiffs add that "the District Court did ***not*** apply any such presumption (let alone a strong presumption) to the settlement as a whole." PlsAnsBf at 39. But the District Court placed the "strong presumption that the terms of a proposed class settlement action are favorable to the class members" at

the very center of its holding that "***3. The Settlement Is Fair and Reasonable.***" 1-IER-010(DE289:9).

Applying such a presumption is gross error that requires reversal. "[T]he district court abused its discretion by stating that it applied a presumption of reasonableness and fairness to the settlement." *In re Apple, Inc. Device Performance Litig.,* 50 F.4th 786, 783 (9th Cir.2022); *accord Saucillo v. Peck,* 25 F.4th 1118, 1131 n.9 & 1133 (9th Cir.2022); *Roes, 1-2 v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1049 n.12 (9th Cir.2019); *cf. Moses v. New York Times Co.,* \_\_F.4th\_\_, 2023 WL 5281138, at \*5 (2d Cir. Aug. 17, 2023)(vacating settlement approval because a presumption of fairness is inconsistent with the amended Rule 23(e)(2)(C)).

### D. Evaluating the Settlement's Adequacy Required a Comparison of the Relief Obtained of Seventy-Three-Cents-Per-Class with Class Members' Potential Recovery

Evaluating any settlement requires a comparison of what the Settlement provides, with what might have been obtained by continued litigation. As the Supreme Court held in the context of a bankruptcy case: "Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Committee for Independent Stockholders,* 390 U.S. 414, 424-25

26

(1968). Yet Named Plaintiffs and Facebook never explain why seventy-three cents per class member is a fair, reasonable, and adequate settlement of the very substantial claims in this case.

Both insist that it would be wrong for the District Court to compare what the Settlement obtains for the Class—just seventy-three cents apiece—to the potential recovery had Named Plaintiffs really prosecuted the case.

Named Plaintiffs assert that neither they nor the District Court was required to quantify Class Members' potential damages, citing this Court's statement in *Lane v. Facebook, Inc.,* 696 F.3d 811, 823 (9th Cir.2012), that "we reject Objectors' argument insofar as it stands for the proposition that the district court was required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award." But the case was one in which Objectors asked the Court to quantify the value of $2,500 statutory damages claims that very few class members had.

The case was one against Facebook and a variety of other companies in which "Blockbuster, one of the only defendants that might

27

qualify as a 'video tape service provider' and thus be subject to liability under the VPPA, was on the verge of bankruptcy," unable to pay "any substantial damages." *Lane,* 696 F.3d at 823. And "even if some of the class members in this case would have successful claims for $2,500 in statutory damages under the VPPA, those individuals represent, to use the candid phrasing of Objectors, 'only a fraction of the 3.6 million-person class.'" *Lane,* 696 F.3d at 824. These were, in sum, an unquantifiable number of marginal claims, of rather little relevance in evaluating whether "the $9.5 million recovery among all class members [was] too low." *Id.*

"The record here convincingly establishes that the district court accounted for the potential value of the VPPA claims of some class members, and the district court's review of the circumstances surrounding the settlement was sufficiently comprehensive to ensure that class representatives and their counsel did not throw absent class members under the proverbial bus to secure a disproportionate benefit for themselves." *Lane,* 696 F.3d at 825. The case, incidentally, was one in which differences between the Class Members' claims might well have required separately represented subclasses. *Compare Murray v. Grocery*

*Delivery E-Servs. USA Inc.,* 55 F.4th 340, 346-52 (1st Cir.2022). "However," this Court emphasized, "Objectors do not challenge the district court's class certification or its decision to include individuals with VPPA claims in the settlement class, so we express no opinion on that issue here." *Lane,* 696 F.3d at 824.

What matters here is that the Court did not hold that Settlements are to be approved as fair, reasonable, and adequate, without meaningfully comparing the Settlement's actual recovery with the potential recovery that run-of-the-mill Class Members might hope to obtain from further litigation. They cannot reasonably hope to recover $10,000 apiece, which would add up to over a trillion dollars, because Facebook as a company is worth perhaps half that. But there is a very big difference between $10,000 and just seventy-three cents. Facebook is a large and profitable company that can pay hundreds of millions of dollars. There is no excuse for knocking individual Class Members' recovery, on substantial claims, down to less than a dollar apiece.

Focusing on the $10,000 Wiretap Act damages at issue, Facebook suggests that the Class might recover nothing even after proving up Wiretap Act violations, because the "Wiretap Act provides that district

29

courts 'may'—not must—award statutory damages, 18 U.S.C. § 2520(c)(2), and courts sometimes decline to award any damages under the statute." MetaAnsBf 35. But even if district courts have discretion in certain cases to decline to award statutory damages, they "abuse[] that discretion ... by failing to adequately consider ... the severity" of the violations involved and the injury inflicted. *DirecTV, Inc. v. Rawlins,* 523 F.3d 318, 326 (4th Cir.2008)(reversing district court's denial of Wiretap Act statutory damages). This Court held that a trier of fact could find in this case that Facebook's conduct was """highly offensive" to a reasonable person, and "sufficiently serious" and unwarranted so as to constitute an "egregious breach of the social norms."" *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 606 (9th Cir.2020). The case is not a good candidate for discretionary denial of statutory damages.

Facebook can cite a few nonprecedential district-court decisions interpreting Wiretap Act damages as an "all or nothing" proposition, and circuit-court dictum suggesting the same. MetaAnsBf 35. Yet the Seventh Circuit has warned that even if circuit-court decisions "might have assumed that the only choice is between $0 and the statutory maximum ... none actually holds that." *DirecTV, Inc. v. Barczewski,* 604

F.3d 1004, 1009 (7th Cir.2010). No precedential decision actually holds that Wiretap Act damages are always an "all-or-nothing" proposition. And to place such a construction on the statute, limiting a district court's discretion to "all-or-nothing" rulings, would frustrate its effective operation.

But even assuming that Wiretap Act claims may be "all or nothing," Facebook would have incentives to settle this case for far more than just seventy-three cents per Class Members. There are other claims alleged, after all. And Facebook would have to think twice before betting the company on a defense verdict.

### E. The Attorney's Fees Award is Grossly Excessive

Because "[t]he result is what matters" most in the end, when "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983). But here Class Counsel obtained a lousy 73 cents per class member. That is a pathetic result, that warrants a minimal fee, if any at all. Class Counsel surely did not deserve an attorney's fee award compensating them at more than three times their claimed reasonable hourly rates. 1-IER-021(DE289:20) (awarding Class Counsel a "multiplier of 3.28" times

their hourly rates). "Because of a 'strong presumption that the lodestar is sufficient,' a multiplier is warranted only in 'rare and exceptional circumstances.'" *Chambers v. Whirlpool Corp.,* 980 F.3d 645, 665 (9th Cir.2020)(citation omitted).

### F.    Named Plaintiffs' Incentive Awards Should be Vacated

Named Plaintiffs say Isaacson's "objection to service awards has been rejected by this Court and the Supreme Court repeatedly." PlsAnsBf 51. But they can cite no Supreme Court decision supporting incentive awards. Approving an award of attorney's fees incurred by the representative plaintiff in *Trustees v. Greenough*, 105 U.S. 527 (1882), the Supreme Court held that any additional payment for the representative plaintiff's "personal service" was improper and "illegally made." *Greenough,* 105 U.S. at 537-38. And in *Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885), the Court reiterated that the representative plaintiff's "claim to be compensated, out of the fund or property recovered, for his personal services ... was rejected as unsupported by reason or authority." *Pettus*, 113 U.S. at 122.

The Eleventh Circuit accordingly holds that "Supreme Court precedent prohibits incentive awards. *Johnson v. NPAS Sols., LLC,* 975 F.3d 1244, 1255 (11th Cir.2020), *reh'g denied,* 43 F.4th 1138 (11th Cir.2022); *accord, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.,* 999 F.3d 1247, 1257 (11th

Cir.2021)("such awards are prohibited"); *Medical & Chiropractic Clinic, Inc. v. Oppenheim,* 981 F.3d 983, 994 n.4 (11th Cir.2020)("such service awards are foreclosed by Supreme Court precedent").

Even the Second Circuit has conceded: "Service awards are likely impermissible under Supreme Court precedent." *Fikes Wholesale v. HSBC Bank USA,* 62 F.4th 704, 721 (2d Cir.2023). So "any service award in a class action is at best dubious under *Greenough*." *Fikes Wholesale,* 62 F.4th at 723; *see also id.* at 729 (Jacobs, Cir.J., concurring). Lower courts should leave to the Supreme Court "'the prerogative of overruling its own decisions,'" *see Mallory v. Norfolk S. Ry. Co.,* 143 S. Ct. 2028, 2038 (2023) (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484 (1989)), even if the Second Circuit refuses to do so. *Fikes Wholesale,* 62 F.4th at 721 (panel holds it must follow *Melito v. Experian Mktg. Sols. Inc.,* 923 F.3d 85, 96 (2d Cir.2019), and *Hyland v. Navient Corp.,* 48 F.4th 110, 123-24 (2d Cir.2022), even if they are contrary to the Supreme Court's holding in *Greenough*); *see also Fikes Wholesale,* 62 F.4th at 729-30 (Jacobs, Cir.J., concurring, discussing *Melito* and *Hyland*).

But even assuming that incentive awards may be granted consistent with *Greenough,* as a panel of this Court said in *In re Apple, Inc. Device Performance Litig.,* 50 F.4th 769, 786 (9th Cir.2022), they are inappropriate when, as here, "the award exceeds the amount necessary to serve its purpose and creates the very

33

conflict between class representatives and other class members that Greenough and Pettus sought to prevent." *Id.* In *Apple Device Performance,* this Court construed *Greenough* as a decision that prohibits incentive awards in cases in which they are not necessary to recruit representative plaintiffs:

> While private plaintiffs who recover a common fund are entitled to "an extra reward," they are limited to "that which is deemed 'reasonable' under the circumstances." *Id. Greenough,* for example, prohibited recovery for the plaintiff's "personal services and private expenses" because the private plaintiff was a creditor who needed no inducement to bring suit. *Greenough,* 105 U.S. at 537.

*Apple Device Performance,* 50 F.4th at 786.

Here, of course, the Named Plaintiffs had substantial individual claims—for at least $10,000 apiece—and they clearly "needed no inducement to bring suit." *Apple Device,* 50 F.4th at 786. All but one attested that they were "not even aware of the possibility of any Service Award" until after the case settled.[6] Thus, under

---

[6] *See* 2-IER-119¶17(DE255-16:3¶17[ECFp.4]) (Named Plaintiff Perrin Davis declares "I was not even aware of the possibility of any Service Award"); 2-IER-123¶18(DE255-17:3¶18[ECFp.5]) (Named Plaintiff Dr. Brian Lentz declares "I was not even aware of the possibility of any Service Award"); 2-IER-131¶17(DE255-19:3¶17[ECFp.4]) (Named Plaintiff Matthew Vickery declares "I was not even aware of the possibility of any Service Award"); 2-IER-135¶17(DE255-20:3¶17[ECFp.4]) (Named Plaintiff Ryan Ung declares "I was not even aware of the possibility of any Service Award"); 2-IER-140¶17(DE255-21:3¶17[ECFp.4]) (Named Plaintiff Chi Cheng declares "I was not even aware of the possibility of any Service Award"); 2-IER-145¶18(DE255-22:3¶18[ECFp.4]) (Named Plaintiff Alice Rosen declares "I was not even aware of the possibility of any Service Award"); *see* 2-IER-074-075(DE269:7-8[ECFpp.13-14])(Isaacson Objection). Named Plaintiff Cynthia Quinn declared "it was only after I had agreed to the settlement terms for the class, that Margery and Robert informed me that the settlement also included

this Court's decision in *Apple Device,* the incentive awards in this case are insupportable.

Consistent with this Court's *Apple Device Performance* opinion, the Seventh Circuit similarly holds that if even one representative plaintiff "would have stepped forward without the lure of an 'incentive award,' there is no need for such additional compensation." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 723 (7th Cir.2001). An incentive award is unwarranted if there was "a named plaintiff willing to charge a price of zero." *In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 572 (7th Cir.1992). Here, of course, the Named Plaintiffs attested that they willingly served as representative litigants without any idea that they might qualify for a special cash award. "The market rate for incentive reimbursements here is accordingly zero." *Synthroid,* 264 F.3d at 723. Named Plaintiffs' service awards cannot stand.

## III. CONCLUSION

The judgment below should be reversed with directions to the District Court to vacate its orders sealing and redacting the Second and Third Amended Complaints, and to place the unredacted complaints, including all their exhibits, on the public record. This Court should in

---

Defendant's agreement to allow me to be eligible for a Service Award." 2-IER-127¶15(DE255-18:4¶¶15-16.

addition vacate the District Court's approval of the Settlement, remanding with instructions that—after giving members of the Plaintiff Class an opportunity to review the unredacted Second and Third Amended Complaints and to submit fully informed objections—the District Court should reconsider Settlement approval under the correct Rule 23(e)(2) standards. The District Court's attorney's fee award, and service awards, also should be vacated.

DATED: September 11, 2023          Respectfully submitted,

/s/ Eric Alan Isaacson
ERIC ALAN ISAACSON
*Objector-Appellant*

LAW OFFICE OF ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, CA 92037-6231
(858) 263-9581
ericalanisaacson@icloud.com

36

*Of Counsel:*

C. BENJAMIN NUTLEY
ATTORNEY AT LAW
65-1279 Kawaihae Rd.
  Suite 203
Kamuela, HI 96743-8444
California Bar No. 177431
(808) 238-8783
nutley@zenlaw.com

JOHN W. DAVIS
LAW OFFICE OF JOHN W. DAVIS
3030 N. Rocky Point Dr. W.
Suite 150
Tampa, FL 33607
(813) 533-1972
john@johnwdavis.com

37

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief was prepared using a Century Schoolbook 14-font and contains 6,808 words as counted by the Microsoft Word (version 16.77(23090303)) word-processing system used to prepare the brief, exclusive of the parts of the brief exempted from the type-volume limitation by Federal Rule of Appellate Procedure 32(f).

Dated: September 11, 2023

/s/ Eric Alan Isaacson
ERIC ALAN ISAACSON

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2023, I am electronically filing the foregoing brief with the Clerk of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will provide notification of such filing to all counsel of record who are ECF-registered filers.

Date: September 11, 2023

_____
/s/ Eric Alan Isaacson

ERIC ALAN ISAACSON